STEPHENS & STEPHENS LLP
CONRAD B. STEPHENS (266790)
505 South McClelland Street
Santa Maria, CA 93454
Telephone: (805) 922-1951
Facsimile: (805) 922-8013
E-mail: conrad@stephensfirm.com

LOCKRIDGE GRINDAL NAUEN P.L.L.P.
ROBERT K. SHELQUIST (pro hac vice to be filed)
REBECCA A. PETERSON (241858)
MICHAEL J. VANSELOW (pro hac vice to be filed)
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
E-mail: rkshelquist@locklaw.com
rapeterson@locklaw.com
mjvanselow@locklaw.com

[Additional Counsel on Signature Page]
Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION

| | |
|---|---|
| **HAYLEY CHARMAINE TICE**, INDIVIDUALLY AND ON BEHALF OF A CLASS OF SIMILARLY SITUATED INDIVIDUALS,<br><br>Plaintiffs,<br><br>V.<br><br>**AMAZON.COM INC.** and **A2Z DEVELOPMENT CENTER, INC.**,<br><br>Defendants. | Case No.  19-cv-01311<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>(1) VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT;<br>(2) VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW;<br>(3) INVASION OF PRIVACY; and<br>(4) UNJUST ENRICHMENT<br><br><u>**DEMAND FOR JURY TRIAL**</u> |

Plaintiff Hayley Charmaine Tice, for her Class Action Complaint against Defendants Amazon.com, Inc. and a2z Development Center, Inc., d/b/a Amazon Lab126 (collectively referred to herein as "Amazon"), states and alleges:

## I.    INTRODUCTION

1.    There has been a proliferation in the development and sale of voice-activated personal assistant devices used in households and other buildings.  This action is about Amazon's unlawful recording, permanent storage, analysis, and use of the voices and conversations of adult Californians communicating with or otherwise heard by Amazon's Alexa recording devices.

## II.    PARTIES

2.    Plaintiff Hayley Charmaine Tice is a natural person and citizen of the State of California and resident of Indio, California in Riverside County.

3.    Defendant Amazon.com, Inc. is a Delaware corporation with its headquarters and principal place of business at 410 Terry Avenue North, Seattle, Washington.

4.    Defendant a2z Development Center, Inc., d/b/a Amazon Lab126, is a Delaware corporation with its headquarters and principal place of business located at 1120 Enterprise Way, Sunnyvale, California.  Amazon Lab126 is a subsidiary of Amazon.com, Inc. employing persons working on Alexa-enabled devices and software.

### III.   JURISDICTION AND VENUE

5.      This Court has personal jurisdiction over Defendants because they maintain offices in California and are registered to do business in the State. Defendant a2z Development Center, Inc. d/b/a Amazon Lab126, maintains its headquarters and principal place of business in the state at 1120 Enterprise Way, Sunnydale, California.  A substantial part of the events and conduct giving rise to Plaintiff's claims occurred in this State and Amazon knowingly sold Alexa devices in California.

6.      This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. §1332(d)(2) because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and all members of the Class reside in California, which is a state other than the state(s) in which Defendants are citizens and the state in which this case is filed, and therefore any discretionary exemptions to jurisdiction under 28 U.S.C. §1332(d)(3) do not apply.

7.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 because Plaintiff resides and suffered injury as a result of Defendants' acts in this District, many of the acts and transactions giving rise to this action occurred in this District, Defendants conduct substantial business in this District, Defendants have intentionally availed themselves of the laws and markets of this District, and Defendants are subject to personal jurisdiction in this District.

# IV.   FACTS

## A.   Amazon and Alexa Products

8.     Amazon.com, Inc., is an American multinational technology company based in Seattle, Washington that focuses on e-commerce, cloud computing, digital streaming, and artificial intelligence. It is considered one of the "Big Four" technology companies along with Google, Apple, and Facebook.   Amazon's revenues for the twelve months ending March 31, 2019 were $241.545 billion – a 25.03% increase over the prior year.

9.     In 2010, Amazon started to develop the Echo smart speaker and later launched the "Alexa" voice assistant in 2014.  The Alexa Voice Service (AVS) is Amazon's intelligent voice recognition and natural language understanding service that allows persons to voice-enable any connected device that has a microphone and speaker.   The device consists of a speaker, microphones, a computer, internet connectivity, and the Alexa program.

10.     Since 2014, Amazon has launched additional Echo products, such as the Echo Dot, Echo Plus, Echo Sub, Echo Show, and Echo Input.  It also added the Alexa program to other Amazon products such as the Amazon Fire TV digital media player.  In May 2017, Amazon introduced the first video-enabled Echo Device—the Echo Show—which features a display screen and a camera that can be used for making video calls.

11. Amazon reported that as of January 2019, over 100 Million devices had been sold with Alexa pre-installed. Amazon also makes Alexa available for use on third-party manufactured products in its effort to expand the reach of Alexa as far as possible and ultimately to collect and store as much data on individuals as possible for its commercial purposes.

12. While most people purchase Alexa Devices to use in households, many commercial establishments – e.g., offices, stores – also have Alexa Devices that record the voices and communications of those in these buildings.

**B.    How Alexa Works**

13. Echo is a smart speaker. All Echo devices are voice-activated and are constantly listening in the owner's home for a "wake word" which is set by default to "Alexa." If someone says the wake word, the device starts recording the user's voice and uploads the recording to Amazon's Alexa Cloud. Amazon states that the device can detect a user speaking the wake word from across the room. In fact, Alexa can detect a user speaking in another room behind a closed door.

14. While Amazon represents that Alexa only records voices and communications once it is activated by its wake word, that is not true. Alexa is constantly listening to voices and conversations and sometimes records these conversations even without prompting by a wake word and the persons in the household have no way of knowing that Alexa is recording them.

15.     The cloud transcribes Alexa's voice recordings into text and translates the text into an "intent" which is a standardized machine-compatible translation of the text.  The cloud relays the intent back to the software on Echo and the device acts on the intent through the Alexa software or on an app; acting on the intent is referred to as a "skill."  Alexa also stores voices and communications in local memory on the Echo device itself before those voices and communications are sent to the cloud.  This often happens when there is no Wi-Fi connectivity at the time of the recording.

16.     To use the Alexa app, a person must have a registered Amazon Alexa account and set-up the device which entails pairing the device with the app.  After the device is paired with the app, it is ready to be used by anyone – not just the person who purchased the device and has a registered Amazon Alexa account.  Alexa also recognizes the voices of others in a household or other building with an Alexa Device who have their own Alexa devices in their own households or other buildings. In other words, any single Alexa device, regardless of location, can recognize the voice of an Alexa user.  And any single Alexa device can be used by people who do not have their own Alexa device.

**C.     Amazon's Permanent Storage, Analysis, and Use of Alexa Recordings**

17.     Rather than delete a recording after Alexa acts on it as one would naturally expect Alexa would do, Amazon saves a permanent recording of the user's voice and communication with Alexa and all other voices and communications it

- 5 -

also hears in the background on its own servers.   Amazon personnel review some of these individual conversations and Amazon then uses the recordings for its own commercial purposes.   Upon information and belief, Amazon also shares these recordings with other entities and also purchases/acquires other entities' data to integrate with its own data to enable Amazon to personally identify as many voices as possible that its Alexa devices record.

18.   Amazon obtains and stores as many Alexa recordings as it can to analyze consumer behavior.   There is no reason Amazon has to permanently store or review Alexa recordings.   For example, Apple's "Siri" smart speaker program records communications and sends them to Apple servers, but then Apple deletes the recordings after a short time.

19.   Because Alexa devices respond to any individual who says the wake word, the devices record communications with individuals who did not purchase the device or install the Alexa App and are not registered Alexa account holders.

20.   Alexa could be programmed to determine whether the person speaking is a registered Alexa account holder who has agreed to be recorded and inform anyone else communicating with it that Amazon is creating and storing a permanent recording of the person and request that the person consent to the recording. If the person did not consent, Alexa could deactivate its recording of any communication with the person.   Although Alexa could be programmed to do these things, in fact, Amazon does not warn unregistered persons that it is creating and storing permanent

recordings of their voices and communications and does not attempt to obtain their consent to do so. Accordingly, these unregistered persons never consent to the recording, storage, review, or use of their voices and communications.

21. Amazon's permanent storage of the voices and communications recorded by Alexa creates a very serious and unnecessary risk that these voices and communications could be obtained and used by a hacker. Alexa Devices can and do also record and store information about when someone unlocks a house door, opens a garage door, turns on lights, etc. This information could be analyzed to determine the history/patterns of persons – e.g., when they leave for or come home from work each day - and thereby unnecessarily enhance their exposure to various criminal activity.

22. While Amazon claims it uses the voices and recordings from its devices to improve the functionality of the devices, it does not need to record and permanently store every single voice and communication it records for this purpose. And even if it does, it could and should immediately delete the voices and recordings after it has listened to them for that purpose. There is no reason for Amazon to retain these recordings permanently.

**D.    Deletion of Alexa Recording Transcripts**

23. Amazon registered account holders can review, listen to, and delete voice recordings associated with their account using the Voice History feature available in the Alexa app and the Alexa Privacy Hub at

www.amazon.com/alexaprivacy. When an account holder deletes a voice recording, Amazon deletes the transcripts associated with both the account holder's request and Alexa's response. Amazon does not, however, delete everything regarding that interaction with Alexa. Amazon has even stated that it retains what it assumes account holders would want or expect to be retained.

24.     For example, Amazon does not store the audio of Alexa's response, but retains other records of an account holder's Alexa interactions, including records of actions Alexa took in response to the account holder's request. Moreover, when Alexa account holders interact with an Alexa skill, the developer of the skill may also retain records of the interaction.

25.     While Alexa account holders can delete Alexa recordings of their voice and communications, persons recorded by an Alexa device who are not registered Alexa account holders - like the class members in this case - cannot delete the recordings.

**E.     Alexa's Nonconsensual Recording of Plaintiff**

26.     Plaintiff is an adult citizen of the State of California.

27.     Plaintiff's husband purchased and registered an Alexa Device in 2016. Plaintiff resided in the household where the Alexa Device was set up.

28.     Every time Plaintiff used the Echo Dot Device to communicate with Alexa, Amazon recorded her voice and communications and permanently stored those recordings on its servers. It may also have analyzed some or all of these.

29.     Plaintiff was unaware that when she spoke the wake word the Alexa Device would record Plaintiff's voice and permanently store her voice and the ensuing private communications.

30.     Plaintiff was also not aware that the Alexa Device recorded and permanently stored her voice and communications even when someone else in the household activated the Device with a wake word but the Device could also hear Plaintiff's voice and communications in the background.

31.     Plaintiff was not a registered Alexa account holder and Amazon never warned Plaintiff that her voice and communications were being recorded by the Alexa Device. Plaintiff also never consented to the recording, storage, review/analysis, or use of her voice and communications.

## V.     CLASS ACTION ALLEGATIONS

32.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 individually and on behalf of the following class of similarly situated individuals:

> All adult citizens of the State of California who resided or worked in, or visited or otherwise occupied, households with Amazon Alexa Echo Devices whose voices and communications were recorded by such Devices and who were not Alexa registered account holders.

The reference to "Echo Devices" in this definition excludes Amazon's Echo Dot Kids Edition.

33.     **Class Period:**  The class period extends back four years from the date this action is filed.

34.   **Exclusions from the Class:**   Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and any members of their families; (2) Amazon, Amazon's subsidiaries, parents, successors, predecessors, and any entity in which Amazon or its parents have a controlling interest and their current or former employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Amazon's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

35.   **Ascertainability:** Membership in the Class is defined based on objective criteria, and individual Members will be identifiable from Amazon's records, which identify home addresses associated with Alexa devices and voiceprints of Alexa users and the persons Alexa records.

36.   **Numerosity:** The exact number of Members of the Class is unknown and unavailable to Plaintiff at this time, but individual joinder in this case is impracticable. The Class likely consist of thousands of individuals and their Members can be identified through Amazon's records.

37.   **Predominant Common Questions:** The Class Members' claims present common questions of law and fact, and those questions predominate over any questions that may affect individual Class Members. Common questions for the Class include, but are not limited to, the following:

a.    Whether Alexa Devices make recordings of the voices of the persons who interact with them.

b.    Whether Alexa Devices record the content of communications of persons who interact with them.

c.    Whether Alexa Devices record the voices and communications of persons who do not interact with them but whose voices and communications are nonetheless audible in the background while another is interacting with the Devices.

d.    Whether Amazon permanently stores the recordings it makes of the voices and communications of persons who interact with Alexa devices or are otherwise recorded by Alexa devices.

e.    Whether Amazon analyzes the recordings it makes of the voices and communications of persons who interact with or are otherwise recorded by Alexa Devices and uses these for its own commercial purposes.

f.    Whether persons who use Alexa Devices in households have an objectively reasonable expectation of confidentiality.

g.    Whether persons in a household with an Alexa Device who do not use the Device nonetheless have an objectively reasonable expectation of confidentiality in their voices and communications.

h.    Whether Amazon fails to obtain consent to record persons using or otherwise recorded by Alexa Devices who are not registered users of the Devices.

i.    Whether Alexa Devices warn those in households with the Devices that their voices and communications are recorded and permanently stored and analyzed and used by Amazon.

j.    Whether Alexa Devices record voices and communications even when they have not been activated by a wake word.

k.    Whether it is necessary for Amazon to permanently record voices and communications in order for the Devices to function to

- 11 -

answer the registered users' questions or follow the users' instructions.

l. Whether Alexa Devices could be programmed to determine whether the person speaking is a registered account holder who has agreed to be recorded and inform anyone else communicating with it that Amazon is creating and storing a permanent recording of the person and request that the person consent to the recording.

m. Whether Alexa Devices could deactivate their recording of any communications with persons who are not registered Alexa account holders.

n. Whether Alexa Devices record the voices and communications of persons who participate in telephone calls placed with Alexa.

o. Whether Alexa Devices permanently store text messages they are instructed to send.

p. Whether persons who are not registered Alexa account holders can delete Alexa's recording of their voices and communications.

q. Whether Alexa's recording and permanent storage of the voices and communications of Members of the Class violated the California Invasion of Privacy Act, Cal. Penal Code § 630, *et seq.*

r. Whether Alexa's recording and permanent storage of the voices and communications of Members of the Class violated California's Unfair Competitions Law, Cal. Bus. & Prof. Code §17200, *et seq.*

s. Whether Alexa's recordings of the voices and communications of Members of the Class invaded the California common law privacy rights of these Members.

t. Whether Amazon was unjustly enriched by its violations of the California Invasion of Privacy Act, Cal. Penal Code § 630, *et seq.*, California's Unfair Competitions Law, Cal. Bus. & Prof. Code § 17200, *et seq*, and invasion of the common law privacy rights of the Members of the Class.

38.     **Typicality:** Plaintiff's claims are typical of the claims of the other Members of the Class. Plaintiff and the Class Members all suffered invasions of privacy as a result of Amazon's uniform wrongful conduct.

39.     **Adequate Representation:** Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Class, and Plaintiff has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those members of the Class, and Amazon has no defenses unique to Plaintiff.  Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the Members of the Class, and they have the resources to do so. Neither Plaintiff nor her counsel have any interest adverse to those of the other Members of the Class.

40.     **Substantial Benefits:** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all Members of the Class is impracticable.  This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

41.     Plaintiff reserves the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## VI.     FIRST CAUSE OF ACTION

**Violation of the California Invasion of Privacy Act ("CIPA")**
**Cal. Penal Code § 630,** *et seq.*
**(On Behalf of Plaintiff and the Class)**

42.     Plaintiff incorporates and realleges by reference the foregoing allegations as if fully set forth herein.

43.     Section 632 of the California Invasion of Privacy Act, Cal. Penal Code § 630, *et seq.*, provides that:

> Every person who, intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device, eavesdrops upon or records the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio, shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500), or imprisonment in the county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment.

44.     The California Legislature described in Section 630 of the CIPA the important policy underling the Act in stating that it "hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such

devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society."

45.     The California Supreme Court has also repeatedly found that the California Legislature intended the CIPA to establish strong privacy protections:

> In enacting [CIPA], the Legislature declared in broad terms its intent to protect the right of privacy of the people of this state from what it perceived as a serious threat to the free exercise of personal liberties that cannot be tolerated in a free and civilized society. This philosophy appears to lie at the heart of virtually all the decisions construing [CIPA]." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 775 (2002) (internal quotation marks, alterations, and citations omitted)

The California Supreme Court has instructed courts to interpret the CIPA in the manner that "fulfills the legislative purpose of [CIPA] by giving greater protection to privacy interests." *Flanagan*, 27 Cal. 4th at 775.  Accordingly, as the Court noted in *Matera v. Google Inc.*, "when faced with two possible interpretations of CIPA, the California Supreme Court has construed CIPA in accordance with the interpretation that provides the greatest privacy protection."  No. 15-CV-04062-LHK, 2016 WL 8200619, *20 (N.D. Cal. Aug. 12, 2016).

46.     The voices and communications of Plaintiff and Class Members were recorded by Alexa and permanently stored and analyzed and used by Amazon.

47.     Plaintiff and the Class members did not suspect that Amazon would create, store, analyze, and use permanent recordings of their voices and communications recorded by Alexa Devices.

- 15 -

48.     At no time did Plaintiff and the Class Members ever provide Amazon with consent to record, store, analyze, or use their voices and communications that Amazon recorded and Amazon never sought or obtained such consent.

49.     By creating permanent recordings of Plaintiff's and the Class Members' voices and Alexa communications, Amazon "intentionally and without the consent of all parties to a confidential communication" used an "electronic amplifying or recording device to. . . record the confidential communication." This unlawful recording violated Plaintiff's and the Class Members' right to privacy in their confidential communications protected by Section 632 of the CIPA. As a direct and proximate cause of Amazon's violation of the CIPA, Plaintiff and the Class Members have suffered injury and are entitled to declaratory and injunctive relief and an award of their damages as set forth below. Moreover, because Amazon violated Section 632 with a willful and conscious disregard of the rights or safety of Plaintiff and the Class Members, Amazon is also liable to Plaintiff and the Class Members for punitive damages pursuant to Cal. Civil Code § 3294(a).

**VII.   SECOND CAUSE OF ACTION**

**Violation of the California Unfair Competitions Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200, *et seq*.**
**(On Behalf of Plaintiff and the Class)**

50.     Plaintiff incorporates and realleges by reference the foregoing allegations as if fully set forth herein.

51.     The California UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200, *et seq*.

52.     As alleged above, Amazon violated the CIPA in regard to its recording and permanent storage of the voices and communications of Plaintiff and the Class Members and such a violation is an unlawful practice under the UCL.

53.     Amazon's violation of the CIPA is also an unfair business practice under the UCL.  Amazon's conduct contravenes established and codified California public policy safeguarding the privacy interests of its citizens.

54.     As a direct and proximate cause of Amazon's unlawful and unfair business practices in violation of the UCL, Plaintiff and the Class Members have suffered injury and are entitled to declaratory and injunctive relief and an award of their damages as set forth below.  Moreover, because Amazon violated the UCL with a willful and conscious disregard of the rights or safety of Plaintiff and the Class Members, Amazon is also liable to Plaintiff and the Class Members for punitive damages pursuant to Cal. Civil Code § 3294(a).

## VIII.  THIRD CAUSE OF ACTION

### Invasion of Privacy
### (On Behalf of Plaintiff and the Class)

55.     Plaintiff incorporates and realleges by reference the foregoing allegations as if fully set forth herein.

56.     Plaintiff and the Members of the Class have a common law right against invasion of their privacy.

57.     By using its Alexa devices to record, store, analyze, and use the voices and communications of Plaintiff and the Members of the Class without their knowledge or consent, Amazon violated their common law right of privacy.  As a direct and proximate cause of Amazon's unlawful invasion of the privacy rights of Plaintiff and the Class Members, Plaintiff and the Class Members have suffered injury and are entitled to declaratory and injunctive relief and an award of their damages as set forth below.  Moreover, because Amazon invaded the privacy rights of Plaintiff and the Class Members with a conscious disregard of their rights or safety, it is liable for punitive damages pursuant to Cal. Civil Code § 3294(a).

## IX.   FOURTH CAUSE OF ACTION

### Unjust Enrichment
### (On Behalf of Plaintiff and the Class)

58.     Plaintiff incorporates and realleges by reference the foregoing allegations as if fully set forth herein.

59.     Amazon wrongfully and unlawfully recorded, stored, analyzed, and used the voices and communications of Plaintiff and the Members of the Class as described above.

60.     Upon information and belief, Amazon has realized many millions of dollars in revenue from its wrongful conduct.

61.     Plaintiff and the Class Members conferred a measurable benefit on Amazon.

62.     Amazon has been unjustly enriched by accepting this unlawful benefit and knew or should have known that its conduct described above was unlawful warranting a disgorgement of Amazon's profits to be awarded to Plaintiff and the Class Members.

## X.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff Hayley Charmaine Tice, on behalf of herself and the proposed Class Members, respectfully requests that the Court:

1.    Certify this case as a class action on behalf of the Class defined above, appointing Plaintiff as representative of the Class, and appointing her counsel as class counsel for the Class;

2.    Declare that Amazon's conduct, as set out above, violates the California Invasion of Privacy Act ("CIPA"), the California Unfair Competition Law, California common law privacy rights of Plaintiff and the Class Members, and that Amazon was unjustly enriched by its unlawful and unfair conduct;

3.    Order Amazon to completely delete all recordings of the Class Members and prevent further recording of the Class Members' voices and communications without their prior express consent;

4.    Award to Plaintiff and the Class Members statutory damages of $5,000 per violation under Cal. Penal Code § 637.2 as well as all other available nominal, statutory, and compensatory damages in a total amount to be determined at trial;

5.    Award punitive damages to Plaintiff and the Class Members pursuant to Cal. Civil Code § 3294(a) in a total amount to be determined at trial;

6.    Disgorge and award to Plaintiff and the Class Members the profits Amazon realized from its unlawful conduct described above;

7.    Award Plaintiff and the Class Members their reasonable litigation expenses and attorneys' fees;

8.     Award Plaintiff and the Class Members pre- and post-judgment interest, as allowed by law;

9.     Award such other further injunctive and declaratory relief as is necessary to protect the interests of Plaintiff and the Class Members; and

10.    Award such other and further relief as the Court deems reasonable and just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Dated:  July 17, 2019          LOCKRIDGE GRINDAL NAUEN P.L.L.P.


By:  s/  Rebecca A. Peterson
ROBERT K. SHELQUIST (pro hac vice to be filed)
REBECCA A. PETERSON (241858)
MICHAEL J. VANSELOW (pro hac vice to be filed)
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
E-mail: rkshelquist@locklaw.com
rapeterson@locklaw.com
mjvanselow@locklaw.com

STEPHENS & STEPHENS LLP
CONRAD B. STEPHENS (266790)
505 South McClelland Street
Santa Maria, CA 93454
Telephone: (805) 922-1951
Facsimile: (805) 922-8013
E-mail: conrad@stephensfirm.com

SHINDLER, ANDERSON, GOPLERUD
& WEESE, P.C.
J. Barton Goplerud (pro hac vice to be filed)
Brian O. Marty (pro hac vice to be filed)
Brandon M. Bohlman (pro hac vice to be filed)
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265
Telephone: (515) 223-4567
Fax: (515) 223-8887
Email: goplerud@sagwlaw.com
          marty@sagwlaw.com
          bohlman@sagwlaw.com

CUNEO GILBERT & LADUCA, LLP
Charles J. LaDuca (pro hac vice to be filed)
Brendan Thompson (pro hac vice to be filed)
4725 Wisconsin Avenue NW, Suite 200
Washington, DC 20016
Telephone: 202 789 3960
Email: charlesl@cuneolaw.com
          brendant@cuneolaw.com

**ATTORNEYS FOR PLAINTIFF**