1 | LAURENCE F. PULGRAM (CSB No. 115163)
lpulgram@fenwick.com
2 | TYLER G. NEWBY (CSB No. 205790)
tnewby@fenwick.com
3 | MOLLY R. MELCHER (CSB No. 272950)
mmelcher@fenwick.com
4 | ARMEN N. NERCESSIAN (CSB No. 284906)
anercessian@fenwick.com
5 | FENWICK & WEST LLP
555 California Street, 12th Floor
6 | San Francisco, CA  94104
Telephone:  415.875.2300
7 | Facsimile:   415.281.1350

8 | Attorneys for Defendants
AMAZON.COM, INC., and
9 | A2Z DEVELOPMENT CENTER, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| HAYLEY CHARMAINE TICE, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC. and A2Z DEVELOPMENT CENTER, INC.,<br><br>Defendants. | Case No.: 5:19-cv-01311-SVW-KK<br><br>**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO DISMISS PLAINTIFF'S CLAIMS**<br><br>Complaint served: July 22, 2019<br><br>Date:          November 18, 2019<br>Time:         1:30 pm<br>Judge:        Stephen V. Wilson<br>Ctrm:         10A<br>Trial Date:  None |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ...........................................................................................1

FACTUAL BACKGROUND............................................................................2

      A.    Plaintiff's Claims Regarding the Alexa Voice Service Offering...................................................................................2

      B.    Plaintiff's and Her Husband's Acceptance of Amazon's Conditions of Use, Alexa Terms of Use and Arbitration Agreements ............................................3

      C.    Procedural Posture ...................................................6

ARGUMENT ..................................................................................................7

I.    THE PARTIES' ARBITRATION AGREEMENT AND CLASS WAIVER PROVISIONS ARE ENFORCEABLE. .................7

II.    PLAINTIFF AND HER HUSBAND ARE BOTH AMAZON ACCOUNT HOLDERS WHO AGREED TO ARBITRATE DISPUTES WITH AMAZON. ..........................................9

      A.    Washington Law Governs the COUs and Disputes With Amazon. .................................................................9

      B.    Plaintiff and Her Husband Both Assented to Amazon's Arbitration Agreement. .......................................10

III.    ALTERNATIVELY, PRINCIPLES OF EQUITABLE ESTOPPEL REQUIRE PLAINTIFF TO ARBITRATE HER CLAIMS. ................................................................13

      A.    The Supreme Court and Washington Law Apply Equitable Estoppel to Prevent Non-Signatories From Avoiding Arbitration Agreements. ...........................13

      B.    Plaintiff Has Exploited the Benefits of Her Husband's Agreement That Permitted Use of the Alexa Device In Their Household.................................................15

IV.    THE ARBITRATION AGREEMENT DELEGATES ALL OTHER QUESTIONS CONCERNING ARBITRABILITY TO THE ARBITRATOR, AND NOT THE COURT.........................19

# <u>TABLE OF CONTENTS</u>
### (continued)

**Page**

V.   EVEN ABSENT THE DELEGATION AGREEMENT, THIS DISPUTE FALLS WITHIN THE SCOPE OF THE AMAZON ARBITRATION AGREEMENT, WHICH IS NOT UNCONSCIONABLE. ............................................................21

    A.   The Dispute is Within the Broad Scope of the Arbitration Agreement. ............................................21

    B.   The Arbitration Agreement is Not Unconscionable. ................23

CONCLUSION ........................................................................24

# TABLE OF AUTHORITIES

| CASES | PAGE(S) |
|---|---|

*Am. Express Co. v. Italian Colors Rest.*,
   133 S. Ct. 2304 (2013)..................................................................8

*American Bureau Shipping v. Tencera Shipyard SPA*,
   170 F.3d 349 (2d Cir. 1999) .......................................................16

*Arthur Andersen LLP v. Carlisle*,
   556 U.S. 624 (2009)...................................................................14

*AT&T Mobility LLC v. Concepcion*,
   131 S. Ct. 1740 (2011)...........................................................8, 23

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986)...................................................................19

*Brennan v. Opus Bank*,
   796 F.3d 1125 (9th Cir. 2015) ...................................................20

*Brinkley v. Monterey Fin. Servs., Inc.*,
   242 Cal. App. 4th 314 (2015) ....................................................23

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) ...............................................7, 22

*Comer v. Micor, Inc.*,
   436 F.3d 1098 (9th Cir. 2006) ..............................................14, 15

*Coneff v. AT&T Corp.*
   673 F.3d 1155 (9th Cir. 2012) .....................................................8

*Cordas v. Uber Techs., Inc.*,
   228 F. Supp. 3d 985 (N.D. Cal. 2017)........................................20

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985).....................................................................8

*Doe v. Project Fair Bid Inc.*,
   No. C11-809 MJP, 2011 WL 3516073 (W.D. Wash. Aug. 11,
   2011) ..........................................................................................11

# TABLE OF AUTHORITIES
### (continued)

CASES                                                                    PAGE(S)

*E. W. Bank v. Bingham,*
   992 F. Supp. 2d 1130 (W.D. Wash. 2014) .........................................15

*Eiess v. USAA Fed. Sav. Bank,*
   No. 19-CV-00108-EMC, 2019 WL 3997463 (N.D. Cal. Aug. 23,
   2019) ...........................................................................................21

*Ekin v. Amazon Services, LLC,*
   84 F. Supp. 3d 1172 (W.D. Wash. 2014) ........................................9, 22

*Fagerstrom v. Amazon.com, Inc.,*
   141 F. Supp. 3d 1051 (S.D. Cal. 2015) ............................9, 10, 19, 24

*Ferguson v. Corinthian Colls., Inc.,*
   733 F.3d 928 (9th Cir. 2013) ...........................................................8

*First Options of Chicago, Inc. v. Kaplan,*
   514 U.S. 938 (1995).......................................................................10

*Fteja v. Facebook, Inc.,*
   841 F. Supp. 2d 829 (S.D.N.Y. 2012) .............................................11

*G.G. v. Valve Corp.,*
   No. C16-1941-JCC, 2019 WL 1354152 (W.D. Wash. Mar. 26,
   2019) ...........................................................................................20

*Gandee v. LDL Freedom Enters., Inc.,*
   176 Wash.2d 598 (2013).................................................................24

*Gountoumas v. Giaran, Inc.,*
   No. CV 18-7720-JFW-PJW, 2018 WL 6930761 (C.D. Cal. Nov.
   21, 2018) ......................................................................................20

*Hauenstein v. Softwrap Ltd.,*
   No. C07-0572MJP, 2007 WL 2404624 (W.D. Wash. Aug. 17,
   2007) ...........................................................................................11

*Henry Schein, Inc. v. Archer & White Sales, Inc.,*
   139 S. Ct. 524 (2019).....................................................................19

# TABLE OF AUTHORITIES
### (continued)

CASES                                                          PAGE(S)

*In re Verisign, Inc., Derivative Litig.*,
   531 F. Supp. 2d 1173 (N.D. Cal. 2007)................................................22

*Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*,
   206 F.3d 411 (4th Cir. 2000) ..................................................14

*J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*,
   863 F.2d 315 (4th Cir. 1988) ..................................................18

*KPMG LLP v. Cocchi*,
   132 S. Ct. 23 (2011) (per curiam)...............................................8

*Kramer v. Toyota Motor Corp.*,
   705 F.3d 1122 (9th Cir. 2013) .................................................14

*McKee v. Audible, Inc.*,
   No. CV 17-1941-GW(EX), 2017 WL 4685039 (C.D. Cal. July 17,
   2017) ...............................................................................13

*McNamara v. Royal Bank of Scotland Grp., PLC*,
   No. 11-cv-2137-L (WVG), 2012 WL 5392181 (S.D. Cal. Nov. 5,
   2012) ................................................................................8

*Meyer v. Uber Techs., Inc.*,
   868 F.3d 66 (2d Cir. 2017) ....................................................11

*Mortensen v. Bresnan Commc'ns LLC*,
   722 F.3d 1151 (9th Cir. 2013) ...............................................8, 23

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983)................................................................19

*Nedlloyd Lines B.V. v. Superior Court*,
   3 Cal. 4th 459 (1992) ..........................................................10

*O'Donnell v. TD Ameritrade, Inc.*,
   No. 07-cv-0123 BTM (JMA), 2008 WL 8976220 (S.D. Cal. June
   17, 2008) ...........................................................................25

# TABLE OF AUTHORITIES
### (continued)

CASES                                                                     PAGE(S)

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
   724 F.3d 1069 (9th Cir. 2013) ...................................................................20

*Payne v. Amazon.com, Inc.*,
   No. 2:17-CV-2313-PMD, 2018 WL 4489275 (D.S.C. July 25,
   2018) ..................................................................................................*passim*

*Peters v. Amazon Servs. LLC*,
   2 F. Supp. 3d 1165 (W.D. Wash. 2013) ...........................................9, 19, 22, 24

*PRM Energy Sys., Inc. v. Primenergy, LLC*,
   592 F.3d 830 (8th Cir. 2010) ....................................................................18

*Rent-A-Ctr., W., Inc. v. Jackson*,
   561 U.S. 63 (2010).............................................................................21, 23

*Republic of Nicaragua v. Standard Fruit Co.*,
   937 F.2d 469 (9th Cir. 1991) ....................................................................19

*Selden v. Airbnb, Inc.*,
   No. 16-CV-00933 (CRC), 2016 WL 6476934 (D.D.C. Nov. 1,
   2016) ..........................................................................................10, 11, 12

*Sparling v. Hoffman Const. Co., Inc.*,
   864 F.2d 635 (9th Cir. 1988) ....................................................................25

*Starke v. Gilt Groupe, Inc.*,
   No. 13 CIV. 5497 LLS, 2014 WL 1652225 (S.D.N.Y. Apr. 24,
   2014) ...............................................................................................11

*Townsend v. Quadrant Corp.*,
   173 Wash. 2d 451, 461 (2012) ............................................................*passim*

*The Council of Cty. & City Employees, AFSCME, AFL-CIO v.*
   *Spokane Cty.*,
   32 Wash. App. 422 (1982).........................................................................19

STATUTES

California Invasion of Privacy Act, Cal. Penal Code § 630 *et seq.*............................3

# TABLE OF AUTHORITIES
### (continued)

**STATUTES**                                                                                          **PAGE(S)**

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ...................................................*passim*

Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ..........................3

**OTHER AUTHORITIES**

Restatement (Second) of Conflict of Laws § 187 (1971) .........................................9

1

## **INTRODUCTION**

2   Plaintiff Hayley Tice brought this case in the wrong forum.  Ms. Tice is an
3   Amazon account holder.  She has expressly agreed numerous times to resolve all
4   disputes "relating in any way to [her] use of any Amazon Service, or to any products
5   or services sold or distributed by Amazon or through Amazon.com" through binding
6   arbitration and not in court.  Her claim that Amazon recorded her voice without her
7   consent when she used Amazon's Alexa voice service on an Echo Dot smart speaker
8   in her home falls squarely within that broad arbitration agreement contained in
9   Amazon's Conditions of Use ("COU").  Plaintiff's claim that *she* did not personally
10   register the Echo Dot, and that her husband set up the device in their home, is
11   irrelevant.  Ms. Tice does not contend, nor could she credibly, that she was unaware
12   the Echo Dot device and Alexa service were Amazon products and services.  Even
13   if she could, the COU plainly applies to her claims, and she is required to bring this
14   dispute in arbitration as she agreed to do.

15   Even if Plaintiff herself had not agreed to resolve this dispute through
16   arbitration, principles of equitable estoppel prevent her from evading the arbitration
17   agreement that her husband entered when he set up the Echo Dot that she used in the
18   home they shared.  Plaintiff acknowledges that she deliberately took advantage of
19   their Echo Dot and its features, using the wake word "Alexa" to access this service.
20   Having received the benefits of the Amazon COU and the Alexa Terms of Use
21   ("TOU" or "Alexa Terms"), both of which her husband agreed to as essential
22   preconditions to activating the device, Ms. Tice cannot now selectively avoid the
23   obligations in those agreements to resolve this dispute through arbitration.

24   Amazon therefore respectfully requests that the Court grant Amazon's motion
25   to compel arbitration and dismiss Plaintiff's Complaint.

26

27

28

# FACTUAL BACKGROUND

## A.     Plaintiff's Claims Regarding the Alexa Voice Service Offering

Amazon operates the Alexa voice service, which lets users access various Amazon services by speaking instead of typing.  Declaration of Evan Young ¶¶ 2-3. With a single wake word (typically "Alexa"), users can dictate commands to an Alexa-enabled device to control functions throughout their homes, listen to music, play games, set calendar reminders, shop online, and more.  *Id*.  Amazon offers Alexa services through several means, including smart speakers such as the Amazon Echo and Amazon Echo Dot, mobile iOS and Android applications, and some third-party services. *Id*.  Plaintiff acknowledges that Alexa's recording function is integral to its ability to respond to directions, *i.e.*, that Echo devices "are voice-activated and are constantly listening in the owner's home for a 'wake word' which is set by default to 'Alexa.'  If someone says the wake word, the device starts recording the user's voice and uploads the recording to Amazon's Alexa Cloud" in order to process and respond to the command. Compl. ¶¶ 13, 15.

Amazon has learned that Hayley Charmain Tice is the married name of the Plaintiff, who previously used the name Hayley Lamond.[1]  Plaintiff alleges that in 2016, her husband purchased, registered, and set up an Amazon Echo Dot smart speaker with Alexa in the home they shared.  Compl. ¶ 27.  She further alleges that she "used the Echo device to communicate with Alexa" by affirmatively speaking the "wake word" to activate it.  *Id.* ¶¶ 27, 29.  But she claims that she was unaware that it would "record and permanently store her voice" and communications. *Id.* ¶ 29. Plaintiff implicitly alleges that while her husband, by purchasing and registering the Echo Dot, consented to voice recording by Alexa, she did not, and that Amazon

---

[1]  *See* Declaration of Tyler Newby ¶ 6.  Plaintiff's husband, Jon Tice, has been identified in Amazon's records as the owner of the email account that registered the Echo Dot for Plaintiff's household.  Although Plaintiff's counsel have refused to confirm the Tices' email addresses, they have not denied them, and public records and Amazon's customer records make the connection clear.  *See* Declaration of Brian Buckley ¶ 2; Newby Decl. ¶¶ 5-8.

therefore violates the California Invasion of Privacy Act (CIPA) and California Unfair Competition Law (UCL). *Id.* ¶¶ 31, 42–62.[2]    Plaintiff seeks to represent a class comprised of all adults in California whose voices were recorded by Alexa devices and who were not registered Alexa users. *Id.* ¶ 32.

**B.    Plaintiff's and Her Husband's Acceptance of Amazon's Conditions of Use, Alexa Terms of Use and Arbitration Agreements**

Plaintiff is very familiar with Amazon's services, having been a registered Amazon accountholder since 2005. Declaration of Trent Gillespie ¶ 5, Ex. A. Plaintiff has registered Amazon services, such as Amazon apps, on five devices, including multiple Alexa-enabled Amazon Fire TVs and Fire TV Sticks.  The Fire TV and Fire TV Stick plug into televisions and let users use Amazon and Alexa services and third-party applications on their TVs.  Gillespie Decl. ¶¶ 3, 7-9, Ex. A.

Whether activating an Alexa enabled device, installing an Amazon application on a smartphone, or purchasing a product from the Amazon marketplace, Amazon requires users to agree to its COUs to use its devices and services.  The Amazon COUs have, at all times since 2011, included an arbitration agreement with a class action waiver provision.  Buckley Decl. ¶ 4.  The provision in effect in 2014, when Alexa first launched, provided, in relevant part that: "Any dispute or claim relating in any way to your use of any Amazon Service, or to any products or services sold or distributed by Amazon or through Amazon.com will be resolved by binding arbitration, rather than in court."  *Id.*, Ex. 1 at 5, "Disputes."

Plaintiff's husband agreed to similar arbitration provisions in December 2016 when he registered the Alexa-enabled Echo Dot in Plaintiff's household. Young Decl. ¶¶ 4-6, 8-9, Exs. A-D.  Plaintiff herself agreed to similar provisions each time she completed the numerous purchases she has made on Amazon since 2016.

---

[2] CIPA only addresses the ***recording*** of confidential communications without consent, and does not cover retention or analysis.  Cal. Penal Code § 630 *et seq.*

Declaration of Owen Bell ¶ 3, Ex. A, Buckley Decl., ¶¶ 24-26, Exs. 19-22.

To activate Alexa, a user must have an Amazon account and link the Alexa device to that account in a registration process.  Young Decl. ¶ 4; *see also* Compl. ¶ 16.  Plaintiff's husband did exactly that when he activated his household's Alexa account on Christmas Day, 2016.  Because he does not have an Alexa mobile app registered to his account, he was required to register the Echo Dot through his Amazon account on Amazon's website.  There he was presented with the COUs as a precondition to being able to use the Alexa service.  When a user like Plaintiff's husband activated an Echo Dot from the Amazon website in 2016, the user was presented a hyperlinked disclosure at the top of the page in a different color that reads "By proceeding, you agree to the terms found <u>here</u>."  *Id.* at ¶ 6, Ex. A. Plaintiff's husband proceeded, and thus agreed.

Plaintiff's husband would also have been presented with a welcome screen on the Alexa desktop site (alexa.amazon.com), which also required him to agree to the COUs and "all the terms found here" by clicking a "Continue" button:



In addition to agreeing to the Amazon COUs, when Plaintiffs' husband continued past the welcome screen he also agreed to the Alexa Terms, which were listed first among "all the terms" agreed to.  Young Decl. ¶¶ 8-9, Ex B.  Like the COUs, the Alexa Terms are hyperlinked from the desktop website screen that a user, here Mr. Tice, must have used when setting up an Echo device or signing into the Alexa desktop website for the first time.  *Id.*

## Alexa and Alexa Device Terms

If you use or access Alexa, you agree to the following terms:

- Alexa Terms of Use
- Amazon Conditions of Use
- Amazon Privacy Notice
- Children's Privacy Disclosure
- Amazon Prime Terms
- Amazon Music Terms of Use
- Kindle Store Terms of Use
- Audible Service Conditions of Use
- Amazon Dash Replenishment Terms of Use
- Amazon FreeTime Unlimited Terms & Conditions and Kindle FreeTime Unlimited Terms & Conditions
- Amazon Photos Terms of Use

If you place an order for, register, or use an Amazon device, you agree to the following terms:

- Amazon Device Terms of Use

If you place an order for, register, or use an Alexa-enabled device with a screen, you agree to the following terms:

- IMDb Legal Information
- Amazon Video Terms of Use

To learn more about Alexa and devices with Alexa, see the Alexa Privacy Hub and the Alexa and Alexa Device FAQs.

Those Alexa Terms provide that "Any dispute or claim arising from or relating to this Agreement or Alexa is subject to the binding arbitration, governing law, disclaimer of warranties, limitation of liability, and all other terms in the <u>Amazon.com Conditions of Use</u>.  By using Alexa, you agree to be bound by those terms."  Buckley Decl. ¶ 11, Ex. 7 at 3, § 3.6 (emphasis in original).  The Alexa Terms provide a hyperlink to the COUs and its arbitration agreement.  *Id.*

Finally, Amazon users also agree to the Amazon COUs containing the

1  arbitration agreement each and every time they make a purchase through Amazon's
2  standard checkout flows.  Buckley Decl., ¶¶ 24-26, Exs. 19-22.

3      Plaintiff's and her husband's account histories and agreement to the Amazon
4  COUs and Alexa terms are summarized below and described in greater detail in the
5  Declaration of Trent Gillespie.

6      **Plaintiff Hayley Lamond Tice**.  Plaintiff has accepted the Amazon COUs
7  and its arbitration agreement numerous times when she placed purchase orders on
8  Amazon.  Bell Decl. ¶ 3, Ex. A; Buckley Decl., ¶¶ 24-26, Exs. 19-22.

9      **Jon Tice, Plaintiff's Husband.** Mr. Tice was required to accept the Amazon
10  COUs and Alexa Terms when he registered an Echo Dot device to his account on
11  December 25, 2016, and when presented with the welcome screen.  *See* Gillespie
12  Decl. ¶¶ 10-12, Ex. A; Young Decl. ¶¶ 4-6, 8-9, Exs. A-D.  In addition, he accepted
13  the COUs multiple times when he placed purchase orders on Amazon.  Declaration
14  of Owen Bell, ¶ 3, Ex. A; Buckley Decl., ¶¶ 24-26, Exs. 19-22.

15      **C.    Procedural Posture**

16      Plaintiff filed this putative class action on July 17, 2019, asserting four causes
17  of action against Amazon and a subsidiary, Lab126.  As early as July 26, 2019,
18  Defendants immediately asked Plaintiff's counsel to provide the email addresses
19  used to login to the Alexa and Amazon accounts in Plaintiff's household, so that
20  Defendants could file a motion to compel arbitration on a full factual record.  Newby
21  Decl. ¶ 1. After nearly a month of negotiations, Plaintiff refused to disclose the login
22  information needed for this threshold issue of arbitration.  *Id.* ¶ 2.  On August 30,
23  2019, Defendants sought an order from the Court directing that Plaintiff disclose the
24  email address used to login to the Alexa and Amazon accounts in her household, and
25  for a stay of this action pending resolution of Defendants' motion to compel
26  arbitration. Dkt. 37.  On September 26, 2019, the Court denied Defendants' motion,
27  ruling that "[a]t this stage of the proceedings, Defendants' requested discovery is not

28

relevant to Plaintiffs legal and factual allegations." Dkt. 40.  The Court ordered Defendants to answer or file a motion to compel arbitration by October 10, 2019. *Id.*  Having identified the email addresses for Plaintiff's and her husband's Amazon accounts through its own investigation, Amazon now files this motion.

## ARGUMENT

A court's role in resolving a motion to compel arbitration is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  As described below, the Court should order Plaintiff to arbitrate her claims with Amazon as required by the arbitration agreements she entered with Amazon.  Alternatively, principles of equitable estoppel require her to arbitrate her claims pursuant to the arbitration agreement her husband entered when registering the Echo Dot device that she has knowingly used and benefitted from for more than two years before bringing suit. The Court need not reach the issues of unconscionability or whether Plantiffs' claims are within the scope of the arbitration agreement, as the agreement has delegated those issues to the arbitrator.  Even if it were to consider those issues, Amazon's arbitration agreement is valid and enforceable (as numerous courts have previously held), and this case plainly falls within the broad scope of disputes covered by that agreement.  Thus, after the Court determines that Plaintiff is bound to an arbitration agreement, this case should thereafter be dismissed or stayed to permit arbitration to proceed on all other issues.

## I.   THE PARTIES' ARBITRATION AGREEMENT AND CLASS WAIVER PROVISIONS ARE ENFORCEABLE.

The Federal Arbitration Act (FAA) establishes that agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA reflects an

"emphatic federal policy in favor of arbitral dispute resolution." *KPMG LLP v. Cocchi*, 132 S. Ct. 23, 25 (2011) (per curiam) (internal quotation marks omitted). "[T]he FAA's purpose is to give *preference* (instead of mere equality) to arbitration provisions." *Mortensen v. Bresnan Commc'ns LLC*, 722 F.3d 1151, 1160 (9th Cir. 2013) (emphasis added).  As such, when a plaintiff asserts a claim that falls within the scope of a valid arbitration provision, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration.'" *McNamara v. Royal Bank of Scotland Grp., PLC*, No. 11-cv-2137-L (WVG), 2012 WL 5392181, at *3 (S.D. Cal. Nov. 5, 2012) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)) (emphasis in *Dean Witter*).

Since the Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011), it has also been well-settled that class action waivers—and arbitration agreements containing such waivers—are valid and enforceable. *Id.* at 1753; *see also Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2307 (2013) (upholding class action waiver and noting that Rule 23 does not "establish an entitlement to class proceedings for the vindication of statutory rights").  The Ninth Circuit has uniformly recognized that state laws purporting to invalidate arbitration provisions in the name of consumer protection are preempted by the FAA.  *See Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 934-36 (9th Cir. 2013) (holding that that the FAA preempted a California rule that invalidated agreements to arbitrate representative claims for public injunctive relief); *Mortensen*, 722 F.3d at 1159-60, ("[T]he FAA's command to enforce arbitration agreements trumps any interest in ensuring the prosecution of low-value claims."); *Coneff v. AT&T Corp.* 673 F.3d 1155, 1158 (9th Cir. 2012) (holding that the FAA preempted a Washington statute invalidating class action waivers and that the arbitration provision at issue was valid and enforceable).

The arbitration provision here is not meaningfully distinguishable from provisions found enforceable in these seminal cases.  Courts across the country have found Amazon's provision, and the class action waiver it contains, to be valid and enforceable.  *See Payne v. Amazon.com, Inc.*, No. 2:17-CV-2313-PMD, 2018 WL 4489275 *8 (D.S.C. July 25, 2018) (enforcing Amazon's arbitration provision and compelling arbitration); *Ekin v. Amazon Services, LLC*, 84 F. Supp. 3d 1172, 1175 (W.D. Wash. 2014) (same); *Fagerstrom v. Amazon.com, Inc.*, 141 F. Supp. 3d 1051, 1064-76 (S.D. Cal. 2015), *aff'd sub nom. Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862 (9th Cir. 2017); *Peters v. Amazon Servs. LLC*, 2 F. Supp. 3d 1165 (W.D. Wash. 2013), *aff'd*, 669 F. App'x 487 (9th Cir. 2016)) (same as to arbitration provision of Amazon Business Services Agreement).  The same is true here.

## II.   PLAINTIFF AND HER HUSBAND ARE BOTH AMAZON ACCOUNT HOLDERS WHO AGREED TO ARBITRATE DISPUTES WITH AMAZON.

### A.   Washington Law Governs the COUs and Disputes With Amazon.

The Amazon COUs provide that "the laws of the state of Washington, without regard to principles of conflict of laws, will govern these Conditions of Use and any dispute of any sort that might arise between you and Amazon."  Buckley Decl. Exs. 1-6, "Applicable Law".  Similarly, the Alexa Terms state that "**[a]ny dispute or claim arising from or relating to this Agreement or Alexa is subject to the . . . governing law. . . and all other terms in the <u>Amazon.com Conditions of Use</u>**."  Buckley Decl. ¶ 11, Ex. 7 at § 3.6 (bold in original; linking Amazon COUs).  Courts have consistently held that Washington law applies to disputes over Amazon's COUs.  *See, e.g.*, *Fagerstrom*, 141 F. Supp. 3d at 1063–64 (applying Washington rather than California state law, in accordance with the Amazon COUs).  This Court should do the same.[3]

---

[3] In deciding whether to enforce a contractual choice of law provision, California courts have adopted the test under Section 187 of the Restatement (Second) of

**B.      Plaintiff and Her Husband Both Assented to Amazon's Arbitration Agreement.**

This dispute falls within the scope of Plaintiff's direct agreement to arbitrate all disputes and claims with Amazon concerning its services.  Plaintiff ***expressly*** agreed to the Amazon COUs containing the arbitration agreement when she signed up for Amazon, made purchases, and registered Alexa-enabled Fire TV devices.  In determining whether a person agreed to arbitrate, courts "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  In the digital context, the question of assent turns on whether a website puts the customer on "reasonable notice" of its terms and conditions.  *See, e.g.*, *Fagerstrom*, 141 F. Supp. 3d at 1068–69.

This standard is easily met here.  Plaintiff agreed to Amazon's COUs multiple times when making purchases through her Amazon account.  Her husband similarly agreed to the COUs and Alexa Terms containing the arbitration agreement when registering the Echo Dot that Ms. Tice admits she knowingly used.  *See, e.g.*, *Selden v. Airbnb, Inc.*, No. 16-CV-00933 (CRC), 2016 WL 6476934, at *5 (D.D.C. Nov. 1, 2016) (holding that user was bound by an arbitration clause, where Airbnb presented a hyperlinked disclosure stating that "By signing up, I agree to Airbnb's Terms of

Conflict of Laws. *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 464-65 (1992).  Under the Restatement, the law chosen by the parties is effective except in limited circumstances and where "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties." *Id.* (quoting Restatement (Second) of Conflict of Laws § 187 (1971)).  There is no reason to depart from "the usual presumption in favor of enforcement" of the choice of law provision in the COUs here.  *See Payne*, 2018 WL 4489275, at *4.  Plaintiff concedes that Amazon is based in Seattle, Washington.  Compl. ¶¶ 3, 8.  Application of Washington law to the threshold questions of arbitrability and equitable estoppel does not interfere with any fundamental policy of California. Nor does California have a materially greater interest in determination of that issue than Washington, the state of Amazon's residency that is specified as governing law in all its user contracts nationally.

Service" in close proximity to the sign-up buttons); *see also Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 77 (2d Cir. 2017) (vacating lower court's denial of motion to compel arbitration, and holding that the Uber mobile app provided reasonably conspicuous notice of, and that customer unambiguously manifested assent to, Uber's terms of service).

Courts applying Washington law have found that "clickwrap" and "sign-up wrap" agreements—wherein a consumer is informed that clicking a button or "signing in" constitutes assent to an agreement and proceeds to click the button—are fully enforceable. *See, e.g.*, *Doe v. Project Fair Bid Inc.*, No. C11-809 MJP, 2011 WL 3516073, at *4 (W.D. Wash. Aug. 11, 2011) ("This kind of 'clickwrap' agreement has been upheld in several cases in this circuit and elsewhere."); *Hauenstein v. Softwrap Ltd.*, No. C07-0572MJP, 2007 WL 2404624, at *2-3, 6 (W.D. Wash. Aug. 17, 2007) (enforcing arbitration agreement because plaintiff "manifested his assent to the License Agreement by 'clicking' the appropriate box").

Many courts have specifically found that when a hyperlink to terms of use is displayed near a "purchase" or "sign in" button, and the user is informed that purchasing or signing in constitutes acceptance of those terms, the user does in fact provide assent to the terms by proceeding to click the "purchase" or "sign-in" button. *See Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835 (S.D.N.Y. 2012) (enforcing forum selection clause based on disclosure below "Sign Up" button); *Starke v. Gilt Groupe, Inc.*, No. 13 CIV. 5497 LLS, 2014 WL 1652225, at *3 (S.D.N.Y. Apr. 24, 2014) (enforcing arbitration clause, noting that plaintiff "was directed exactly where to click in order to review those terms, and his decision to click the 'Shop Now' button represents his assent to them"); *accord Selden*, 2016 WL 6476934 at *5 (collecting cases). Indeed, assent to hyperlinked terms is the predominant way that users agree to terms in the modern online world; long gone are the days when the average, reasonable consumer can claim ignorance of how clickwrap and sign-up

wrap works.  As a leading case analyzing this issue put it:

Any reasonably-active adult consumer will almost certainly appreciate that by signing up for a particular service, he or she is accepting the terms and conditions of the provider. Notifications to that effect—be they check boxes or hyperlinks—abound. To be sure, few people may take time to actually read the user agreements. But ignorance of the precise terms does not mean that consumers are unaware they are entering contracts by signing up for internet-based services.

*Id.*  Here, Plaintiff and her husband activated several Alexa devices and registered for Amazon services, thereby effectively assenting to the Amazon arbitration agreement in multiple ways.

***Activation of Alexa Devices.***  Plaintiff's husband agreed to the Amazon COUs and Alexa Terms when he registered the Alexa enabled Echo Dot that Plaintiff claims she used at home.  As described above, when Plaintiff's husband added an Echo device in December 2016, he would have been presented with the statement on Amazon's Alexa registration website: "By proceeding, you agree to the terms found here" immediately above the device he chose to add.  The word "here" linked to Amazon's COUs and the Alexa Terms. Young Decl. at ¶ 6, Ex. A.  Upon proceeding to set up the Echo Dot, Plaintiff's husband would have been presented with a welcome screen on the Alexa desktop site (alexa.amazon.com), which also required him to agree to the COUs and "all the terms found here" by clicking a "Continue" button.  *Id*. ¶¶ 9-12, Exs. A-B.

***Standard Checkout Flow on Amazon.***  Both Plaintiff and her husband assented to the COUs when making purchases from Amazon using its standard desktop checkout page.  Amazon displays a hyperlinked notice on that page informing the customer that, by completing the purchase, he or she is agreeing to the Amazon COUs.  Buckley Decl. ¶¶ 24-25, Ex. 20.  To place an order in this process, Amazon requires a customer to click a button, which reads "Place your order,"

directly next to a statement hyperlinking to the Amazon COUs and confirming that "you agree" to those conditions by proceeding:



Multiple courts have examined this checkout flow and concluded that it provides sufficient notice of the Amazon arbitration agreement. *See Payne*, 2018 WL 4489275 at *5 (holding that "a reasonably prudent offeree would know that he agreed to Amazon's Conditions of Use by clicking the 'Place your order' button" on Amazon standard checkout page) (collecting cases); *McKee v. Audible, Inc.*, No. CV 17-1941-GW(EX), 2017 WL 4685039, at *11 n.7 (C.D. Cal. July 17, 2017) ("the disclosure and hyperlink that appear on the Amazon checkout page are of the same nature as those upheld in courts across multiple districts, including those applying Washington law"); *accord Wiseley*, 709 F. App'x 862 at 864 ("The notices on Amazon's checkout and account registration pages, which alerted [plaintiff] that clicking the corresponding action button constituted agreement to the hyperlinked COU, were in sufficient proximity to give him a 'reasonable opportunity to understand' that he would be bound by additional terms.").

Plaintiff and her husband assented to the Amazon arbitration agreement, each multiple times, by using the Amazon standard checkout flow. *See* Bell Decl. ¶ 3 and Ex. A, Buckley Decl. ¶¶ 24-25, Ex. 20.  This agreement, in addition to the Alexa sign up flow, binds them both to the Amazon arbitration provisions.

## III.    ALTERNATIVELY, PRINCIPLES OF EQUITABLE ESTOPPEL REQUIRE PLAINTIFF TO ARBITRATE HER CLAIMS.

### A.    The Supreme Court and Washington Law Apply Equitable Estoppel to Prevent Non-Signatories From Avoiding Arbitration Agreements.

Even if Plaintiff's direct agreement with Amazon to arbitrate all disputes

concerning Amazon's services did not require her to arbitrate this dispute, principles of equitable estoppel require her to arbitrate her claims under the agreement her husband entered with Amazon when he registered the Echo Dot device that Plaintiff knowingly used. *See, e.g., Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (recognizing case law establishing that non-signatories may be bound to arbitration agreements under principles of equitable estoppel and agency). "The United States Supreme Court has held that a litigant who is not a party to an arbitration agreement may invoke arbitration under the [FAA] if the relevant state contract law allows the litigant to enforce the agreement." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (applying California equitable estoppel law), *citing Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (holding state law governs whether an arbitration agreement is enforceable by or against a non-signatory under the FAA). Similarly, a party to an arbitration agreement can require a non-signatory to arbitrate disputes where the contract is enforceable against the non-signatory under state law contract principles. *Arthur Andersen LLP*, 556 U.S. at 631.

Washington law recognizes that an arbitration agreement may bind non-signatories under the principle of equitable estoppel. Equitable estoppel "precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Townsend v. Quadrant Corp.,* 173 Wash. 2d 451, 461 (2012) (requiring children to arbitrate tort and all other claims against homebuilder under agreement entered by parents) (quoting *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045-46 (9th Cir. 2009)). The principle ensures fairness by estopping "a party from asserting rights he otherwise would have had against another when his own conduct renders assertion of those rights contrary to equity." *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000) (affirming grant of motion to compel arbitration against nonsignatory

1  based on equitable estoppel).

2  In the arbitration context, equitable estoppel generally applies in two

3  circumstances. *See generally Comer,* 436 F.3d at 1101. First, "equitable estoppel

4  may require a non-signatory to arbitrate a claim if that person, despite never having

5  signed the agreement, knowingly exploits the contract in which the arbitration

6  agreement is contained." *Townsend*, 173 Wash. 2d at 461 (internal citations,

7  quotations, and alterations omitted) (citing *Comer*); *see also Payne*, 2018 WL

8  4489275 at *6-7 (holding that Amazon arbitration agreement bound non-signatory

9  plaintiff because she "knowingly exploited" fiancé's contractual agreement with

10 Amazon by receiving goods he purchased through Amazon). Second, "a signatory

11 may be required to arbitrate a claim brought by a non-signatory where the subject

12 matter of the dispute is intertwined with the contract providing for arbitration, and

13 the non-signatory and signatory parties have a close relationship." *E. W. Bank v.*

14 *Bingham*, 992 F. Supp. 2d 1130, 1133 (W.D. Wash. 2014) (citing *Mundi*, 555 F.3d

15 at 1046) (holding that equitable estoppel was unwarranted in that case given lack of

16 a close relationship between signatory and non-signatory defendants and lack of

17 intertwining of contract with claims). The first of these principles is most salient

18 here.

### B.   Plaintiff Has Exploited the Benefits of Her Husband's Agreement That Permitted Use of the Alexa Device In Their Household.

21 Plaintiff is equitably estopped to deny the arbitration agreement her husband

22 entered in activating their Alexa service because she knowingly exploited that

23 service—for more than two years, in fact—prior to filing this action. Plaintiff was

24 only able to access the benefits of Alexa on the Echo Dot in her home because her

25 husband agreed to the Amazon COUs and Alexa Terms. Acceptance of those terms

26 was a pre-condition to his and Plaintiff's ability to use Alexa on the device. Plaintiff

27 knowingly took advantage of those agreements. She voluntarily used Alexa on their

28

1   Echo Dot, affirmatively invoking the wake word to access the service. Compl. ¶¶ 27,
2   29.  She does not contend, nor could she credibly, that she did not know Alexa is an
3   Amazon service and the Echo an Amazon device.  It would eviscerate the core
4   function of the arbitration agreements (and offend basic notions of fairness) to permit
5   Plaintiff to avoid the terms her husband agreed to simply because she used her
6   husband's account with that device.  That is particularly true given that Ms. Tice,
7   herself, had also set up Alexa-enabled Amazon Fire TV devices.  Gillespie Decl.
8   ¶¶ 3, 7-9.

9        The Washington Supreme Court's ruling in *Townsend* illustrates the equitable
10   principles that bar resort to such gamesmanship to avoid arbitration agreements.  In
11   *Townsend*, plaintiff homeowners and their children brought claims for unfair
12   business practices, fraud, negligence, negligent misrepresentation, and rescission
13   (among others) against a defendant homebuilder and its parent companies based on
14   shoddy workmanship.  173 Wash. 2d at 454.  The builder and its parent companies
15   moved to compel arbitration based on agreements with each homeowner. *Id.*  The
16   court held the homeowners' children were "bound by the arbitration clause to the
17   same extent as their parents," because they "received the benefit of the bargain in
18   the transaction with [the builder] to the same extent as their parents." *Id.* at 460-62.
19   The same rationale applies here: Plaintiff admittedly received substantial benefits
20   through the Alexa service, and she is equitably estopped to shrug off the obligations
21   that are part-and-parcel of it. *See also American Bureau Shipping v. Tencera*
22   *Shipyard SPA,* 170 F.3d 349, 353 (2d Cir. 1999) (non-signatory vessel owners, who
23   took benefits of vessel builder's agreement with certification organization, were
24   equitably estopped to deny its arbitration provisions where, without certification "it
25   would have been practically impossible" for owners to obtain the use they made of
26   the vessel).

27        Building on *Townsend*, the court in *Payne*, 2018 WL 4489275, granted a

28

1  motion to compel arbitration as to a non-signatory plaintiff who received as a gift a

2  pair of glasses purchased by her fiancé through Amazon.  The *Payne* court saw "no

3  meaningful difference" between *Townsend* and the facts there, or between "the

4  receipt of an injurious house and the receipt of an injurious pair of glasses."  *Id.* at

5  *7.  It concluded that, like the non-signatories in *Townsend*, the non-signatory

6  plaintiff in *Payne* was "attempting to avoid the burden of arbitration while retaining

7  the benefit of rights based on" her fiancé's contractual relationship with Amazon,

8  warranting the application of equitable estoppel.  *Id.*

9      Applying similar logic, the *Nicosia* court granted a motion to compel against

10  a non-signatory plaintiff who used his wife's Amazon account based on a "derivative

11  rights" theory.  *Nicosia*, 384 F. Supp. 3d at 271-272.  The *Nicosia* court found that

12  the Amazon arbitration agreement bound third parties that used the Amazon account.

13  *Id.* at 272-74.  Because the plaintiff received "direct benefits" through his wife's

14  relationship with Amazon, the court held that he could not avoid the Amazon

15  arbitration agreement.  *Id.* at 274 (applying Washington state law, and citing

16  *Townsend*, 173 Wash. 2d at 461, among other cases).

17      *Townsend*, *Payne*, and *Nicosia* are directly applicable here.  Plaintiff's

18  husband purchased an Alexa device for use and enjoyment in their household.

19  *Cf. Payne*, 2018 WL 4489275 at *7.  Plaintiff's husband then registered that Alexa

20  device to his Amazon account and expressly agreed that the Amazon COUs and

21  Alexa Terms, which both include an arbitration agreement, would apply to his

22  household's use of that device.  *See generally* Gillespie Decl.; *cf. Nicosia*, 384 F.

23  Supp. 3d at 272-74.  As summarized above and detailed in the Gillespie Declaration,

24  Plaintiff and her husband activated multiple devices.  Plaintiff claims she triggered

25  the recording of her voice by speaking the wake word (e.g., "Alexa") and

26  communicated with the service over the internet as intended.  Compl. ¶¶ 27-29.  Not

27  only did Plaintiff personally agree to the COUs when she made purchases through

28

her Amazon account, she also knowingly enjoyed the benefits of the Alexa service with respect to the Echo Dot registered by her husband, and with that, the contractual relationship he entered with Amazon to obtain that service.  Plaintiff cannot choose to avoid the arbitration obligations in those agreements.  In addition to her own contractual obligations, when it comes to her husband's agreement to arbitrate, Plaintiff "must also be held to the arbitration clause that governs that relationship." *Nicosia*, 384 F. Supp. 3d at 275.

Allowing Plaintiff to avoid an express arbitration agreement because she used her husband's Amazon account or Alexa service (especially when she agreed to the same terms when she used her own Amazon account) "would eviscerate the arbitration agreement."  *See PRM Energy Sys., Inc. v. Primenergy, LLC*, 592 F.3d 830, 834 (8th Cir. 2010) (potential non-signatory licensee could compel arbitration pursuant to licensor-licensee agreement "under agency and related principles" because, absent enforcement of arbitration rights, agreement would be meaningless); *accord J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 321 (4th Cir. 1988) ("If the parent corporation was forced to try the case, the arbitration proceedings would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.").  There is no serious dispute that Plaintiff's husband assented to and is bound by the COUs, the Alexa Terms and their arbitration provisions—a fact explaining the class definition that excludes him.  *See* Section II, *above*.  The fact that he is clearly bound to arbitrate means that his wife, who knowingly took the benefits of his agreement, is bound as well.

In sum, principles of assent and equity prevent Plaintiff from bringing this lawsuit in court.  Plaintiff is equitably estopped from avoiding arbitration of these claims as provided under the agreements she and her husband entered.

**IV.**   **THE ARBITRATION AGREEMENT DELEGATES ALL OTHER QUESTIONS CONCERNING ARBITRABILITY TO THE ARBITRATOR, AND NOT THE COURT.**

Once a court recognizes a valid arbitration agreement, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Peters*, 2 F. Supp. 3d at 1170 (noting that parties' intentions "are generously construed as to issues of arbitrability"). "The clear weight of authority holds that the most minimal indication of the parties' intent to arbitrate must be given full effect . . . ." *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 478 (9th Cir. 1991); *accord Fagerstrom*, 141 F. Supp. 3d at 1063-64 (quoting *Republic of Nicaragua* and ordering arbitration based on similar provision in Amazon COUs). To do otherwise contravenes the "presumption of arbitrability" that applies whenever there is a contract that contains an arbitration clause. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986); *see also The Council of Cty. & City Employees, AFSCME, AFL-CIO v. Spokane Cty.*, 32 Wash. App. 422, 425 (1982) (applying Washington law) ("There is a strong presumption in favor of arbitrability; all questions upon which the parties disagree are presumed to be within the arbitration provisions unless negated expressly or by clear implication."). In other words, courts should compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute . . . ." *AT&T Techs.*, 475 U.S. at 650.

The standard is even lower where, as here, the parties agreed that the arbitrator should decide issues of arbitrability. "Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (holding that

delegation clause in arbitration agreement precludes court from examining questions of arbitrability, even where opponent of arbitration asserts that claim of arbitration rights are "wholly groundless"). Courts have recognized that because the rules of the American Arbitration Association ("AAA") include delegation of arbitrability to the arbitrator, when an arbitration agreement incorporates those rules by reference, "the parties agreed to grant the arbitrators presiding over their individual arbitrations the authority to determine the arbitrability of their claims." *G.G. v. Valve Corp.*, No. C16-1941-JCC, 2019 WL 1354152, at *3 (W.D. Wash. Mar. 26, 2019) (denying plaintiff's challenge to arbitrability of claims on behalf of minor children, where agreements incorporated AAA rules).

Indeed, "[v]irtually every circuit to have considered the issue has determined that incorporation of the [] AAA arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074-77 (9th Cir. 2013) (collecting cases and holding that "incorporation of the UNCITRAL arbitration rules is clear and unmistakable evidence that the parties agreed the arbitrator would decide arbitrability"). The Ninth Circuit, has declined to "require that the contracting parties be sophisticated or that the contract be 'commercial' before a court may conclude that incorporation of the AAA rules constitutes 'clear and unmistakable' evidence of the parties' intent." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). But it observed that "the vast majority of the circuits" so holding have *not* limited their holding to "sophisticated parties or to commercial contracts." *Id.* at 1130–31 (collecting cases); *see also Gountoumas v. Giaran, Inc.*, No. CV 18-7720-JFW-PJW, 2018 WL 6930761, at *6 (C.D. Cal. Nov. 21, 2018) (internal quotation marks and citations omitted) (finding that "[t]he greater weight of authority has concluded that the holding of [*Brennan*] applies similarly to non-sophisticated parties" and adopting that "majority view"); *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 992 (N.D.

1    Cal. 2017) (citation omitted) (observing that "'nearly every . . . decision in the

2    Northern District of California . . . has consistently found effective delegation of

3    arbitrability regardless of the sophistication of the parties.'"); *but see Eiess v. USAA*

4    *Fed. Sav. Bank*, No. 19-CV-00108-EMC, 2019 WL 3997463, at *7 (N.D. Cal. Aug.

5    23, 2019) (noting "a split among the district courts in the Ninth Circuit as to whether

6    the sophistication of the parties is a relevant consideration . . . .").

7        The arbitration provision in the Amazon COUs incorporate by reference the

8    AAA rules.  It provides in relevant part that "[t]he arbitration will be conducted by

9    the American Arbitration Association (AAA) under its rules, including the AAA's

10   Supplementary Procedures for Consumer-Related Disputes."  *See* Buckley Decl.

11   ¶¶ 4, 10, Exs. 1-6 at "Disputes."  The provision further states that "[t]he AAA's rules

12   are available at www.adr.org or by calling 1-800-778-7879."  *Id.*  Because the

13   Amazon COUs give an arbitrator—and not this Court—the authority to decide

14   "gateway" questions of "arbitrability," including whether this dispute falls within

15   the scope of the arbitration agreement and any questions of unconscionability, the

16   Court should leave all such questions to the arbitrator.  *See Rent-A-Ctr., W., Inc. v.*

17   *Jackson*, 561 U.S. 63, 68–69 (2010).

18   **V.   EVEN ABSENT THE DELEGATION AGREEMENT, THIS**

19   **DISPUTE FALLS WITHIN THE SCOPE OF THE AMAZON**

20   **ARBITRATION AGREEMENT, WHICH IS NOT**

21   **UNCONSCIONABLE.**

22   **A.   The Dispute is Within the Broad Scope of the Arbitration**

23   **Agreement.**

24       The arbitration agreement in the Amazon COUs broadly applies to "[a]ny

25   dispute or claim relating in any way to your use of any Amazon Service, or to any

26   products or services sold or distributed by Amazon or through Amazon.com . . . ."

27   Buckley Decl. ¶¶ 4, 10, Exs 1-6.  Similarly, the Alexa Terms state that "[a]ny dispute

28

1  or claim arising from or relating to this Agreement or Alexa is subject to the binding
2  arbitration" terms "in the <u>Amazon.com Conditions of Use</u>."  *Id.* at ¶ 11, Exs. 7-19 at
3  § 3.6.

4    Thus, if this Court concludes that it must reach the scope issue (it need not),
5  the "broad and far reaching" language of these arbitration clauses "leaves little doubt
6  that the dispute [here] is subject to arbitration."  *Chiron*, 207 F.3d at 1131 (ordering
7  arbitration as breadth of arbitration agreement and federal policy favoring arbitration
8  embodied in the Federal Arbitration Act "leaves no place for the exercise of
9  discretion by a district court") (internal quotations and citations omitted); *see also*
10  *In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1224 (N.D. Cal. 2007)
11  (holding that arbitration agreement that covered "any other services provided by . . .
12  KPMG," and disputes involving "any entity for whose benefit the services in
13  question are or were provided" had broad scope and *retroactive effect*).  Courts
14  examining the substantially identical Amazon arbitration agreement have found that
15  its use of "any dispute" language gave the agreement broad scope: "[W]hen
16  arbitration agreements contain broad 'relating to any dispute' language, both future
17  and past disputes are included in the scope of the arbitration agreement."  *Ekin*, 84
18  F. Supp. 3d at 1178; *see also Peters*, 2 F. Supp. 3d at 1173 (same with Amazon
19  business services agreement).

20    This lawsuit falls within the broad scope of the arbitration agreements under
21  the Amazon COUs and the Alexa Terms.  Plaintiff's claims arise directly from her
22  use of the Alexa service.  Her claims thus unquestionably relate to "use of any
23  Amazon Service" within her household, as well as to any "services . . . distributed
24  by Amazon." Buckley Decl. ¶¶ 4, 10, Exs 1-6.   Moreover, the Echo Dot and Fire
25  TV devices that Plaintiff used are "products . . . sold or distributed by Amazon or
26  through Amazon.com," and thus Plaintiff's claims concerning her use of Alexa on
27  any of those products fall within the unambiguous scope of the arbitration
28

agreement.   Buckley Decl. ¶¶ 4, 10, Exs. 1-6 at "Disputes"; *cf. Payne*, 2018 WL 4489275 at *5 (holding that arbitration agreement applied to dispute concerning allegedly defective eclipse glasses purchased through Amazon).

### B.      The Arbitration Agreement is Not Unconscionable.

The party asserting unconscionability bears the burden of putting forth facts to prove it. *Mortensen*, 722 F.3d at 1157 ("As arbitration is favored, those parties challenging the enforceability of an arbitration agreement bear the burden of proving that the provision is unenforceable.").  The Court need not reach this issue, because when questions of arbitrability have been delegated to the arbitrator, as they are here, unconscionability challenges are for the arbitrator to decide. *Jackson*, 561 U.S. at 68–69 (only unconscionability challenges directed at the delegation clause may be considered by the Court).  But even if not delegated, the Amazon agreement is neither procedurally nor substantively unconscionable.

Procedural unconscionability refers to the lack of meaningful choice, including "the manner in which the contract was entered, whether each party had a reasonable opportunity to understand the terms of the contract, and whether the important terms were hidden in fine print." *Brinkley v. Monterey Fin. Servs., Inc.*, 242 Cal. App. 4th 314, 336 (2015) (applying Washington law).  The fact that a consumer contract is adhesive does not render it procedurally unconscionable. *See Concepcion*, 563 U.S. at 346-47 (enforcing arbitration provision in an adhesion contract, noting "the times in which consumer contracts were anything other than adhesive are long past.").  To the contrary, "[s]tandardized adhesion contracts are necessary in a busy, commercial society." *Nicosia*, 384 F. Supp. 3d at 264.

Here, both Plaintiff and her husband had a meaningful opportunity to understand the terms of the contract.  Amazon presented the terms of its COUs, including its arbitration provision, to account holders such as Plaintiff and her husband when he registered the Alexa-enabled Echo Dot and every time they made

1   a purchase through the Amazon checkout page—which Plaintiff and her husband
2   each did numerous times after activating Amazon devices in their homes.  *See* Bell
3   ¶ 3, Ex. A.  Plaintiff cannot credibly argue that the important terms are in "fine print,"
4   as Amazon highlights the arbitration provision with bold text—both in the COUs
5   themselves and within the Alexa Terms.  Buckley Decl. ¶¶ 4, 10, 11, Exs. 1-6 at
6   "Disputes," Exhs. 7-19 at § 3.6.  Far from burying the arbitration provisions in fine
7   print, Amazon specifically emphasized these terms in the documents' format.

8   The agreement is also not substantively unconscionable.  "A term is
9   substantively unconscionable where it is one-sided or overly harsh, shocking to the
10  conscience, monstrously harsh, or exceedingly calloused."  *Gandee v. LDL Freedom*
11  *Enters., Inc.*, 176 Wash.2d 598, 603 (2013) (internal citations omitted).  Amazon's
12  arbitration provision is none of these things.  It provides that Amazon will pay all
13  arbitration fees for claims less than $10,000, and that consumers may choose
14  whether to arbitrate in their home jurisdiction or exclusively by phone appearances
15  and written submissions.  Buckley Decl. ¶¶ 4, 10, Exs. 1-6 at "Disputes."  These
16  provisions compare favorably to court proceedings, where customers might be
17  required to pay their own fees (which could eclipse the amount of relief sought for
18  smaller claims) and be compelled to appear to give testimony.

19  Recognizing these even-handed terms, courts have routinely rejected the
20  argument that Amazon's arbitration provision is unconscionable.  *See Payne*, 2018
21  WL 4489275 at *8 (finding that arbitration provision was not unconscionable);
22  *Fagerstrom*, 141 F. Supp. 3d at 1064-76 (same); *Peters*, 2 F. Supp. 3d at 1170
23  (same).  This Court should do the same.

24  <u>**CONCLUSION**</u>

25  Under the FAA, once the Court determines that Plaintiff's claims are referable
26  to arbitration, it must, at a minimum, stay proceedings.  9 U.S.C. § 3.  In the
27  alternative, Section 3 does not limit the court's authority to dismiss an action where

28

1  the language of an arbitration provision is sufficiently broad to bar all claims as it is
2  here.  *See Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988)
3  (discussing 9 U.S.C. § 3 and holding that "[t]he district court acted within its
4  discretion when it dismissed" a case after submitting all claims to arbitration); *see*
5  *also O'Donnell v. TD Ameritrade, Inc.*, No. 07-cv-0123 BTM (JMA), 2008 WL
6  8976220, at *5 (S.D. Cal. June 17, 2008) ("Because all of the issues presented in this
7  lawsuit are arbitrable, it is proper to dismiss the action rather than stay the
8  proceedings.").

9      Accordingly, Amazon respectfully requests that this case be dismissed, or
10  alternatively stayed, pending the outcome of arbitration of Plaintiff's claims.

11

12  Dated:  October 10, 2019                Respectfully submitted,

13                                         FENWICK & WEST LLP

14
                                           By:  *s/ Laurence F. Pulgram*
15                                              Laurence F. Pulgram

16                                         Attorneys for Defendants
                                           AMAZON.COM, INC. and
17                                         A2Z DEVELOPMENT CENTER, INC.

18

19

20

21

22

23

24

25

26

27

28