**STEPHENS & STEPHENS LLP**
CONRAD B. STEPHENS (266790)
505 South McClelland Street
Santa Maria, CA 93454
Telephone: (805) 922-1951
Facsimile: (805) 922-8013
E-mail: conrad@stephensfirm.com

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
ROBERT K. SHELQUIST (Admitted *pro hac vice*)
rkshelquist@locklaw.com
REBECCA A. PETERSON (241858)
rapeterson@locklaw.com
MICHAEL J. VANSELOW (Admitted *pro hac vice*)
mjvanselow@locklaw.com
100 Washington Avenue South, Suite 2200
Minneapolis, MN  55401
Telephone:   612-339-6900
Facsimile:   612-339-0981
[Additional Counsel on Signature Page]

Attorneys for Plaintiffs,

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION

| | |
|---|---|
| HAYLEY CHARMAINE TICE, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>vs.<br><br>AMAZON.COM INC.,<br><br>Defendants. | CASE NO.:  5:19-CV-01311-SVW-KK<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS PLAINTIFF'S CLAIMS**<br><br>Date:       November 18, 2019<br>Time:      1:30 pm<br>Judge:     Stephen V. Wilson<br>Ctrm:      10A<br>Trial Date:  None |

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION/ARGUMENT SUMMARY ............................................. 1

II.     FACTS/PROCEDURAL HISTORY ...................................................... 1

III.    ARGUMENT ................................................................................... 4

    A. Amazon Has No Right to Compel Plaintiff to Arbitrate
       Her Claims Because Amazon's Arbitration Agreement
       Does Not By its Own Terms Apply to Plaintiff's
       Claims Regarding Amazon's Illegal Recording
       of Her Voice and Communications When She
       Did Not Use Her Husband's Alexa Device. ...................................... 4

    B. California – Not Washington – Law Applies to the
       Issues Here, But Even if Washington Law Applies,
       as a Nonsignator to Amazon's Arbitration Agreement,
       Plaintiff is Not Required to Arbitrate her Claims ......................... 8

       1.  Plaintiff is a Non-Signatory and Her "Use" of Her
           Husband's Alexa Device is Not Subject to
           Amazon's Conditions of Use and Arbitration
           Agreement under California Law. ........................................... 11

       2.  Plaintiff Also Cannot be Compelled to Arbitrate
           Based on Equitable Estoppel Principles
           Under Washington Law ........................................................ 15

    C. The Issue of Arbitrability Here is a Question
       for this Court – Not an Arbitrator - to Decide ............................ 18

    D. It Would be Inequitable to Compel Plaintiff and the
       Class Members to Arbitrate Their Claims. ................................. 20

IV.     CONCLUSION ............................................................................. 21

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
   24 Cal.4th 83, 99 Cal.Rptr.2d 745, 6 P.3d 669 (2000).......................................21

*Asfaw v. Lowe's HIW, Inc.*,
   No. 14-cv-00697, 2014 WL 1928612 (C.D. Cal. May 13, 2014) ......................11

*Brennan v. Opus Bank*,
   796 F.3d 1125 (9th Cir. 2015) ...........................................................................19

*Brown v. Comcast Corp.*,
   No. 16-cv-00264, 2016 WL 9109112 (C.D. Cal. Aug. 12, 2016)...............16, 17

*Comer v. Micor, Inc.*,
   436 F.3d 1098 (9th Cir. 2006) .....................................................................17, 18

*Corbis Corp. v. Integrity Wealth Mgmt., Inc.*,
   No. C09-708MJP, 2009 WL 3835976 (W.D. Wash. Nov. 16, 2009) ...............11

*DKS, Inc. v. Corp. Bus. Sols., Inc.*,
   675 F. App'x 738 (9th Cir. 2017)........................................................................15

*Eiess v. USAA Fed. Sav. Bank*,
   No. 19-CV-00108-EMC, 2019 WL 3997463 (N.D. Cal. Aug. 23,
   2019) ...................................................................................................................19

*Ekin v. Amazon Servs., LLC*,
   84 F. Supp. 3d 1172 (W.D. Wash. 2014) ...........................................................12

*Elite Logistics Corp. v. Hanjin Shipping Co., LTD.*,
   589 Fed. Appx. 817 (9th Cir. 2014) ...................................................................20

*Fagerstrom v. Amazon.com, Inc.*,
   141 F. Supp. 3d 1051 (S.D. Cal. 2015), *aff'd sub nom. Wiseley v.
   Amazon.com, Inc.*, 709 F. App'x 862 (9th Cir. 2017)..................................12, 18

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995) ...........................................................................................19

*Flanagan v. Flanagan*,
   27 Cal. 4th 766, 41 P.3d 575 (2002) ..................................................................10

*Garcia v. Cent. Coast Restaurants, Inc.*,
    No. 18-cv-02370, 2019 WL 4601538 (N.D. Cal. Sept. 23, 2019) .................... 15

*Hirsch v. Amper Fin. Servs., LLC*,
    215 N.J. 174, 71 A.3d 849 (2013) ........................................................ 18

*In re Yahoo Mail Litig.*,
    308 F.R.D. 577 (N.D. Cal. 2015) ........................................................ 10

*InfoSpan, Inc. v. Emirates NBD Bank PJSC*,
    No. 11-cv-1062, 2012 WL 12960766 (C.D. Cal. Dec. 7, 2012) ...................... 16

*J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*,
    863 F.2d 315 (4th Cir. 1988) ............................................................. 17

*Kearney v. Salomon Smith Barney, Inc.*,
    39 Cal. 4th 95, 137 P.3d 914 (2006) .................................................... 10

*Kramer v. Toyota Motor Corp.*,
    705 F.3d 1122 (9th Cir. 2013) ........................................................... 18

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ............................................................. 10

*McKee v. Audible, Inc.*,
    No. 17-cv-1941, 2017 WL 4685039 (C.D. Cal. July 17, 2017) ...................... 12

*Mundi v. Union Sec. Life Ins. Co.*,
    555 F.3d 1042 (9th Cir. 2009) ..................................................... 11, 16, 18

*Nedlloyd Lines B.V. v. Superior Court*,
    3 Cal. 4th 459 (1992) ..................................................................... 9

*Nicosia v. Amazon.com, Inc.*,
    384 F. Supp. 3d 254 (E.D.N.Y. 2019) .................................................... 17

*Norcia v. Samsung Telecomms. Am., LLC*,
    845 F.3d 1279 (9th Cir. 2017) ........................................................... 12

*Payne v. Amazon.com*,
    No. 17-cv-2313, 2018 WL 4489275 (D.S.C. July 25, 2018). ..................... 12, 17

*Peters v. Amazon Servs. LLC*,
    2 F. Supp. 3d 1165 (W.D. Wash. 2013), *aff'd*, 669 F. App'x 487
    (9th Cir. 2016) ........................................................................... 12

iii

*PRM Energy Sys., Inc. v. Primenergy, L.L.C.*,
  592 F.3d 830 (8th Cir. 2010) ................................................................ 17

*Sonic–Calabasas A, Inc. v. Moreno*,
  57 Cal.4th 1109, 163 Cal.Rptr.3d 269 (2013) .................................... 21

*State v. Smith*,
  189 Wash.2d 655 (2017) ......................................................................... 9

*Townsend v. Quadrant Corp.*,
  268 P.3d 917 (Wash. 2012) .................................................................. 17

*Velasquez-Reyes v. Samsung Electronics America, Inc.*,
  777 Fed.Appx. 241 (9th Cir. 2019) (unpublished opinion) ................ 12

*Williams v. Walker–Thomas Furniture Co.*,
  350 F.2d 445 (D.C.Cir.1965) .............................................................. 21

*Wilson v. Willis*,
  426 S.C. 326, 827 S.E.2d 167 (2019) ............................................ 18, 20

**RULES**

Rule 23 ........................................................................................................ 13

**STATUTES**

Cal. Civil Code § 3294(a) .......................................................................... 10

California Unfair Competitions Law, Cal. Bus. & Prof. Code § 17200,
  *et seq.* ....................................................................................................... 4

California Invasion of Privacy Act, Cal. Penal Code § 630 ............ 8, 9, 10, 13

Federal Arbitration Act ......................................................................... 14, 20

Privacy Act, Cal. Penal Code § 630, *et seq.* ............................................. 3

Wash. Rev. Code Ann. § 9.73.030 ......................................................... 9, 10

## I.      INTRODUCTION/ARGUMENT SUMMARY

Plaintiff Hayley Tice never purchased or registered the Amazon Alexa device her husband purchased and registered.  She also never read, signed, or otherwise agreed to Amazon's unilateral and adhesive terms and conditions of use and arbitration agreement specific to the use of Alexa devices by Alexa purchasers and registrants, and never consented to Amazon's unannounced and criminal illegal recording and storage of her voice and communications. Amazon surreptitiously and illegally recorded Plaintiff and adult California residents who live or work in or visit households where an Amazon Alexa device is installed, even when these residents did not use the devices by speaking the magic "Alexa" activation wake word.  As such, Amazon's adhesive arbitration agreement simply does not apply *by its own express terms.*

Amazon fundamentally and deliberately mischaracterizes the claims of Plaintiff and the other Class Members in its desperate, highly novel, unprecedented, unwarranted, and inequitable effort to shoehorn this case into arbitration knowing that Plaintiff and the Class Members are not, and were not, subject to Amazon's adhesive Alexa-specific conditions of use and arbitration agreement.  Amazon's intent to deprive Plaintiff of her constitutionally protected right to a trial by jury based on a provision in a contract to which she never read, signed, or agreed to and which does not by its own terms apply to her claims is nothing short of specious and its motion to compel arbitration should accordingly be denied.

## II.     FACTS/PROCEDURAL HISTORY

As Plaintiff outlined in her opposition to Amazon's request for discovery and motion for a stay, the relatively simple facts giving rise to this lawsuit are laid out in Plaintiff's Class Action Complaint. To again very briefly summarize, Plaintiff's husband purchased an Amazon "Alexa" device and registered it with Amazon thereby allegedly agreeing to unilateral and adhesive terms and conditions in an

Alexa-specific agreement, one of which was that he agreed to arbitrate claims *he* had relating to *his use* of the device. Complaint ("Compl.") at ¶ 27, Dkt. No. 1.  To use the Alexa app, a person must have a registered Amazon Alexa account and set-up the device which entails pairing the device with the app. After the device is paired with the app, it is ready to be used by anyone – not just the person who purchased the device and has a registered Amazon Alexa account. Alexa also recognizes the voices of others in a household or other building with an Alexa device who purchased and registered their own Alexa devices in their own households or other buildings. In other words, any single Alexa device, regardless of location, can recognize the voice of a registered Alexa user.  And any single Alexa device can also be used by persons who do not have their own registered Alexa device.

Plaintiff never saw or read the Amazon arbitration agreement pertaining to her husband's purchase and registration of his Alexa device, never signed it, and never agreed to it.  During the meet and confer process, Amazon admitted that it did not have Plaintiff's name on its Amazon Alexa registration list. The adhesive Alexa-specific arbitration agreement also did not state *anywhere* that Plaintiff or any other nonsignator was bound by Amazon's agreement to arbitrate. Compl. at ¶ 16, Dkt. No. 1.

Alexa is a voice-activated device that constantly listens in the owner's home for a "wake word" which is set by default to "Alexa."  If someone decides to use the device and says the wake word, the device starts recording the user's voice and uploads the recording to Amazon's Alexa Cloud. Amazon states that the device can detect a user speaking the wake word from across the room.  In fact, Alexa can detect a user speaking or engaging in conduct in another room behind a closed door. Compl. at ¶ 13 Dkt. No. 1.

An Alexa device records and permanently stores the voices and communications of: (1) persons "using" the device – whether or not the Alexa owner/account holder;  (2) persons talking in the background while someone is using

the device; and (3) persons in a household even when the device has not been activated and is not being used apparently so Amazon can illegally eavesdrop on persons in a home and create profiles to commercially use and sell.[1]  It is important to note that Amazon has never denied in this lawsuit, or any other lawsuit involving its Alexa devices, that Alexa devices record and store the voices and communications of persons speaking in the background while someone converses with Alexa after activating it.  It has also never denied that Alexa devices sometimes record the voices and communications of those in a household even when no one has activated the devices.

Plaintiff alleges that Amazon's recording and storage of her voice and communications without her consent in all three of the above scenarios violated the California Invasion of Privacy Act, Cal. Penal Code § 630, *et seq*. ("CIPA") and her common law right to be free from unlawful invasions of privacy.  Compl. at ¶¶ 49 & 57, Dkt. 1[2]  Plaintiff further alleges that these illegal recordings also violated the

---

[1] A person "uses" an Alexa device when the person speaks the wake word to activate the device and then asks it a question – e.g., "Alexa, what is the temperature outside?" – or gives it a command – e.g., "Alexa, turn up the thermostat two degrees."  Amazon has never contended, nor could it ever credibly contend, that persons "use" an Alexa device when they are recorded but never activated the device with the wake word.

[2] For the Court's reference, Section 632 (a) of the CIPA reads:

(a) A person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio, shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500) per violation, or imprisonment in a county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment. If the person has previously been convicted of a violation of this section or Section 631, 632.5, 632.6, 632.7, or 636, the person shall be punished by a fine not exceeding ten thousand dollars ($10,000) per violation, by imprisonment in

3

California Unfair Competitions Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL") that prohibits any "unlawful, unfair or fraudulent business act or practice." Compl. at ¶¶ 52 & 53. Amazon's illegal recording and storage of the voices and communications of Plaintiff and the Class Members was an unlawful and unfair business practice.

The pertinent procedural history of this matter is briefly as follows. After Plaintiff served and filed her Class Action Complaint, the parties conferred over the issue of Amazon's request for the email addresses of Plaintiff and her husband. Amazon filed with the Court a request for these email addresses that Plaintiff opposed on various grounds included relevancy. Dkt. No. 37. The Court correctly denied Amazon's request for discovery of these email addresses agreeing with Plaintiff that "[a]t this stage of the proceedings, Defendants' requested discovery is not relevant to Plaintiff's legal and factual allegations."[3] Dkt. No. 40.

## III.   **ARGUMENT**

### A.   **Amazon Has No Right to Compel Plaintiff to Arbitrate Her Claims Because Amazon's Arbitration Agreement Does Not By its Own Terms Apply to Plaintiff's Claims Regarding Amazon's Illegal Recording of Her Voice and Communications When She Did Not Use Her Husband's Alexa Device.**

In trying to compel Plaintiff to arbitrate her claims over Amazon's illegal conduct, Amazon fundamentally and deliberately mischaracterizes the claims of Plaintiff and the Class Members. Amazon repeatedly contends in the instant motion, and also contended in its prior request for discovery, that Plaintiff is only alleging

---

a county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment.

[3] For months, Amazon's counsel requested Plaintiff's and her husband's email addresses claiming that "it could not possibly determine these." It told the Court the same thing in its prior request for discovery. Dkt. No. 37. And then, via a modern day miracle, Amazon suddenly identified these email addresses "through its own investigation" right after the Court refused to order Plaintiff to provide them.

that she was illegally recorded when she "used" her husband's Alexa device and that Amazon's conditions of use and arbitration agreement – that apply *expressly and solely* to claims arising out of the "use" on its Alexa devices - compels her to arbitrate her claims in this action.  While Plaintiff is not required to arbitrate her claims pertaining to her use of her husband's Alexa device since she never saw, read, signed, or otherwise agreed to the arbitration agreement as discussed further herein, there can be no question that she cannot be compelled to arbitrate her claims ***arising from when she did not use the device***.

Not only does Amazon fail to address this point and the undisputed fact that its Alexa device illegally recorded Plaintiff when she did not use the device, but it goes even further and deliberately tries to mislead the Court into believing that Plaintiff has not alleged such claims.  In a remarkable lack of candor, Amazon contends that Plaintiff only alleged that her husband's Alexa device unlawfully recorded her when she activated it with the wake word and used the device.  This is unequivocally false and Amazon knows it.  As outlined above, Plaintiff and the Class Members are claiming their voices and communications were also recorded without their consent even when they were *not* "using" Alexa devices – namely: (1) when the Alexa owners/accountholders, or others, used the devices and the voices/ communications of Plaintiff and the Class Members were recorded in the background; and (2) when Amazon periodically recorded their voices/ communications even when the Alexa devices were not activated as Amazon periodically does when it eavesdrops on persons in houses with Alexa devices.

Accordingly, even if the Court were to determine that Plaintiff consented to the recording of her voice and agreed to arbitrate her claims relating to when she *used the Alexa device* – which she vehemently does not concede – that would not in any way require Plaintiff to arbitrate her claims regarding the recording and storage

of her voice and communications when she did *not* use the device.[4]

Amazon's deliberate deception in mischaracterizing Plaintiff's claims is abundantly clear when the Court sees that Amazon cited ¶¶ 27, 28, 29, 31 and 32 of Plaintiff's Complaint in its prior Memorandum in support of its request for discovery but conveniently failed to cite ¶ 30 in which Plaintiff specifically alleged that she was not aware that the Alexa Device recorded her voice and communications "even when someone else in the household activated the Device with a wake work but the Device could also hear [her] voice and communications in the background."[5]  Dkt. 37.

Amazon's process for committing users to its conditions of use obviously do not even come into play when adults are unlawfully recorded when *not* using the device. While there is an issue of the enforceability of "clickwrap" and "sign-up wrap" agreements under California law, this should not matter at all here where the Amazon arbitration agreement at issue does not apply *by its own express terms* to the claims at issue in this case.  Moreover, Amazon goes to great length to explain the checkout flow it imposes when a consumer orders a book from Amazon. Why then is there no similar checkout flow to get consent actively or affirmatively from

---

[4] In fact, Amazon relies for its motion to compel arbitration on its adhesive arbitration agreement in its conditions of "use" and terms of "use."  These terms and conditions of "use" and the arbitration agreement do not, therefore, apply to claims regarding illegal Alexa recordings of persons *not using* an Alexa device.

[5] Amazon also disregards Paragraph 14 of the Complaint wherein Plaintiff expressly alleged that Alexa is constantly listening to voices and communications of persons in a household with an Alexa device, that the device sometimes records these voices and communications even without prompting by a wake word, and that the persons in the household have no way of knowing that Alexa is recording them. As Plaintiff previously noted, just a few of many examples where this occurred is where Class Members merely lived in a household with an Alexa device, worked in such a household (e.g., as a maid, nanny, contractor), or just visited a household with such a device and were unknowingly recorded.

each distinct voice Alexa records when persons are recorded when not using the device?  Since Amazon records and stores the voices of its registered Alexa account holders, its Alexa devices could be programmed not to record the voices or anyone else it hears at any time who did not consent to be recorded.

Amazon argues that the Alexa account holders assent to its arbitration agreement when they activate their devices by registering the Alexa app.  Plaintiff does not dispute this.  Rather, she notes that she and the Class Members were *not* the Alexa account holders.  Similarly, Amazon notes that its conditions of use provisions state that: "If you do not accept the terms of this Agreement, you may not use Alexa."  Once again, Plaintiff has claimed that an Alexa device unlawfully recorded her when she did not *use* it and the Class Members have identical claims.

Plaintiff addresses in more detail in Argument Sections III and IV *infra* Amazon's argument that "equitable estoppel" principles should require that Plaintiff arbitrate her claims.  Amazon alleges that Plaintiff and the Class Members are equitably prevented from benefitting "from the use" of Alexa while denying the alleged obligation to arbitrate.  Suffice it to say, the obvious and fundamental logical flaw in this argument is that even if the Court decided that Plaintiff benefitted from her use of her husband's Alexa device when she used it, she plainly did not benefit from the device when her voice and communications were recorded and stored when she did *not* use the device.  Hence, Amazon's equitable estoppel argument does not and cannot work to compel her to arbitrate her claims.[6]

---

[6] Amazon's counsel actually conceded in his oral argument on the motion to compel arbitration in the Washington *B.F.* case that Amazon's equitable estoppel argument does not apply to a subset of the Class Members in this case – namely persons recorded by Alexa devices who are not members of a household:

[A]nd your rule has to apply to anyone who walks into the house.  Okay.  I would say that the person who walks into the house is not the same sort of direct recipient of a benefit as a household member for whom the device was procured, who uses it regularly, and could not

7

Based on the foregoing argument, the Court can simply end its consideration of Amazon's motion to compel arbitration right here given that it is clear Plaintiff has pled a claim not even covered by the express terms of Amazon's Alexa-specific arbitration agreement.[7]  The following Sections describe yet additional reasons why the Court should deny Amazon's motion to compel arbitration.

> **B.**     **California – Not Washington – Law Applies to the Issues Here, But Even if Washington Law Applies, as a Nonsignator to Amazon's Arbitration Agreement, Plaintiff is Not Required to Arbitrate her Claims.**

Plaintiff addresses the issue of the applicable state law that Amazon very cryptically argues in its Memorandum at page 9, but notes at the outset that it actually does not matter whether California law or Washington law applies because Amazon's arbitration agreement, by its own express terms, simply does not apply at all to claims Plaintiff and the Class Members have as discussed above.  Moreover, as discussed herein, Amazon cannot compel Plaintiff to arbitrate her claims based upon the illegal recording of her voice and communications even when she used her husband's Alexa device.  Amazon is incorrect to assume that Washington law applies to this issue.  Because Plaintiff is not a signatory to the Alexa-specific conditions of use and arbitration agreement, the arbitration agreement does not apply

---

otherwise use it but for the agreement.

*B.F. v. Amazon*, No. 19-cv-00910, Verbatim Report of Proceedings, Dkt. 77, at 30 (Oct. 17, 2019).

[7] It is because Amazon recognizes this fatal problem with its motion to compel arbitration – and its defense to the merits - that it refused to give Plaintiff's counsel the information and records Plaintiff could use to definitively prove that her voice and communications were recoded when she was not using her husband's Alexa device. Amazon has refused to produce these recordings in its responses to Plaintiff's written discovery requests because it knows full well that they will show this and not only fatally undermine its motion to compel arbitration, but also prove its liability on the merits of the CIPA claims of Plaintiff and the Class Members.

to her claims in the instant dispute.  There is no justification, and Amazon cites to no support, for applying a contractual choice of law provision from a contract which one party either did not read, sign or agree to or which does not apply to the dispute at issue.

Second, even if Amazon's adhesive conditions of use and arbitration agreement were to apply, the contractual choice of law Amazon sets forth in its contract is unenforceable in this context.  As Amazon acknowledges, California has adopted the restatement approach to resolving conflict of law issues of this type. *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 464-65 (1992).  *Nedlloyd* makes clear that contractual choice of law clauses are unenforceable when:

> the chosen state's law is contrary to a *fundamental* policy of California. If there is no such conflict, the court shall enforce the parties' choice of law. If, however, there is a fundamental conflict with California law, the court must then determine whether California has a materially greater interest than the chosen state in the determination of the particular issue.... If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state's fundamental policy.

*Id.* (emphasis in original).

Here, such a conflict of law exists, and California's interest in applying its law materially outweighs Washington's interest.  The conflict is apparent in multiple respects.  First, the CIPA is more inclusive in its scope and therefore more favorable to Plaintiff and the California Class Members with regard to the liability of Amazon for its illegal recordings with its Alexa devices.  As just one example, Washington's statute, Wash. Rev. Code Ann. § 9.73.030, only prohibits the recording of oral "conversations." *State v. Smith,* 189 Wash.2d 655, 663 (2017).  The CIPA, on the other hand, is broader and applies to and prohibits the recording of communications which encompasses "acts" including sexual conduct between persons.

Second, the CIPA is considerably more favorable to Plaintiff and the Class

Members with regard to the relief available for the unlawful recording and storage of voices and communications.  Section 632 of the CIPA, combined with the UCL, alleged in Plaintiff's Complaint, allows for the recovery of injunctive relief, statutory damages of the greater of either $5,000 or three times the amount of actual damages sustained,  punitive damages, and attorneys fees and costs.  Cal. Penal Code § 637.2; Cal. Civil Code § 3294(a).  In contrast, under Washington law, Plaintiff and the Class Members would be limited to statutory damages of $1,000, and do not appear to be entitled to putative damages or injunctive relief.   See Wash. Rev. Code Ann. § 9.73.060.  These differences are material and affect the ability of Plaintiff and the Class Members to receive meaningful relief, and changes to Amazon's behavior.  *See In re Yahoo Mail Litig.*, 308 F.R.D. 577, 602–03 (N.D. Cal. 2015) (applying California law upon finding material differences between privacy laws of the states).

Third, there is no question that a conflict exists based upon a fundamental policy of California.  Courts have repeatedly noted California's very strong interest in protecting the privacy of its citizens via Section 632 of the CIPA. *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 125, 137 P.3d 914, 934 (2006) (applying California law, emphasizing the importance of "vigorously" enforcing Section 632 to effectuate the Legislature's "strong and continuing interest" in protecting "'the right of privacy of the people of this state); *Flanagan v. Flanagan*, 27 Cal. 4th 766, 774, 41 P.3d 575, 581 (2002) (Section 632 was enacted to address a "serious threat to the free exercise of personal liberties that cannot be tolerated in a free and civilized society.").

Finally, there can be no question that California has an obvious materially greater interest in determining the very important privacy right issues in this lawsuit given that Plaintiff and all the Class Members reside in California.  As the Ninth Circuit has made clear, each state "has an interest in applying its law to transactions within its borders." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 593 (9th Cir. 2012).  Moreover, all the Alexa devices at issue were in California and all the illegal

Alexa recordings occurred in California.  The Court should, therefore, decline to enforce Amazon's choice of law clause requiring the application of Washington law.

### 1. Plaintiff is a Non-Signatory and Her "Use" of Her Husband's Alexa Device is Not Subject to Amazon's Conditions of Use and Arbitration Agreement under California Law.

Amazon points out, correctly, that "*Plaintiff's husband* agreed to the Amazon conditions of use and Alexa Terms." Def. Mtn. at 1, 3-7, 10, 12, Dkt. 43 (emphasis added). But Plaintiff herself never agreed to the Alexa terms and conditions of use. She was not a registered Alexa account holder and Amazon never warned her that her voice and communications were being recorded by the Alexa device. Plaintiff also never consented to the recording, storage, review/analysis, or use of her voice and communications." Compl. at ¶ 31. Nor was she the purchaser of the Alexa device at issue. *See id*. ¶ 27 (Alexa device purchased and registered by husband). Thus, Plaintiff is not, and never was, a party to the Alexa conditions of use, including the arbitration agreement contained therein, and she did not agree that her use of the Alexa Device was subject to these terms of the conditions of use. *See*, *e.g.*, *Asfaw v. Lowe's HIW, Inc.*, No. 14-cv-00697, 2014 WL 1928612, at *3 (C.D. Cal. May 13, 2014)  ("the essential elements of a contract, i.e., (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) a sufficient cause or consideration."); *Corbis Corp. v. Integrity Wealth Mgmt., Inc.*, No. C09-708MJP, 2009 WL 3835976, at *1 (W.D. Wash. Nov. 16, 2009) ("The necessary elements of contract formation are: (1) offer, (2) acceptance, (3) competent parties, (4) legal subject matter and (5) consideration."). Simply put, Plaintiff never saw or accepted the Alexa conditions of use and arbitration agreement. Thus, while disputes between Plaintiff's *husband* and Amazon may fall within the scope of the Alexa terms, disputes between *Plaintiff* and Amazon do not. *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009) ("The face of the contract accordingly

indicates that this dispute 'is not within the scope of the arbitration provision.'") (citation omitted).

Amazon fares no better when considering whether Plaintiff's claims are subject to the Alexa-specific conditions of use and arbitration agreement she agreed to arbitration agreements when making wholly *unrelated* purchases via Amazon's website. In the cases relied on by Amazon, the plaintiffs compelled to arbitrate their claims were the actual customers who purchased from Amazon the products at issue and sought damages related to those purchase transactions. *McKee v. Audible, Inc.*, No. 17-cv-1941, 2017 WL 4685039, at *1 (C.D. Cal. July 17, 2017); *Fagerstrom v. Amazon.com, Inc.*, 141 F. Supp. 3d 1051, 1057 (S.D. Cal. 2015), *aff'd sub nom. Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862 (9th Cir. 2017); *Ekin v. Amazon Servs., LLC*, 84 F. Supp. 3d 1172, 1173-74 (W.D. Wash. 2014); *see also Peters v. Amazon Servs. LLC*, 2 F. Supp. 3d 1165, 1169 (W.D. Wash. 2013), *aff'd*, 669 F. App'x 487 (9th Cir. 2016) (third-party seller brought contractual claim related to products it directly sold through Amazon). And in *Payne v. Amazon.com*, the plaintiffs, though not signatories to the arbitration agreement, "br[ought] a breach of warranty claim that rest[ed] on the contract between Payne and Amazon." No. 17-cv-2313, 2018 WL 4489275, at *7 (D.S.C. July 25, 2018).[8]

Plaintiff's claims bear no relationship to the conditions of use that she allegedly agreed to when she made wholly unrelated purchases of other products through Amazon's website. Instead, Plaintiff has asserted statutory claims arising

---

[8] The Ninth Circuit just made clear again last month that it is not hesitant to find unenforceable arbitration agreements with nonsignatories. *See Velasquez-Reyes v. Samsung Electronics America, Inc.*, 777 Fed.Appx. 241, 241 (Mem) (9th Cir. 2019) (unpublished opinion) (finding arbitration agreement in booklet with vague terms insufficient to compel nonsignatory to arbitrate claims). The Ninth Circuit cited another of its decisions from 2017, *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279 (9th Cir. 2017), that foreclosed Samsung's argument that California courts have adopted the "in-the box" theory of assent and that the "in-the-box" theory would apply in the circumstances of that case. *Id.* at 1287-90.

from Amazon's violations of the CIPA and UCL, as well as a common law tort claim for invasion of her right to privacy all of which arose from a product and service that Plaintiff did *not* purchase or for which she did not sign up.  Her claims, do not, and simply cannot, therefore, rest on the terms of the Alexa-specific conditions of use.[9]

"Amazon has become an integral part of day-to-day consumer behavior." 2019 Amazon Consumer Behavior Report ("Consumer Report") at 5.  In a survey, 92% of respondents reported purchasing an item from Amazon. NPR/Marist Poll http://maristpoll.marist.edu/wpcontent/misc/usapolls/us180423_NPR/NPR_Marist%20Poll_Tables%20of%20Questions_May%202018.pdf#page=2 at 13. At the same time, an Amazon executive recently revealed that Amazon has sold more than 100 million Alexa devices.[10]   The devices are found in at least 15 percent of American households.[11]  Applying Amazon's logic to these figures, over 200 million[12] people have waived their Rule 23 rights and agreed to arbitration regarding a device that listens and records communications in homes across the United States, without ever purchasing an Alexa device or reviewing the Alexa-specific  terms and

---

[9] The claims that arise from her voice being recorded and permanently stored (1) "when someone else in the household activated the Device" or (2) "without any prompting by a wake work …[with] no way of knowing that Alexa is recording them," by a service neither purchased nor agreed to, cannot be the meaning of "use" that was contemplated by the parties. Holding otherwise would have far reaching results drastically curtailing the rights of American consumers.

[10] https://www.theverge.com/2019/1/4/18168565/amazon-alexa-devices-how-many-sold-number-100-million-dave-limp (last accessed Oct. 21, 2019).

[11] Based on reporting that 26.2 percent of households use smart speakers, with Amazon holding between 61 and 70 percent of that market share. https://techcrunch.com/2019/03/08/over-a-quarter-of-u-s-adults-now-own-a-smart-speaker-typically-an-amazon-echo/ (last accessed Oct. 21, 2019).

[12] Applying survey results to estimated U.S. adult population of 250 million people. https://census.gov/quickfacts/fact/table/US/PST045218 (last accessed Oct. 21, 2019).

conditions of use, simply by virtue of buying some other unrelated product from Amazon at an unspecified point in time – including even years before Alexa was invented.

Amazon's argument is also illogical insofar as Amazon requires assent to its adhesive Alexa-specific arbitration agreement every time an account holder purchases a product from its site.  If, as Amazon alleges, a single purchase binds a consumer to arbitrate claims relating to all future products the consumer purchases, there would be no need to require the consumer to agree to the arbitration agreement with every purchase.  The very first time consumers agreed to the arbitration agreements pertinent to the products they purchased, they would by Amazon's logic be forever until the end of time bound to arbitrate their claims over all future purchases and products not even existent at that time.

Furthermore, Amazon's conditions of use and arbitration agreements have changed over time.  Which arbitration agreement would apply to Plaintiff's use of her husband's Alexa device - the agreement in effect the very first time Plaintiff made a purchase from Amazon's website, or the agreement in effect the last time she made a purchase from Amazon's site before commencing this action, or the agreement in effect regarding the most purchases she made, or the agreement in effect as to the last purchase she made before her husband bought and registered his Alexa device, etc.?  Suffice it to say, Amazon's argument is both illogical and wholly unworkable.  Moreover, it also appears that the Court concurs that that unrelated purchases Plaintiff may have made with her Amazon account are not grounds to compel her to arbitrate when the Court decided that the email addresses of Plaintiff and her husband that Amazon claimed it needed to search for such past purchases are "irrelevant at this stage of the proceedings."  Dkt. No. 40.

Amazon's argument cannot be consistent with the intent of the Federal Arbitration Act, and to the extent the conditions of use have literal application to Plaintiff's claims, they should be declared void.

> In California, a contract is void—and any arbitration provision therein is unenforceable—if the party resisting arbitration can "show that the fraud went to the inception or execution of the agreement, so that the promisor did not voluntarily assent to any part of the purported contract of which the arbitration clause is a part." Fraud in the inception may exist even if both parties had "ample opportunity to read the [contract] in [its] entirety," because the party drafting the terms and conditions of a contract may do so "in such a way as not to apprise" the other party of its intentions.

*DKS, Inc. v. Corp. Bus. Sols., Inc.*, 675 F. App'x 738, 739 (9th Cir. 2017) (internal citations omitted). "The operative inquiry in determining whether a contract was created by fraud is whether a reasonable reader of the contract would have understood to what the parties were agreeing. *Garcia v. Cent. Coast Restaurants, Inc.*, No. 18-cv-02370, 2019 WL 4601538, at *3 (N.D. Cal. Sept. 23, 2019). In the instant case, reasonable persons would not and could not know that they agreed to arbitrate claims pertaining to products and services they did not purchase and did not even exist at the time of their purchases. *Id.* Neither Plaintiff nor any of the putative Class Members voluntarily assented, or would ever have assented, to such a term. *DKS*, 675 F. App'x at 739. Because there was no meeting of the minds as to this point, Amazon's "contract was void at its inception." *Id.*[13]

### 2. *Plaintiff Also Cannot be Compelled to Arbitrate Based on Equitable Estoppel Principles Under Washington Law.*

Amazon's equitable estoppel argument based on Washington law has been uniformly rejected, including by a federal Magistrate Judge in the Western District of Washington just last week. *See B.F. v. Amazon*, No. 19-cv-00910, Report and

---

[13] Plaintiff anticipates that Amazon may try to rely on a sentence in Magistrate Judge Peterson's Report and Recommendation in the Washington *B.F.* Alexa case stating: "The parents also agreed to the Amazon's COU multiple times when making purchases through Amazon." *Id.* at 6. Any such reliance on this statement would be futile for all of the reasons discussed above as well as the fact that this sentence is unquestionably dicta not pertinent to the issues the court considered and decided in that case.

Recommendation, Dkt. 78, at 16 (Oct. 21, 2019) (collecting cases). "Because [Amazon] is invoking equitable estoppel against a nonsignatory, only the ["knowingly exploits"] line of cases is relevant." *InfoSpan, Inc. v. Emirates NBD Bank PJSC*, No. 11-cv-1062, 2012 WL 12960766, at *4 (C.D. Cal. Dec. 7, 2012); *Brown v. Comcast Corp.*, No. 16-cv-00264, 2016 WL 9109112, at *6 (C.D. Cal. Aug. 12, 2016). In *B.F. v. Amazon*, Magistrate Judge Peterson correctly recognized that "Ninth Circuit precedent [] makes clear that a party does not knowingly exploit a contract by only bringing statutory or tort claims." *Id*. at 15. In fact, "[n]umerous cases interpreting and applying Washington law have expressly acknowledged the proposition that equitable estoppel does not apply where the plaintiffs are suing on statutory grounds, rather than bringing claims under the contract." *Id*. at 16. Put simply, "it [i]s 'essential in all of these cases that the subject matter of the dispute [be] intertwined with the contract providing for arbitration.'" *Mundi*, 555 F.3d at 1046 (citation omitted).

Amazon's "direct benefit" argument likewise fails. At best, "Plaintiff was a passive participant in a service managed by [her husband] and [Amazon] for his and other guest's benefit." *Brown*, 2016 WL 9109112, at *7. Like the *Brown* plaintiff, there is no evidence Plaintiff in the instant case knew of the Alexa Terms or inquired into them. *Id*. Such passive participation "does not equate … to the status of knowing exploitation." *Id*. A contrary finding would have the absurd results recognized in *Brown*:

> Compelling Plaintiff to arbitration on these facts, under the theory of equitable estoppel, would lead to absurd results where virtually any non-primary user of a service, even a casual visitor to a residence, would be bound by an agreement without notice. By Defendant's argument, if Plaintiff had resided with Ms. Stewart for only a few days and watched television at her residence, Plaintiff would have obtained a direct benefit of the RSA, binding him to arbitration. By this same logic, every time a person uses services such as cable or Internet at another person's residence, no matter how long the use was, he or she would be bound to the underlying service agreement in perpetuity because the use of services would be considered a direct benefit.

16

*Id.* at 8.

Each of the cases relied on by Amazon involved a plaintiff who was equitably estopped from avoiding arbitration after bringing claims *that arose from that contract. See Townsend v. Quadrant Corp.*, 268 P.3d 917, 922 (Wash. 2012) ("It is apparent…the children are attempting to enforce the terms of the PSA and that they base their claim for breach of warranty on the warranties contained therein."); *Payne*, 2018 WL 4489275, at *7 (non-signatory "br[ought] a breach of warranty claim that rest[ed] on the contract between Payne and Amazon"); *cf. Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 275 (E.D.N.Y. 2019) (plaintiff represented himself as his wife so that "he directly benefited from the making of that representation … and enjoy[ed] the same contractual rights she enjoyed"); *PRM Energy Sys., Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 836 (8th Cir. 2010) (affirming arbitration order where plaintiff "specifically allege[d] coordinated behavior between a signatory and a nonsignatory"); *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 320–21 (4th Cir. 1988) ("charges against a parent company and its subsidiary [we]re based on the same facts and [we]re inherently inseparable, [so] court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement"). In short, as in *B.F.*, "Amazon fails to identify *any* case where courts have found 'knowing exploitation' of a contract in the absence of [] contract claims." Dkt. 78, at 19.

Given the total absence of authority supporting Amazon's argument, traditional rules of contract construction apply, and Plaintiff cannot be bound by a contract she never read, agreed to, or relied upon. *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (citation omitted). The guiding principle of equitable estoppel – that a party cannot "'… claim[] the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes'" – simply does not apply here. *Id.* Plaintiff is bringing statutory and tort claims that are based in no way on the Alexa-specific conditions of use. Accordingly, as the Ninth Circuit

has stated more than once, Amazon's equitable estoppel argument fails. *Id.*; *Mundi*, 555 F.3d at 1047; *see also Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1132 (9th Cir. 2013) (refusing to compel arbitration based on equitable estoppel where "[p]laintiffs d[id] not seek to enforce or challenge the terms, duties, or obligations of the Purchase Agreements").

Finally, while there is a general presumption favoring arbitration in the FAA, there is actually a reverse presumption disfavoring arbitration where the party resisting arbitration is a non-signatory. *Wilson v. Willis*, 426 S.C. 326, 337-38, 827 S.E.2d 167, 173 (2019). Moreover, the use of equitable estoppel to compel arbitration is, ultimately, a theory designed to prevent injustice, and it should be used sparingly. *See Hirsch v. Amper Fin. Servs., LLC*, 215 N.J. 174, 71 A.3d 849, 852 (2013) (observing equitable estoppel should be used sparingly to compel arbitration and noting it "is more properly viewed as a shield to prevent injustice rather than a sword to compel arbitration"). Here, Plaintiff is a nonsignatory and Amazon cannot overcome the presumption disfavoring arbitration or use equitable estoppel as a sword to compel Plaintiff to arbitrate her claims.

## C. The Issue of Arbitrability Here is a Question for this Court – Not an Arbitrator - to Decide.

Amazon's assertion that the issue of arbitrability is for the arbitrator to decide is plainly incorrect for two reasons. First, as discussed above in Argument A., Amazon's Alexa arbitration agreement does not apply, by its own terms, to Plaintiff's claim that her voice and communications were illegally recorded when she did not use her husband's Alexa device. Second, as also discussed immediately above, because Plaintiff is a nonsignatory, it must then be for this Court to decide whether or not an agreement to arbitrate exists. Where, as here, the challenge is "specifically [to] the validity of the agreement to arbitrate," that is a matter properly decided by the Court. *Fagerstrom v. Amazon.com, Inc.*, 141 F. Supp. 3d 1051, 1062 (S.D. Cal. 2015), *aff'd sub nom. Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862 (9th

Cir. 2017).  It would, of course, be a logical fallacy to assume that a contractual term governs this question when Plaintiff is disputing the validity and applicability of the contract itself.

Second, even if the contract applies, there is a "general presumption against the delegation of gateway questions of arbitrability to the arbitrator. The delegation must be clear and unmistakable." *Eiess v. USAA Fed. Sav. Bank*, No. 19-CV-00108-EMC, 2019 WL 3997463, at *8 (N.D. Cal. Aug. 23, 2019).  Here, the delegation is far from clear and unmistakable.   Rather, the Amazon agreement adopts by reference a set of rules which themselves contain a delegation clause.   While the Ninth Circuit has held that such delegation by reference is valid with respect to sophisticated commercial parties, it specifically limited its holding to those facts. *Brennan v. Opus Bank*, 796 F.3d 1125, 1131 (9th Cir. 2015) ("we limit our holding to the facts of the present case, which do involve an arbitration agreement between sophisticated parties." (quotation omitted)).   After *Brennan*, "the majority of district courts in the Ninth Circuit" have held that delegation by reference is invalid when applied to unsophisticated parties.   *Eiess*, at *7.[14]   Because Amazon makes no argument that Plaintiff should be regarded as particularly sophisticated, this Court should therefore reach the same result and decide the issue of arbitrability.

---

[14] As the Court explained, there is a good reason for this:

> Although incorporation by reference may fairly be deemed a clear and unmistakable delegation where there are sophisticated parties, a different result may obtain where one party is unsophisticated. For an unsophisticated plaintiff to discover she had agreed to delegate gateway questions of arbitrability, she would need to locate the arbitration rules at issue, find and read the relevant rules governing delegation, and then understand the importance of a specific rule granting the arbitrator jurisdiction over questions of validity – a question the Supreme Court itself has deemed " 'rather arcane.'

*Id.*, quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995).

**D.     It Would be Inequitable to Compel Plaintiff and the Class Members to Arbitrate Their Claims.**

Amazon concedes that principles of fairness are relevant to the issue of whether arbitration should be compelled.  Moreover, the Federal Arbitration Act also "excepts agreements upon such grounds as exist at law or in equity …."  Amazon's contention that it would be inequitable for the Court to deny its effort to force Plaintiff into arbitration and deny her constitutional right to a trial by jury is nothing short of comical.  Here, to the contrary, there are core principles of equity in favor of Plaintiff that ought to preclude this Court from forcing Plaintiff and the Class Members to arbitrate their claims in this suit.

First, courts have declined to abide by arbitration agreements in cases involving unforeseeable and unreasonable "outrageous acts" by a defendant.  *Wilson* 426 S.C. at 332, 827 S.E.2d at 172.  That is precisely the situation here.  Amazon's surreptitious recording of Plaintiff's voice and communications was a crime under California law.  It was also despicably outrageous.  It is hard to imagine a more egregious invasion of privacy than illegal electronic eavesdropping of persons in their own homes, or other homes, including eavesdropping on their most private and personal communications and even their acts of physical intimacy. Based on such an equitable principle, Amazon's outrageous unforeseeable conduct is an additional basis upon which the Court should void Amazon's arbitration agreement in addition to all the legal grounds discussed above.

While there are many additional reasons why it would not be equitable and fair to force Plaintiff and the Class Members to arbitrate their claims – e.g., the lack of any meaningful right to appeal arbitration decisions, the smaller awards usually rendered by arbitrators - the Court need not even reach these.[15]

---

[15] Similarly, the Court need not even get to Plaintiff's additional argument that Amazon's arbitration agreement is procedurally and substantively unconscionable under California law.  *See  Elite Logistics Corp. v. Hanjin Shipping Co., LTD.*, 589 Fed. Appx. 817 1171, 1172 (9th Cir. 2014) (Ninth Circuit ruled that the district court

## IV.   **CONCLUSION**

Quite simply, there is no legal or logical or equitable basis to bind a person like Plaintiff to an arbitration agreement when the express terms of the agreement do not apply to the claims at issue.  Likewise, no rule of law or principle of logic or equity requires that a person like Plaintiff must arbitrate her claims because of an arbitration agreement she did not read, sign, or otherwise agree to and concerning a product she never purchased.  For the above-stated reasons, Plaintiff requests that the Court deny Amazon's motion to compel arbitration in its entirety.

---

did not err in holding that the arbitration agreement was procedurally and substantively unconscionable under California law and that, therefore, the motion to compel arbitration should be denied); *Armendariz v. Found. Health Psychcare Servs., Inc.,* 24 Cal.4th 83, 99 Cal.Rptr.2d 745, 6 P.3d 669, 689–90 (2000) (articulating "general principles" of unconscionability under California law). In California, "the core concern of unconscionability doctrine is the 'absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.' " *Sonic–Calabasas A, Inc. v. Moreno,* 57 Cal.4th 1109, 163 Cal.Rptr.3d 269 (2013) (quoting *Williams v. Walker–Thomas Furniture Co.,* 350 F.2d 445, 449 (D.C.Cir.1965)).  Here, neither Plaintiff nor her husband had *any* choice regarding the terms of the arbitration agreement terms which was a quintessential non-negotiable contract of adhesion.  As the Court made clear in *Sonic–Calabasas A, Inc.*, courts may examine the terms of adhesive arbitration agreements to determine whether they are "unreasonably one-sided." 57 Cal.4th at 1133-34, 163 Cal.Rptr.3d 269, 281-82 (2013).  Amazon's arbitration agreement here is *completely* one-sided in its favor.  These cases also make clear that the court is to determine the initial validity of any arbitration agreement.

1
2   DATED:  October 28, 2019          Respectfully submitted,
3                                     LOCKRIDGE GRINDAL NAUEN P.L.L.P.
4
5                                     By:  s/  Robert K. Shelquist
6                                     ROBERT K. SHELQUIST,
                                      Admitted *pro hac vice*
7                                     REBECCA A. PETERSON (241858)
                                      MICHAEL J. VANSELOW
8                                     Admitted *pro hac vice*
                                      100 Washington Avenue South, Suite 2200
9                                     Minneapolis, MN 55401
                                      Telephone: (612) 339-6900
10                                    Facsimile: (612) 339-0981
                                      E-mail: rkshelquist@locklaw.com
11                                    rapeterson@locklaw.com
                                      mjvanselow@locklaw.com
12
13                                    STEPHENS & STEPHENS LLP
                                      CONRAD B. STEPHENS (266790)
14                                    505 South McClelland Street
                                      Santa Maria, CA 93454
15                                    Telephone: (805) 922-1951
                                      Facsimile: (805) 922-8013
16                                    E-mail: conrad@stephensfirm.com
17
18                                    SHINDLER, ANDERSON, GOPLERUD
                                      & WEESE, P.C.
19                                    J. Barton Goplerud
                                      Brian O. Marty
20                                    Brandon M. Bohlman
                                      5015 Grand Ridge Drive, Suite 100
21                                    West Des Moines, Iowa 50265
                                      Telephone: (515) 223-4567
22                                    Fax: (515) 223-8887
                                      Email: goplerud@sagwlaw.com
23                                    marty@sagwlaw.com
                                      bohlman@sagwlaw.com
24
25
26
27
28

CUNEO GILBERT & LADUCA, LLP
Charles J. LaDuca
Brendan Thompson
4725 Wisconsin Avenue NW, Suite 200
Washington, DC 20016
Telephone: 202 789 3960
Email: charlesl@cuneolaw.com
brendant@cuneolaw.com

**ATTORNEYS FOR PLAINTIFFS**