1  LAURENCE F. PULGRAM (CSB No. 115163)
   lpulgram@fenwick.com
2  TYLER G. NEWBY (CSB No. 205790)
   tnewby@fenwick.com
3  MOLLY R. MELCHER (CSB No. 272950)
   mmelcher@fenwick.com
4  ARMEN N. NERCESSIAN (CSB No. 284906)
   anercessian@fenwick.com
5  FENWICK & WEST LLP
   555 California Street, 12th Floor
6  San Francisco, CA  94104
   Telephone:  415.875.2300
7  Facsimile:  415.281.1350

8  Attorneys for Defendants
   AMAZON.COM, INC., and
9  A2Z DEVELOPMENT CENTER, INC.

10

11                 UNITED STATES DISTRICT COURT

12                CENTRAL DISTRICT OF CALIFORNIA

13                      EASTERN DIVISION

14

15  HAYLEY CHARMAINE TICE,            Case No.: 5:19-cv-01311-SVW-KK
    individually and on behalf of a class of
16  similarly situated individuals,    **DEFENDANTS' REPLY IN**
                                       **SUPPORT OF MOTION TO**
17              Plaintiff,             **COMPEL ARBITRATION AND**
                                       **TO DISMISS PLAINTIFF'S**
18        v.                           **CLAIMS**

19  AMAZON.COM, INC. and A2Z          Complaint served: July 22, 2019
    DEVELOPMENT CENTER, INC.,
20                                     Date:      November 18, 2019
              Defendants.             Time:      1:30 pm
21                                     Judge:     Stephen V. Wilson
                                       Ctrm:      10A
22                                     Trial Date:  None

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................1

ARGUMENT ...................................................................2

I.  PLAINTIFF MUST ARBITRATE HER CLAIMS AGAINST AMAZON
    PURSUANT TO THE AMAZON COUS..................................2

    A.  Washington Law Applies When the FAA is Silent. ...........................2

    B.  The Arbitrator (and Not the Court) Must Decide Threshold
    Questions of Arbitrability........................................................4

    C.  Even if the Court Were to Decide Arbitrability, Plaintiff's Claims
    Fall Within the Scope of the Arbitration Agreement, and the
    Agreement is Enforceable ...............................................9

II. PRINCIPLES OF EQUITABLE ESTOPPEL REQUIRE PLAINTIFF TO
    ARBITRATE HER CLAIMS.........................................12

    A.  Plaintiff Concedes that Her Husband Assented to Amazon's
    Arbitration Agreement .............................................12

    B.  Plaintiff Has Exploited and Received the Direct Benefits of Her
    Husband's Agreement to Obtain the Alexa Service ...........................13

CONCLUSION ...............................................................20

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*,
    170 F.3d 349 (2d Cir. 1999) ......................................................14, 15

*AT&T Mobility v. Concepcion*,
    563 U.S. 333 (2011)............................................................8, 9, 12

*Awuah v. Coverall N. Am., Inc.*,
    554 F.3d 7 (1st Cir. 2009) .................................................................5

*Bank Leumi, USA v. Miramax Distribution Servs., LLC*,
    No. 2:18-cv-07574-SVW-KS, 2018 WL 7568361 (C.D. Cal. Dec.
    27, 2018) (Wilson, J.) ......................................................................6

*Belnap v. Iasis Healthcare*,
    844 F.3d 1272 (10th Cir. 2017) ........................................................5

*Bloom v. ACT, Inc.*,
    No. CV 18-6749-GW(SSX), 2018 WL 6163128 (C.D. Cal. Oct.
    24, 2018), *appeal filed* (9th Cir. No. 19-55686, June 17, 2019) ........................6

*Brennan v. Opus Bank*,
    796 F.3d 1125 (9th Cir. 2015) ......................................................5, 6

*Bridge v. Credit One Fin.*,
    No. 2:14-cv-1512-LDG-NJK, 2016 WL 1298712 (D. Nev. Mar.
    31, 2016) ....................................................................................16, 17

*Brown v. Comcast Corp.*,
    No. ED CV 16-00264-AB, 2016 WL 9109112 (C.D. Cal. Aug. 12,
    2016) ..........................................................................................16, 17

*Chevron Corp. v. Republic of Ecuador*,
    795 F.3d 200 (D.C. Cir. 2015)...........................................................5

*Comer v. Micor, Inc.*,
    436 F.3d 1098 (9th Cir. 2006) ..................................................*passim*

*Contec Corp. v. Remote Sol. Co.*,
    398 F.3d 205 (2d Cir. 2005) ..............................................................5

*Cooper v. WestEnd Capital Mgmt., L.L.C.*,
    832 F.3d 534 (5th Cir. 2016) .............................................................5

*Cordas v. Uber Techs., Inc.*,
    228 F. Supp. 3d 985 (N.D. Cal. 2017)...........................................5, 6

*Diaz v. Intuit, Inc.*,
    No. 5:15-cv-01778-EJD, 2017 WL 4355075 (N.D. Cal. Sept. 29,
    2017), *motion to certify appeal denied*, No. 5:15-cv-01778-EJD,
    2018 WL 934875 (N.D. Cal. Feb. 16, 2018) ....................................6

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.,*
269 F.3d 187, 199 (3d Cir. 2001) ........................................................13, 14, 16

*Eiess v. USAA Federal Savings Bank,*
No. 19-CV-00108-EMC, 2019 WL 3997463 (N.D. Cal. Aug. 23, 2019) ...................................................................................................................8

*Emilio v. Sprint Spectrum L.P.,*
508 Fed. App'x 3 (2d Cir. 2013) .......................................................................5

*G.G. v. Valve Corp.,*
No. C16-1941-JCC, 2017 WL 1210220 (W.D. Wash. Apr. 3, 2017) ...............19

*G.G. v. Valve Corp.,*
No. C16-1941-JCC, 2019 WL 1354152 (W.D. Wash. Mar. 26, 2019), *appeal filed* (9th Cir. No. 19-35345, Apr. 25, 2019) ........................6

*Gountoumas v. Giaran, Inc.,*
No. CV 18-7720-JFW(PJWx), 2018 WL 6930761 (C.D. Cal. Nov. 21, 2018) ...........................................................................................................6

*Henry Schein, Inc. v. Archer & White Sales, Inc.,*
139 S. Ct. 524 (2019)...................................................................4, 7, 8, 10

*Hofer v. Emley,*
No. 19-cv-02205-JSC, 2019 WL 4575389 (N.D. Cal. Sept. 20, 2019) ...................................................................................................15, 16, 19

*In re Estate of Anches,*
9 Wash. App. 2d 1078, 2019 WL 3417100 (Wash. Ct. App. July 29, 2019) ...........................................................................................................7

*In re Yahoo Mail Litig.,*
308 F.R.D. 577 (N.D. Cal. 2015).....................................................................4

*Mazza v. Am. Honda Motor Co.,*
666 F.3d 581 (9th Cir. 2012) .........................................................................4

*McLellan v. Fitbit, Inc.,*
No. 3:16-cv-00036-JD, 2017 WL 4551484 (N.D. Cal. Oct. 11, 2017) ....................................................................................................6, 7, 8, 9

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
473 U.S. 614 (1985)........................................................................................11

*Montoya v. Comcast Corp.,*
No. 2:15-cv-02573-TLN-DB, 2016 WL 5340651 (E.D. Cal. Sept. 23, 2016) .................................................................................................17, 18

*Nedlloyd Lines B.V. v. Super. Ct. of San Mateo,*
3 Cal. 4th 459 (1992) ..................................................................................3, 4

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Nguyen v. Barnes & Noble,*
  763 F.3d 1171 (9th Cir. 2014) ....................................................15, 16, 18

*Nicosia v. Amazon.com, Inc.,*
  384 F. Supp. 3d 254 (E.D.N.Y. 2019) ...........................................*passim*

*Payne v. Amazon.com, Inc.,*
  No. 2:17-cv-2313-PMD, 2018 WL 4489275 (D.S.C. July 25, 2018) ..........16, 19

*Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.,*
  687 F.3d 671, 675 (5th Cir. 2012) ...........................................................5

*Rent-A-Ctr., W., Inc. v. Jackson,*
  561 U.S. 63 (2010)..............................................................................4, 7

*Rodriguez v. Am. Techs., Inc.,*
  136 Cal. App. 4th 1110 (Cal. Ct. App. 2006) ..........................................7

*State of Washington v. Ferro,*
  64 Wash. App. 195 (1992)....................................................................7

*Terminix Int'l Co. v. Palmer Ranch LP,*
  432 F.3d 1327 (11th Cir. 2005) ............................................................5

*Thomson-CSF, S.A. v. Am. Arbitration Ass'n,*
  64 F.3d 773 (2d Cir. 1995) .................................................................14

*Williams Const. Co. v. Standard-Pac. Corp.,*
  254 Cal. App. 2d 442, 454 (Cal. Ct. App. 1967) .....................................8

*Wolschlager v. Fid. Nat'l Title Ins. Co.,*
  111 Cal. App. 4th 784, 790 (Cal. Ct. App. 2003)....................................7

*Zelkind v. Flywheel Networks, Inc.,*
  No. 15-cv-03375-WHO, 2015 WL 9994623 (N.D. Cal. Oct. 16,
  2015) ...............................................................................................6

*Zenelaj v. Handybook Inc.,*
  82 F. Supp. 3d 968 (N.D. Cal. 2015)....................................................6

**STATUTES**

Restatement (Second) of Conflict of Laws § 187(2) (1971) .................................3, 4

**RULES**

Fed. R. Civ. P. 8 ................................................................................5

Fed. R. Civ. P. 72(b) .........................................................................18

# **INTRODUCTION**

Plaintiff does not deny that she is an Amazon account holder.  Nor does Plaintiff deny that she agreed to Amazon's Conditions of Use ("COU"), which include a binding arbitration provision.  Plaintiff also does not dispute that she agreed to resolve all disputes "relating in any way to [her] use of any Amazon Service, or to any products or services sold or distributed by Amazon or through Amazon.com" through binding arbitration and not in court.  And Plaintiff does not dispute that she deliberately spoke the wake word "Alexa" to use Amazon's Alexa voice service and its features on the Echo Dot smart speaker and Fire TV in her home.  Compl. ¶ 29.

Instead, Plaintiff relies principally on the strained argument that, because her claim depends in part on speculation that Alexa might have recorded her in the background when someone else activated the wake word, any such (unidentified) background recordings would fall outside the scope of the arbitration agreement in the COUs.  Not so.

As an initial matter, given the undisputed existence of her arbitration agreement with Amazon, the question of whether Plaintiff's claims are within its scope is an issue for the arbitrator.  This Court's inquiry therefore should stop here.  But even if this Court could decide issues of scope, Plaintiff's claims fall within the broad scope of the arbitration agreement.  Plaintiff's claim unquestionably "relat[es] to . . . use of any Amazon Service" within her household, as well as to "products or services . . . distributed by Amazon." Plaintiff's claims concerning any alleged recording by Alexa through any of those Amazon products or the Alexa service fall within the unambiguous scope of the arbitration agreement.

Plaintiff also does not dispute that her husband agreed to arbitrate all disputes when he set up the Echo Dot she used in the home that they shared, and that he agreed to both the Amazon COU and Alexa Terms of Use ("Alexa Terms").  Plaintiff concedes that she took advantage of the Echo Dot and its features.  But she claims

that she did not "knowingly exploit" the benefits of the Amazon COUs and Alexa Terms, and therefore is not equitably estopped to assert them, because she is not asserting claims under the contract.  Plaintiff ignores the rule of "direct benefit estoppel" which provides that a non-signatory can knowingly exploit a contract, and thereby be estopped from avoiding its terms, by intentionally receiving the benefits that flow from the contract without having to sue on it.  Plaintiff does not contest that she knowingly and frequently acted to exploit the benefits of her husband's contractual relationship with Amazon.  Well-established principles of equity prevent Plaintiff from taking the benefit of her husband's Alexa account, and then trying to duck the terms that govern it.

The Court should grant Amazon's motion and compel this case to individual arbitration in accordance with the governing agreements' arbitration provisions.

## ARGUMENT

### I. PLAINTIFF MUST ARBITRATE HER CLAIMS AGAINST AMAZON PURSUANT TO THE AMAZON COUS

#### A. Washington Law Applies When the FAA is Silent.

Plaintiff does not dispute that she accepted the Amazon COUs and the arbitration agreement contained therein numerous times when she placed orders on Amazon.  Declaration of Owen Bell, ¶ 3, Ex. A (Dkt. No. 42); Declaration of Brian Buckley (Dkt. No. 44), ¶¶ 24-26, Exs. 19-22.  Nor does she dispute that the COUs include an agreement to arbitrate on an individual basis, which applies broadly to "[a]ny dispute or claim relating in any way to your use of any Amazon Service, or to any products or services sold or distributed by Amazon or through Amazon.com." *Id.* at ¶¶ 4, 10, Exs. 1-6.

Plaintiff thus does not—and cannot—contest that the FAA and its policy favoring enforcement of arbitration provisions applies.  *See* Motion (Dkt. No. 43-1) at 7-9.  When the FAA is silent, Washington law applies under both the terms of the parties' Agreement and application of California's choice-of-law principles.  *Id.* at

9.

Plaintiff fires wide of the mark in asserting that the Washington choice of law is unenforceable. Opp. (Dkt. No. 53) at 9-11.[1] Plaintiff argues that there is a conflict of law between the Washington and California statutes relating to non-consensual recordings because CIPA is broader and provides for greater statutory damages than Wash. Rev. Code Ann. § 9.73.030. Opp. at 9-10. But this Motion is not deciding whether to enforce CIPA or its Washington parallel. It is deciding whether to enforce an arbitration agreement. Plaintiff shows no conflict, much less a fundamental one, between Washington and California on the issues of arbitrability at hand. *Nedlloyd Lines B.V.*, 3 Cal. 4th at 466 (holding that only if there is such a conflict, "the court must then determine whether California has a 'materially greater interest than the chosen state in the determination of the *particular issue*.'" (citing Restatement (Second) of Conflict of Laws § 187(2) (1971) (emphasis added)).

Plaintiff also fails to prove the independent element that California has a "materially greater interest" than Washington in determination of the *particular issue*—i.e., whether Plaintiff must resolve her claims in binding arbitration on an individual basis. Washington certainly has a strong interest in enforcement of a consistent legal rule that can be incorporated by its residents into their agreements. Plaintiff merely reiterates the irrelevant argument that the Court should disregard the

---

[1] Plaintiff concedes that, "California courts . . . apply the principles set forth in Restatement [(Second) of Conflict of Laws] section 187, which reflects a strong policy favoring enforcement of such provisions." *Nedlloyd Lines B.V. v. Super. Ct. of San Mateo*, 3 Cal. 4th 459, 464-65 (1992). Under this approach, a court must first determine "whether the chosen state has a substantial relationship to the parties or their transaction" or else "whether there is any other reasonable basis for the parties' choice of law." *Id.* at 466. If this question is answered in the affirmative, which Plaintiff does not dispute it has been by Amazon's domicile in Washington, the burden shifts to the party challenging the provision to show that "the chosen state's law is contrary to a *fundamental* policy of California." *Id.* (emphasis in original). Absent a conflict, "the court shall enforce the parties' choice of law." *Id.* Only if there is such a conflict, "the court must then determine whether California has a 'materially greater interest than the chosen state in the determination of the particular issue.'" *Id.* (citing Restatement (Second) of Conflict of Laws § 187(2) (1971)).

Agreement's choice-of-law provision because California has a "strong interest in protecting the privacy of its citizens via Section 632 of CIPA." Opp. at 10.[2]  To the extent that Plaintiff attempts to conflate the "particular issue" of arbitrability with other distinct merits-based consumer protection issues, they are irrelevant under *Nedlloyd* and precluded by the FAA.

Plaintiff fails to overcome her burden of negating the COUs' choice of Washington law as it applies to arbitrability.

## B.   The Arbitrator (and Not the Court) Must Decide Threshold Questions of Arbitrability

Plaintiff next argues incorrectly that issues of arbitrability are for the Court to decide rather than the arbitrator.  But just as Plaintiff agreed to arbitrate her claims with Amazon, she also agreed to arbitrate questions of arbitrability in a manner that must be enforced under the FAA.  *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010).  Such an agreement is "simply an additional, antecedent agreement the party seeking arbitration" asks a court to enforce.  *Id.* at 70.  And, just "as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator."  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019).  Here, the arbitration agreement's incorporation of the AAA rules shows the parties' clear and unmistakable delegation of the arbitrability question to an arbitrator.  *See* Buckley Decl. ¶¶ 4, 10, Exs. 1-6 at "Disputes."  The Court should refer this case to arbitration pursuant to the COUs' clause incorporating that delegation.

Plaintiff asserts that incorporation of the AAA rules cannot delegate arbitrability determinations to the arbitrator because Amazon has not shown Plaintiff

---

[2]  Plaintiff's cases are inapposite.  *Id.  See In re Yahoo Mail Litig.*, 308 F.R.D. 577, 601-02 (N.D. Cal. 2015) (analyzing whether application of California law to a nationwide class was appropriate for purposes of class certification); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 593-94 (9th Cir. 2012) (same).

1  to be "particularly sophisticated."  Opp. at 19.  Yet, Plaintiff ignores the weight of

2  authority, which has concluded that reference to the AAA rules evinces a clear and

3  unmistakable delegation to an arbitrator, regardless of the sophistication of the

4  parties.  *See* Motion at 20-21 (citing cases).

5       The Ninth Circuit expressly noted that its holding in *Brennan v. Opus Bank*,

6  796 F.3d 1125, 1130 (9th Cir. 2015), did not foreclose the possibility that its rule

7  could apply to unsophisticated parties or to consumer contracts.  It further

8  acknowledged that the "vast majority of the circuits that hold that incorporation of

9  the AAA rules constitutes clear and unmistakable evidence of the parties' intent do

10 so without explicitly limiting that holding to sophisticated parties or to commercial

11 contracts."  *Id.* at 1130-31.[3]  The Ninth Circuit's "statement strongly indicates

12 approval of other decisions enforcing arbitrability delegation via incorporation of

13 the AAA rules."  *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 992 (N.D. Cal.

14

---

[3]  The majority of court of appeals have held that an agreement that incorporates
rules delegating questions of arbitrability to the arbitrator, such as the AAA rules, is
sufficiently clear and unmistakable to render the delegation valid and enforceable.
*See, e.g., Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 11 (1st Cir. 2009)
(incorporation of the AAA Rules "is about as 'clear and unmistakable' as language
can get"); *Emilio v. Sprint Spectrum L.P.*, 508 Fed. App'x 3, 5 (2d Cir. 2013)
(incorporation of JAMS Rules "clearly and unmistakably delegated questions of
arbitrability to the arbitrator"); *Contec Corp. v. Remote Sol. Co.*, 398 F.3d 205, 208
(2d Cir. 2005) ("[W]hen ... parties explicitly incorporate rules that empower an
arbitrator to decide issues of arbitrability, the incorporation serves as clear and
unmistakable evidence of the parties' intent to delegate such issues to an
arbitrator."); *Cooper v. WestEnd Capital Mgmt., L.L.C.*, 832 F.3d 534, 546 (5th Cir.
2016) (concluding that the express adoption of the JAMS rules presented "clear and
unmistakable evidence that the parties agreed to arbitrate arbitrability" (quoting
*Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th
Cir. 2012)); *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1281, 1283-1284 (10th Cir.
2017) (holding that "[the parties] clearly and unmistakably agreed to arbitrate
arbitrability when they incorporated the JAMS Rules into the Agreement" and citing
Court of Appeal decisions holding same); *Terminix Int'l Co. v. Palmer Ranch LP*,
432 F.3d 1327, 1332 (11th Cir. 2005) ("By incorporating the AAA Rules, including
Rule 8, into their agreement, the parties clearly and unmistakably agreed that the
arbitrator should decide whether the arbitration clause is valid."); *Chevron Corp. v.
Republic of Ecuador*, 795 F.3d 200, 207–08 (D.C. Cir. 2015) (incorporation by
reference of the UNCITRAL rules constitutes clear and unmistakable evidence that
the parties agreed to arbitrate arbitrability).

1    2017).

2         Since *Brennan*, district courts within the Ninth Circuit, including this District,

3    recognize that the "greater weight of authority has concluded that the holding of

4    [*Brennan*] applies similarly to non-sophisticated parties," including in consumer

5    cases. *McLellan v. Fitbit, Inc.*, No. 3:16-cv-00036-JD, 2017 WL 4551484, at *2

6    (N.D. Cal. Oct. 11, 2017) (citation omitted); *see also Gountoumas v. Giaran, Inc.*,

7    No. CV 18-7720-JFW(PJWx), 2018 WL 6930761, at *6 (C.D. Cal. Nov. 21, 2018)

8    ("[t]he 'greater weight of authority has concluded that the holding of [Brennan]

9    applies similarly to non-sophisticated parties'" and adopting that "majority view")

10   (citation omitted); *Bloom v. ACT, Inc.*, No. CV 18-6749-GW(SSX), 2018 WL

11   6163128, at *4 (C.D. Cal. Oct. 24, 2018) ("The Court would side with the

12   overwhelming weight of authority and conclude that threshold questions of

13   arbitrability can be delegated to the arbitrator through incorporation of the AAA

14   rules regardless of the contracting parties' sophistication"), *appeal filed* (9th Cir.

15   No. 19-55686, June 17, 2019).[4]   When an arbitration agreement incorporates the

16   AAA rules by reference, as Amazon's does, "the parties agreed to grant the

17   arbitrators presiding over their individual arbitrations the authority to determine the

18   arbitrability of their claims." *G.G. v. Valve Corp.*, No. C16-1941-JCC, 2019 WL

19   1354152, at *3 (W.D. Wash. Mar. 26, 2019), *appeal filed* (9th Cir. No. 19-35345,

20   Apr. 25, 2019); *Bank Leumi, USA v. Miramax Distribution Servs., LLC*, No. 2:18-

21   cv-07574-SVW-KS, 2018 WL 7568361, at *6 (C.D. Cal. Dec. 27, 2018) (Wilson,

22   J.) (finding that, by incorporating by reference the AAA rules, the parties

23   "unmistakably contemplated that the arbitrator would decide the extent of his or her

24

25   _____

26   [4]  *Accord Cordas*, 228 F. Supp. 3d at 992; *Diaz v. Intuit, Inc.*, No. 5:15-cv-01778-
     EJD, 2017 WL 4355075, at *3 (N.D. Cal. Sept. 29, 2017), *motion to certify appeal*

27   *denied*, No. 5:15-cv-01778-EJD, 2018 WL 934875 (N.D. Cal. Feb. 16, 2018);
     *Zenelaj v. Handybook Inc.*, 82 F. Supp. 3d 968, 973-75 (N.D. Cal. 2015); *Zelkind v.*

28   *Flywheel Networks, Inc.*, No. 15-cv-03375-WHO, 2015 WL 9994623, at *3 (N.D.
     Cal. Oct. 16, 2015).

own jurisdiction").[5]

There are two compelling reasons why, consistent with the majority rule, the distinction between sophisticated and unsophisticated parties should not matter.

***First***, incorporation by reference is a valid, enforceable, and effective means to declare the operative terms of a contract under both Washington and California law. *McLellan*, 2017 WL 4551484, at *3 (quoting *Wolschlager v. Fid. Nat'l Title Ins. Co.*, 111 Cal. App. 4th 784, 790 (Cal. Ct. App. 2003)); *State of Washington v. Ferro*, 64 Wash. App. 195, 198 (1992). That which is incorporated into the contract *is* the contract. For this reason, the incorporated delegation provision from the AAA rules here are part of the contract that must be enforced under the FAA, whether the parties are sophisticated or not.

The Supreme Court's decision in *Rent-A-Center* makes this clear. "The FAA operates on this additional arbitration agreement [—the agreement to delegate arbitrability—] just as it does on any other. The additional agreement is valid under [FAA] § 2 'save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Rent-A-Ctr., W., Inc.*, 561 U.S. at 70. Simply put, under the FAA's policy favoring arbitration "a court may not decide an arbitrability question that the parties have delegated to an arbitrator." *Henry Schein, Inc.*, 139 S. Ct. at 530. "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrabilty issue." *Id.* at 529. Absent a claim of unconscionability—and there is none here[6]—the terms of the parties' agreement govern.

---

[5]   Similarly, Washington and California state courts have held that when an arbitration agreement incorporates the AAA rules by reference, as the COUs do, "the parties clearly and unmistakably agree[] to have the arbitrator determine the scope of the arbitration clause." *See, e.g.*, *Rodriguez v. Am. Techs., Inc.*, 136 Cal. App. 4th 1110, 1123 (Cal. Ct. App. 2006) (homeowner litigating with insurance-paid repair service were bound by contract mandating arbitration "in accordance with the [AAA]'s Construction Industry Rules"); *In re Estate of Anches*, 9 Wash. App. 2d 1078, 2019 WL 3417100, at *2 (Wash. Ct. App. July 29, 2019).

[6]  Plaintiffs have not, and cannot, assert that the delegation clause is unconscionable.

Here, the arbitration agreement provides for delegation, pure and simple. The agreement reads, in plain style, that "[t]he arbitration will be conducted by the American Arbitration Association (AAA) under its rules, including the AAA's Supplementary Procedures for Consumer-Related Disputes." *See* Buckley Decl. ¶¶ 4, 10, Exs. 1-6 at "Disputes." The provision further states that "[t]he AAA's rules are available at www.adr.org or by calling 1-800-778-7879." *See id*. The AAA's rules are also easy to locate through any internet search engine. *See McLellan*, 2017 WL 4551484, at *3. Since these provisions define the parties' intent, they constitute "clear and convincing" delegation to the arbitrator.

Importantly, under the FAA, *Rent-A-Center*, and *Henry Schein*, all of which require that arbitration agreements be enforced in accordance with their terms, the fact that one party might be unsophisticated, or might choose not to read the entire contract, cannot negate an arbitration agreement's terms. *Concepcion* taught as much, invalidating, as pre-empted by the FAA, a consumer protection rule that had disallowed waivers of collective action in arbitration agreements. *AT&T Mobility v. Concepcion*, 563 U.S. 333, 342-43 (2011). The same principle forecloses a reinterpretation of the plain words of a delegation agreement to render it applicable only to "sophisticated" parties. A party's lack of sophistication is not an independent or arbitration-neutral basis for refusing to enforce the terms of an incorporated document. *McLellan*, 2017 WL 4551484, at *3 ("utterly unrealistic to accept the proposition that a failure to know what was in the [incorporated document] was anyone's responsibility and fault but' contracting party's, where 'most certainly the [incorporated document] was readily available'") (citing *Williams Const. Co. v. Standard-Pac. Corp.*, 254 Cal. App. 2d 442, 454 (Cal. Ct. App. 1967)).

These precedents undermine cases such as *Eiess v. USAA Federal Savings Bank*, No. 19-CV-00108-EMC, 2019 WL 3997463 (N.D. Cal. Aug. 23, 2019), that

---

The Supreme Court has repeatedly approved of delegations to arbitrators and noted the requirement that they be enforced under the FAA in *Rent-A-Center* and *Schein*.

disregard incorporated delegation provisions out of a desire, however well-intended, to protect consumers against arbitration. Since *Concepcion*, at least, the literal terms of arbitration agreements apply, and good faith desires to protect those who are unsophisticated cannot countermand them. Under the Supreme Court's guidance, "the times in which consumer contracts were anything other than adhesive are long since past." *Concepcion,* 563 U.S. at 346-47. The provision to which the parties agreed are the provisions the FAA requires to be enforced, including those incorporated in conformity with law.

*Second*, as explained in *McLellan,* determining the applicable terms of a contract based on a party's sophistication would make no practical sense. "The factors that might make someone 'sophisticated' are poorly suited to a standard definition that parties can rely upon to avoid uncertainty or surprise in the meaning of the instrument they signed. A party-by-party assessment of sophistication under some loose amalgam of personal education, line of work, professional knowledge, and so on would undermine contract expectations in potentially random and inconsistent ways." *McLellan*, 2017 WL 4551484, at *3. Indeed, Plaintiff here submits no evidence as to whether she has previously been a party to arbitrations or litigations, whether she reviewed the COUs and/or the AAA Rules, or whether she failed to understand the applicable procedures. Requiring such an inquiry, much less presuming its outcome in the absence of evidence, would frustrate defendants' rights to the benefit of arbitration.

For these reasons, the delegation to the arbitrator of all issues of arbitrability was effective, and this Court's inquiry may stop here.

## C. Even if the Court Were to Decide Arbitrability, Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement, and the Agreement is Enforceable

Plaintiff asserts that, regardless of her repeated assent to the Amazon COUs, she is not required to arbitrate her claims because her allegations fall outside the

1   scope of the arbitration agreement.   Plaintiff is incorrect.   As an initial matter,
2   because of the parties' delegation of arbitrability to the arbitrator, Plaintiff's scope
3   argument is an issue for the arbitrator's determination.   Indeed, the Supreme Court
4   has rejected the proposition that a court may intrude on delegation to the arbitrator
5   even if the asserted basis for arbitration appears "wholly groundless." *Henry Schein*,
6   139 S. Ct. at 530.   To the extent Plaintiff is making the argument that it would be
7   groundless to consider her use of Alexa covered by her broader Amazon arbitration
8   agreements, or to consider any recordings of her background conversations subject
9   to arbitration, *Henry Schein* requires those arguments to go to the arbitrator.

10          But, even if the Court decides the issue of arbitrability, this dispute is well
11   within the broad scope of the arbitration agreement in the Amazon COUs.   Plaintiff
12   asserts that the Alexa device "records and permanently stores the voices and
13   communications of (1) persons 'using' the device – whether or not the Alexa
14   owner/account holder; (2) persons talking in the background while someone is using
15   the device; and (3) persons in a household even when the device has not been
16   activated and is not being used."   Opp. at 2-3.   First, Plaintiff does not dispute that
17   the first scenario would be governed by the arbitration agreement in the Amazon
18   COUs.   *See generally* Opp.   Alexa is undeniably an Amazon service and the Echo
19   Dot Plaintiff used is an Amazon product.   Plaintiff does not contend otherwise, or
20   even attempt to argue that, when she invoked the "Alexa" wake word, she did not
21   know she was using an Amazon service.   Second, Plaintiff's third scenario is
22   irrelevant, as there are no such allegations in the Complaint as to her own "voices
23   and conversations."   *See generally* Compl.[7]

24          Third, Plaintiff makes much of her second scenario—her speculative assertion
25   that the Alexa device may have heard her voice and communication in the
26   background when someone else in the household was using the Device.   *See* Opp. at

27

---

28   [7] Plaintiff's assertions as to the hypothetical experiences of the "class members" are
     irrelevant to Defendants' Motion.   *See, e.g.*, Opp. at 6 n.5.

2-3, 5-7.  Yet, Plaintiff provides no facts in support of this conclusory speculation. To explain this deficit, Plaintiff's brief argues that Defendants "refused to give Plaintiff's counsel the information and records Plaintiff could use to definitively prove that her voice and communications were recoded [*sic*] when she was not using her husband's Alexa device."  Opp. at 8 n.7.  Yet, as Defendants advised Plaintiff, she has ready and instant access to all recordings on her family's device through its "Your Accounts" function.  *See* Dkt. No. 37-1 ¶¶ 16, 20 and Ex. C.  Still, she fails to identify even one communication in her assertions about background recording that would qualify or raise an issue.  There is no plausible allegation, much less evidence before the Court, that any such background communication or recording ever happened.

Even if Plaintiff had submitted evidence other than rank speculation (she has not), the arbitration agreement would encompass the hypothetical "background conversation" scenario.  Plaintiff selectively omits from her reasoning the second half of the arbitration provision, which provides that Plaintiff will arbitrate "[a]ny dispute or claim relating in any way to . . . any products or services sold or distributed by Amazon or through Amazon.com."  *See* Buckley Decl. ¶¶ 4, 10, Exs. 1-6 at "Disputes."  Plaintiff's claim that the Alexa-enabled Echo and Fire TV devices may have heard her voice and communication in the background is certainly "relat[ed] . . . to products or services sold or distributed by Amazon or through Amazon.com."  Despite Plaintiff's assertions to the contrary (Opp. at 11-13), no separate agreement to the Alexa Terms is required.

Moreover, even if the background recording allegations were substantiated and were found to fall outside the arbitration clause, that would not negate the fact that Plaintiff's intentional use of Alexa, which she has also sued on, was within the clause.  Under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," and claims fall within the scope of an arbitration clause if they merely "touch" the matters covered.  *Mitsubishi Motors Corp. v. Soler*

1  *Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625-26 (1985).  Plaintiff's claims easily meet
2  this test.

3      Finally, Plaintiff's footnote falls far short of proving unconscionability.  *See*
4  Opp. at 20-21 n.15.  The fact that a consumer contract is adhesive does not render it
5  procedurally unconscionable under the FAA.  *See Concepcion*, 563 U.S. at 346-347;
6  *Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 264 (E.D.N.Y. 2019).  While
7  Plaintiff asserts that the arbitration agreement is "*completely* one-sided," (Opp. at
8  20-21 n.15 (emphasis in original)) she makes no effort to articulate why or rebut
9  Amazon's proof to the contrary.  *See* Motion at 15-16.  The law is now settled that
10  contracts of adhesion are not unconscionable.

11      Because Plaintiff's claims fall within the scope of her own arbitration
12  agreement with Amazon, if the Court were to reach the issue (it should not), Plaintiff
13  would be required to arbitrate those claims.

14  **II.    PRINCIPLES OF EQUITABLE ESTOPPEL REQUIRE**
15  **PLAINTIFF TO ARBITRATE HER CLAIMS**

16      Independent of Plaintiff's direct agreement with Amazon to arbitrate the
17  claims in this case, Plaintiff must arbitrate her claims because, having knowingly
18  used and benefitted from the Alexa service for more than two years before bringing
19  suit, she is equitably estopped from denying the arbitration agreement her husband
20  entered in order to provide Alexa to their family.

21  **A.    Plaintiff Concedes that Her Husband Assented to Amazon's**
22  **Arbitration Agreement**

23      Plaintiff concedes that her husband agreed to the Alexa Terms when he
24  registered the Alexa-enabled Echo Dot in Plaintiff's household.  *See* Motion at 3-6.
25  Plaintiff also concedes that the Alexa Terms state that "**[a]ny dispute or claim**
26  **arising from or relating to this Agreement or Alexa is subject to the . . .**
27  **governing law . . . and all other terms in the <u>Amazon.com Conditions of Use</u>**."
28  Buckley Decl. ¶ 11, Ex. 6 at § 3.6 (bold in original; linking Amazon COUs).  Plaintiff

also concedes that her husband accepted the COUs multiple times when he placed orders on Amazon.  Motion at 3-6.  In sum, Plaintiff does not dispute that her husband agreed to the Amazon arbitration agreement as a precondition to installing Alexa.  Indeed, he further "agree[d] to accept responsibility for all activities that occur under your account or password"—which certainly includes the activities of his wife using his Alexa account in their home as they both intended.  *See* Buckley Decl. ¶¶ 5-10, Ex. 1 at 2-3, Exs. 2-3 at 3, Exs. 4-5 at 2.

**B.** **Plaintiff Has Exploited and Received the Direct Benefits of Her Husband's Agreement to Obtain the Alexa Service**

Plaintiff also concedes that she affirmatively took advantage of her husband's account by invoking the wake word to use Alexa-enabled capabilities and features since 2017. Complaint ¶ 29.  She nonetheless claims that she did not "knowingly exploit" the benefits of the Amazon COUs and Alexa Terms because she does not assert claims *under the contract*.  *See* Opp. at 17.  But there are multiple ways one spouse can exploit the benefits of the other's contract without bringing suit under it. As numerous cases have recognized—including the seminal sources of estoppel law in this Circuit—intentionally accepting performance under the contract is sufficient, giving rise to "direct benefit estoppel" to deny the contract's terms.

Plaintiff cites to *Comer* (Opp. at 17-18), which supports application of equitable estoppel here.  *Comer* recognized that equitable estoppel applies where the non-signatory "knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement."  *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 199 (3d Cir. 2001)).  *Comer* declined to apply equitable estoppel where a plaintiff participant in an ERISA plan did not either "seek to enforce the terms of the [plan trustee's] management agreements, *nor otherwise to take advantage of them.*"  *Id.* at 1102 (emphasis added). The court declined to "shoehorn . . . a passive participant" into the ERISA fund

1   management's arbitration agreement. *Id.*  *Comer* thus presents the opposite of the

2   present situation, where Plaintiff does not dispute she actively used the Alexa service

3   her husband obtained for them.

4   *DuPont*, which *Comer* relied on, likewise recognized that estoppel could

5   reach parties who received direct benefits under contracts other than by without

6   suing on them.  *DuPont* recognized that the "knowingly exploit" test generally

7   "involve[s] non-signatories who, *during the life of the contract, have embraced the*

8   *contract* despite their non-signatory status but then, during litigation, attempt to

9   repudiate the arbitration clause in the contract." *DuPont*, 269 F.3d at 200 (emphasis

10   added).   Such exploitation "during the life of the contract" cannot envision, as

11   Plaintiff claims here, merely a lawsuit on the contract.  In *DuPont*, anon-signatory

12   corporation brought claims for fraud and breach of an oral agreement that related to,

13   but "occurred much later in time" than, the written contract with the arbitration

14   clause. *Id.* at 191.  The court declined to apply equitable estoppel because it found

15   "no evidence" that the non-signatory embraced that written contract during its term

16   or that it "received any *direct* benefit under" the contract.  *Id.* at 200 (emphasis in

17   original).[8]  *DuPont* marked an important distinction between those non-signatories

18   who receive *direct* benefits under a contract containing an agreement to arbitrate

19   (and are thus bound) and those who receive only *indirect* benefits from one.  *Id.*

20   (comparing *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353

21   (2d Cir. 1999)(direct benefit), and *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64

22   F.3d 773, 778 (2d Cir. 1995)(no direct benefit).

23   *DuPont* relied on but distinguished *American Bureau Shipping v. Tencera*

24   *Shipyard SPA*, 170 F.3d 349 (2d Cir. 1999), which expressly applied direct benefit

25   estoppel without any requirement of a claim on a contract.  As *DuPont* noted, the

26

27   [8]  *DuPont* nonetheless found the case to be "a close call," though it concluded that
the claims there were "far enough removed" from the contract that their invocation—

28   in the absence of DuPont's prior receipt of benefits under the contract—would not
warrant estoppel.  269 F.3d at 202.

signatory in *Tencera*, the owners of a racing yacht, *had* directly benefited from an agreement that contained the arbitration clause between the shipbuilder and a ship classification service. Because the shipbuilder's classification certificate agreement permitted the non-signatory owners to obtain insurance and register the vessel under the French flag, the owners who exploited those benefits could not disavow the certificate's arbitration clause. 170 F.3d at 353 (non-signatory received direct benefit because "without the [certificate], registration [under the French flag] would have been practically impossible"). The same rationale applies here. It is undisputed that, without her husband's agreement to the COUs and Alexa Terms, Amazon would not provide the services Plaintiffs chose to exploit. Having chosen to take direct benefit of that service, Plaintiffs cannot disavow the arbitration provisions that come with it.

The Ninth Circuit further confirmed the doctrine it labeled "direct benefits estoppel" in *Nguyen v. Barnes & Noble*, 763 F.3d 1171, 1179 (9th Cir. 2014). It recognized that "[a] non-signatory to an arbitration agreement may be compelled to arbitrate where the nonsignatory 'knowingly exploits' the benefits of the agreement and receives benefits flowing directly from the agreement." *Id.* While the court found the doctrine inapplicable on its facts, because there was no assent to the underlying contract, it recognized that "[e]quitable estoppel typically applies to third parties who benefit from an agreement made between two primary parties." *Id.*

Most recently, the court in *Hofer v. Emley*, No. 19-cv-02205-JSC, 2019 WL 4575389, at *6 (N.D. Cal. Sept. 20, 2019), applied *Nguyen*, *Comer*, and the direct benefit doctrine to require arbitration of negligence claims brought by a brother of the signatory to a car rental agreement. The non-signatory brother had "knowingly received a direct benefit as a result of the agreement—the ability to travel as a passenger in a rental car to visit family for Thanksgiving." *Id.* As here, "[t]he benefit conferred on the [non-signatory] is the exact benefit conferred on the signatory"— the ability to use the service contracted for. *Id.* And as here, the non-signatory knew

1 that the car was rented from the defendant (*id.*)—just as the Plaintiff here knew she

2 was invoking "Alexa."

3      This "direct benefits" principle from *Tencera*, *DuPont*, *Comer*, and *Nguyen*

4 likewise requires equitable estoppel here.  Absent her husband's agreement to the

5 COUs and Alexa Terms, it "would have been practically impossible" for the Plaintiff

6 to use the Alexa service (*Tencera*).  Plaintiff enjoyed the direct benefits "during the

7 lifetime of the contract" (*DuPont*) and cannot disavow the arbitration clause now.

8 Although Plaintiff has not brought a claim on the contracts, she did "otherwise seek

9 to take advantage" of the agreement (*Comer*), and did "receive benefits flowing

10 directly from the agreement" (*Nguyen*).  Any and all such conduct is sufficient,

11 without suing on the contract, to impose estoppel.

12      Plaintiff is wrong that there is an "absence of authority" supporting estoppel

13 without a claim under the contract.  Opp. at 17.  While a claim sounding in contract

14 may be sufficient to impose estoppel, it is not essential.  In addition to the foregoing

15 cases, both *Payne v. Amazon.com, Inc.*, No. 2:17-cv-2313-PMD, 2018 WL 4489275,

16 at *6 (D.S.C. July 25, 2018), to which Plaintiff offers no response, and *Nicosia*, 384

17 F. Supp. 3d at 274, recognize that, a plaintiff may "knowingly exploit" a contract for

18 equitable estoppel purposes by receiving the direct benefits of the contract, not just

19 by suing on it.  *See* Motion at 13-15; *see also Bridge v. Credit One Fin.*, No. 2:14-

20 cv-1512-LDG-NJK, 2016 WL 1298712 at *3 (D. Nev. Mar. 31, 2016) (applying

21 estoppel to compel arbitration provision in a Telephone Consumer Protection Act

22 claim where plaintiff had "benefitted from [his mother's] agreement" by accessing

23 the mother's account).[9]

24 ───────────────

25 [9]  Plaintiff cites *Brown v. Comcast Corp.*, No. ED CV 16-00264-AB (SPx), 2016 WL 9109112, at *6-8 (C.D. Cal. Aug. 12, 2016), another TCPA case.  But it only

26 highlights the application of direct benefits estoppel in the absence of a claim on the contract.  Opp. at 16-17.  The *Brown* court declined to compel arbitration for a

27 short-term resident in a home with a Comcast connection.  *Brown* analyzed the direct benefits prong separately, despite the fact the plaintiff was not suing on the

28 contract.  The Court found "no evidence to suggest that Plaintiff took an affirmative step to benefit from the RSA or exploit the benefits of the agreement,"

1    *Nicosia,* a heavily litigated case under Washington law that went to the

2    Second Circuit and back down, is on point.  It compelled arbitration against a non-

3    signatory plaintiff because he "knowingly accepted the benefit of [his wife's]

4    contractual relationship with Amazon" when he purchased products through her

5    account, and as a result, could not avoid the Amazon arbitration agreement.  *Nicosia*,

6    384 F. Supp. 3d at 274-75.  *Nicosia* recognized that "the entire purpose of an

7    'account' on a platform like Amazon is to assume virtual personhood—to enter into

8    contracts and, crucially, to *remain bound* by the contracts to which it has previously,

9    and with due authority, agreed."  *Id.* at 272 (emphasis in original).  For that reason,

10   the Amazon COUs provide that account holders control, and accept responsibility

11   for, all access to and activities under their account.  If the validity of an account

12   holder's agreements with Amazon "waxed and waned depending on the identity of

13   the human user behind the screen," or the human using an Echo device connected to

14   the account, "it would impose a cloud of uncertainty over any contract formed over

15   the internet."  *See id*.  "Common sense dictates that this could not possibly be the

16   rule," and such a result would allow any individual to avoid the terms of a website

17   simply by using someone else's account instead of their own.  *See id*.  Plaintiff fails

18   to offer any legal support for why *Nicosia*'s holding of a spouse to be equitably

19   estopped should not also govern here.  Motion at 16-17.

20      The "direct benefits" prong of estoppel was also expressly applied in *Montoya*

21   *v. Comcast Corp.*, No. 2:15-cv-02573-TLN-DB, 2016 WL 5340651 (E.D. Cal. Sept.

22   23, 2016).  There, too, non-signatories who "were in regular use of Defendant's

23   services" had their non-contract claims compelled to arbitration—in that case, like

24   this one, claims based on consumer statutes protecting privacy.  "Plaintiffs

25   knowingly exploited Defendant's *service* and therefore accepted its terms by

26   and that, as in *Comer*, plaintiff's "role as a passive participant . . . [was] not enough
     to bind him."  *Brown*, 2016 WL 9109112, at *7.  *Brown* expressly distinguished
27   *Bridge* as a case where the non-signatory son "did benefit from the agreement, but
     he first took an affirmative step . . . in order to gain a benefit" by contacting the
28   defendant and obtaining information he needed.  *Id.* at *6.

1    *accepting the benefits of service.*"  *Id.* at *4-5 (emphasis added) (citing *Comer* and

2    *Nguyen*).

3      Plaintiff claims that Amazon's equitable estoppel argument has been

4    "uniformly rejected" (Opp. at 15) but cites *only* an interim Report and

5    Recommendation issued by Magistrate Judge Peterson in *B.F., et al. v. Amazon.com,*

6    *Inc., et al.*, Case No. 2:19-cv-910-RAJ-MLP (W.D. Wash.) ("Report").  That Report,

7    as it addresses a dispositive issue, will be under review *de novo* by the District Judge

8    in *B.F.  See* Fed. R. Civ. P. 72(b).  That review will not occur before the November

9    18, 2019 hearing date for this Motion.  Should the Court consider that Report at all

10   before it is acted on, Amazon respectfully refers the Court to Defendants' Objections

11   to that Report, which addresses it in detail.  *See* Declaration of Molly Melcher, ¶ 2,

12   Ex. A.

13     The Report's conclusion, as a bright line, that a party can never "knowingly

14   exploit" a contract except by suing in contract, is as incorrect as it is illogical.  The

15   holding in the Report reads out of all precedent the well-recognized "direct benefits

16   estoppel" basis for finding "knowing exploitation" and applying arbitration

17   agreements to non-signatories, as discussed above.  The Report's exposition of the

18   caselaw also imports numerous legal errors supplied by the plaintiffs' submissions

19   in that case.  *Id.* [10]  And perhaps most strikingly, neither the Report nor Plaintiff has

---

20   [10] Among other deficits (*see* Melcher Decl. Ex. A), the Report fails fully to address

21   *Nicosia* which applied "direct benefits estoppel" to a spouse as is the issue in this
     case.   *Nicosia* had dual and independent grounds for decision.  *Nicosia* first

22   concluded that the husband was estopped due to "traditional equitable estoppel,"
     because logging into his wife's account constituted representations on which

23   Amazon detrimentally relied.   The court then independently concluded that the
     husband was subject to "direct benefits estoppel" because he had knowingly taken

24   the direct benefits of the Amazon COUs by obtaining service from Amazon.  384 F.
     Supp. 3d at 271-73.  The Report in *B.F.* accepted the contention of the plaintiffs in

25   *B.F.* that application of equitable estoppel depended entirely on detrimental reliance

26   on a representation.  Report at 21; *see also B.F.* Dkt. No. 68 (Opposition to Motion
     to Compel Arbitration) at 10.  But *Nicosia*'s statements about detrimental reliance

27   concerned only its discussion of "traditional equitable estoppel."  Its holding did not
     limit equitable estoppel to circumstances where one relies on a representation.  To

28   the contrary, *Nicosia* held that the plaintiff in that case was bound by the account

identified even *one* case previously rejecting the doctrine of "direct benefits estoppel," much less where a non-signatory affirmatively and directly acted to exploit the contracted service as Plaintiff did here.  This Court should not be the first to take that unprecedented step.

Likewise, neither Plaintiff nor the Report in *B.F.* identifies a single case in which a spouse (or other intimate household member) has not been held equitably estopped upon their receipt of the benefits of their family member's contract. Plaintiff again asks this Court to take that unprecedented course, contrary to the holdings of estoppel in *Nicosia* (spouse), *Payne* (fiancé), *Townsend* (children), *Hofer* (brother), and *G.G. v. Valve Corp.*, No. C16-1941-JCC, 2017 WL 1210220 at *4 (W.D. Wash. Apr. 3, 2017) (holding parents asserting non-contract, consumer protection claims were equitably estopped to deny online arbitration agreements entered by their children with defendant).  Again, this Court should not be the first to reject estoppel in the setting of intimate family members sharing products and services.

This case also entails a different relationship than *B.F.*—here, husband and wife, in *B.F.,* parent and child.  Here, Plaintiff is an adult who used Amazon regularly and even had Alexa-enabled FireTV devices registered in her own name. *See* Declaration of Trent Gillespie (Dkt. No. 42) ¶¶ 3, 5, 7-9, Ex. A.  There is no claim here that this adult was unaware that her access to the benefits of Alexa in her home

holder's agreement "under *either* a traditional theory of equitable estoppel *or* direct benefits estoppel."  384 F. Supp. at 275 (emphases added).  *Nicosia* also noted that, while the "direct benefits test closely approaches the paradigm for traditional equitable estoppel," it "is not a perfect overlap."  *Id.* at 274 (internal citations, quotations, and alterations omitted).  The Report, unfortunately, succumbed to the *B.F.* plaintiffs' obfuscation of this critical distinction by eliminating key language from the quotes that the Plaintiffs used, and the Report duplicated, from *Nicosia*. *Compare* Report at 21, using the identical ellipses provided by the plaintiffs in *B.F.* Dkt. No. 68 at 10 ("[t]he indelible feature of estoppel . . . is that one party has made a representation") (alterations in Report and Opp.), *with* the actual language in *Nicosia,* 384 F. Supp. 3d at 273 ("The indelible feature of estoppel, *as it has been traditionally defined*, is that one party has made a representation") (emphasis added).

depended on registration with Amazon. Plaintiff does not dispute that she was familiar with and had agreed countless times to the Amazon COUs, which were incorporated into the Alexa Terms.

In sum, Plaintiff fails to offer any rebuttal to Amazon's factual showing that Plaintiff knowingly exploited and received direct benefits from use of her husband's Alexa accounts. The Opposition instead seeks what will amount to a categorical rule that a spouse's agreement to arbitrate disputes can never bind his or her spouse living within the household, no matter how intentional an individual plaintiff's use, or how pervasive and intentional the account sharing. "Common sense dictates that this could not possibly be the rule," as such a result would allow any individual to avoid the terms of a website or service simply by using someone else's account instead of their own. *See Nicosia*, 384 F. Supp. 3d at 272.

For these reasons, Plaintiff cannot choose to avoid the arbitration obligations in the Amazon COUs and Alexa Terms to which her husband is bound. Plaintiff is equitably estopped from asserting her claims in this forum.

## CONCLUSION

For these reasons and those outlined in the Motion, Amazon respectfully requests that the Court grant its Motion to Compel Arbitration, order all claims in this action to individualized arbitration, and dismiss this action or stay all proceedings pending completion of arbitration.

Dated: November 4, 2019

Respectfully submitted,

FENWICK & WEST LLP

By: *s/ Laurence F. Pulgram*
        Laurence F. Pulgram

Attorneys for Defendants
AMAZON.COM, INC. and
A2Z DEVELOPMENT CENTER, INC.