LAURENCE F. PULGRAM (CSB No. 115163)
lpulgram@fenwick.com
TYLER G. NEWBY (CSB No. 205790)
tnewby@fenwick.com
MOLLY R. MELCHER (CSB No. 272950)
mmelcher@fenwick.com
ARMEN N. NERCESSIAN (CSB No. 284906)
anercessian@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:  415.875.2300
Facsimile:   415.281.1350

Attorneys for Defendants
AMAZON.COM, INC., and
A2Z DEVELOPMENT CENTER, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| HAYLEY CHARMAINE TICE, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC. and A2Z DEVELOPMENT CENTER, INC.,<br><br>Defendants. | Case No.: 5:19-cv-01311-SVW-KK<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO STAY PENDING APPEAL**<br><br>Complaint served: July 22, 2019<br><br>Date:      May 15, 2020<br>Time:      1:30 P.M.<br>Judge:     Stephen V. Wilson<br>Ctrm:      10A<br>Trial Date: None |

FENWICK & WEST LLP
ATTORNEYS AT LAW

# **TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION............................................................ 1

INTRODUCTION AND SUMMARY........................................................... 2

BACKGROUND ...................................................................................... 5

LEGAL STANDARD ............................................................................... 8

ARGUMENT ......................................................................................... 9

I.     AMAZON'S APPEAL RAISES SERIOUS LEGAL QUESTIONS
AND IS LIKELY TO SUCCEED ON THE MERITS ............................... 9

    A.    The FAA Requires Respect for the Arbitration Agreement's
Delegation to the Arbitrator of Issues of Arbitrability,
Including Questions of Scope and Unconscionability. ..................... 10

    B.    Even if Arbitrability Were an Issue for This Court to Decide,
the FAA Requires Enforcement of the Arbitration Agreement
as to Plaintiff's Claims Based on the Absence of a Wake
Word.......................................................................................... 12

        1.    The FAA Requires Arbitration of All Claims Within the
Scope of the Agreement. .......................................................... 13

        2.    The FAA Does Not Permit Constriction of the Arbitration
Clause to Exclude Particular Conduct, Including
Potentially Criminal Conduct, from Arbitration. .................... 14

        3.    The FAA Does Not Permit a Finding of
Unconscionability That Disfavors Arbitration of Claims
Included Within the Scope of an Arbitration Clause. .............. 16

II.    DENIAL OF A STAY PENDING APPEAL WOULD CAUSE
AMAZON IRREPARABLE HARM ......................................................... 18

III.   THERE IS NO GENUINE HARM TO PLAINTIFFS FROM A
STAY.................................................................................................. 20

IV.   THE PUBLIC INTEREST FAVORS A STAY.......................................... 20

CONCLUSION........................................................................................ 22

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A.G. Edwards & Sons, Inc. v. McCollough*,
967 F.2d 1401 (9th Cir. 1992) .......................................................................... 21

*Alascom, Inc. v. ITT N. Elec. Co.*,
727 F.2d 1419 (9th Cir. 1984) .......................................................................... 19

*AT&T Mobility, LLC v. Concepcion*,
563 U.S. 333 (2010) ................................................................................ *passim*

*Aviles v. Quik Pick Express, LLC*,
No. CV-15-5214-MWF (AGR), 2016 WL 6902458
(C.D. Cal. Jan. 25, 2016) .................................................................................... 9

*Benson v. Double Down Interactive, LLC*,
No. 2:18-cv-00525, 2019 WL 972482 (W.D. Wash. Feb. 28, 2019) ................ 20

*Blinco v. Green Tree Servicing, LLC*,
366 F.3d 1249 (11th Cir. 2004) (per curiam) ..................................................... 8

*Bombardier Corp. v. Nat'l R.R. Passenger Corp.*,
2002 WL 31818924 (D.C. Cir. 2002) (per curiam) ........................................... 8

*Bradford-Scott Data Corp. v. Physician Computer Network, Inc.*,
128 F.3d 504 (7th Cir. 1997) .............................................................................. 8

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) .......................................................................... 11

*Bridgetown Trucking, Inc. v. Acatech Sols., Inc.*,
197 F. Supp. 3d 1248 (D. Or. 2016) ................................................................ 15

*Britton v. Co-op Banking Grp.*,
916 F.2d 1405 (9th Cir. 1990) ............................................................................ 8

*Dagnan v. St. John's Military Sch.*,
No. 16-2246-CM, 2016 WL 7386280 (D. Kan. Dec. 21, 2016) ...................... 15

*Ehleiter v. Grapetree Shores, Inc.*,
482 F.3d 207 (3d Cir. 2007) ............................................................................... 8

*Epic Sys. Corp. v. Lewis*,
138 S. Ct. 1612 (2018) .......................................................................... 3, 12, 17

*Hart v. Charter Commc'ns, Inc.*,
No. SACV170556DOCRAOX, 2019 WL 7940684
(C.D. Cal. Aug. 1, 2019) ..................................................................................... 9

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
139 S. Ct. 524 (2018) .......................................................................... 2, 10, 12

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Hunter v. First Nat'l Bank of Omaha, NA,*
No. 15-CV-808-H-NLS, 2015 WL 12672151
(S.D. Cal. July 31, 2015) ................................................................ 15

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices &*
*Prod. Liab. Litig.,*
828 F. Supp. 2d 1150 (C.D. Cal. 2011) .......................................... 18

*Kilgore v. KeyBank, Nat. Ass'n,*
718 F.3d 1052 (9th Cir. 2013) ........................................................ 18

*Lair v. Bullock,*
697 F.3d 1200 (9th Cir. 2012) .......................................................... 9

*Leiva-Perez v. Holder,*
640 F.3d 962 (9th Cir. 2011) ............................................................ 9

*Marmet Health Care Ctr. v. Brown,*
565 U.S. 530 (2012) .................................................... 3, 15, 16, 17

*McCauley v. Halliburton Energy Servs., Inc.,*
413 F.3d 1158 (10th Cir. 2005) ........................................................ 8

*Merkin v. Vonage Am. Inc.,*
No. 213CV08026CASMRWX, 2014 WL 12701041
(C.D. Cal. Mar. 26, 2014) ................................................................ 9

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
473 U.S. 614 (1985) ................................................................ 13, 15

*Mortensen v. Bresnan Commc'ns, LLC,*
722 F.3d 1151 (9th Cir. 2013) ........................................................ 16

*Murphy v. DirecTV, Inc.,*
No. 2:07-cv-06465-FMC-VBKx, 2008 WL 8608808
(C.D. Cal. July 1, 2008) .................................................................. 10

*Newton v. Am. Debt Servs., Inc.,*
549 F. App'x 692 (9th Cir. 2013). Instead, the Order ...................... 18

*Nken v. Holder,*
556 U.S. 418 (2009) ................................................................... 9, 18

*Ontiveros v. Zamora,*
No. CIV. S-08-567 LKK/DAD, 2013 WL 1785891
(E.D. Cal. Apr. 25, 2013) ............................................................... 19

*Ortiz v. Volt Mgmt. Corp,*
No. 16-cv-07096-YGR, 2017 WL 1957072
(N.D. Cal. May 11, 2017) ............................................................... 15

FENWICK & WEST LLP
ATTORNEYS AT LAW

1

## TABLE OF AUTHORITIES
### (Continued)

2

**Page(s)**

3

*Perez v. DirecTV Grp. Holdings, LLC,*
   No. 816CV1440JLSDFMX, 2017 WL 8117452

4

   (C.D. Cal. Sept. 22, 2017) ........................................................ 9

5

*Rent-A-Ctr., W., Inc. v. Jackson,*
   561 U.S. 63 (2010) ....................................................... 3, 10, 11

6

*Rivera v. UHS of Delaware, Inc.,*
   No. EDCV1500863JGBDTBX, 2018 WL 6332278

7

   (C.D. Cal. July 13, 2018) ......................................................... 9

8

*Sample v. Brookdale Senior Living Cmtys., Inc.,*
   No. C11-5844 RJB, 2012 WL 195175 (W.D. Wash. Jan. 23, 2012) ........... 20, 21

9

10

*Shearson/Am. Express, Inc. v. McMahon,*
   482 U.S. 220 (1987) ..................................................... 3, 14, 15

11

12

*Smith v. Legal Helpers Debt Resolution,*
   No. 11-5054RJB, 2012 WL 12863172 (W.D. Wash. Apr. 24, 2012) ............ 19

13

*Steiner v. Apple Comput., Inc.,*
   No. C 07-04486 SBA, 2008 WL 1925197

14

   (N.D. Cal. Apr. 29, 2008) ....................................................... 19

15

*The Casiano-Bel Air Homeowners Ass'n v. Phila. Indem. Ins.,*
   No. 2:16-cv-08549-SVW-SK, 2017 WL 3273654

16

   (C.D. Cal. Feb. 22, 2017) (Wilson, J.) ......................................... 13

17

*Vartanian v. VW Credit, Inc.,*
   No. 2:11-CV-10776-SVW-RZ, 2012 WL 12326334

18

   (C.D. Cal. Feb. 22, 2012) ........................................................ 8

19

*Velasquez-Reyes v. Samsung Elecs. Am., Inc.,*
   No. ED CV 16-1953-DMG (KK), 2018 WL 6074573

20

   (C.D. Cal. Mar. 8, 2018) ........................................................ 20

21

*Ward v. Estate of Goossen,*
   No. 14-CV-03510-TEH, 2014 WL 7273911

22

   (N.D. Cal. Dec. 22, 2014) ..................................................... 9, 19

23

*Zaborowski v. MHN Gov't Servs., Inc.,* No. C 12-05109 SI, 2013 WL
   1832638

24

   (N.D. Cal. May 1, 2013) ........................................................ 21

25

**STATUTES**

26

Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*.....................................*passim*

27

18 U.S.C. § 1, *et seq.* ................................................................. 14

28

18 U.S.C. § 1961, *et seq.* ........................................................ 3, 14

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

Cal. Penal Code § 632 ........................................................................................... 5

**RULES**

AAA Consumer Arb. Rule R-14(a) (2014) ............................................................ 11

Civil L.R. 7-3 .......................................................................................................... 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FENWICK & WEST LLP
ATTORNEYS AT LAW

## NOTICE OF MOTION AND MOTION

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on May 15, 2020, or as soon thereafter as counsel may be heard, Defendants Amazon.com, Inc. and a2z Development Center, Inc. ("Amazon") will and hereby do move the Court for an order staying this case pending their appeal as of right, pursuant to the Federal Arbitration Act, 9 U.S.C. § 16(a) ("FAA"), of the Order Granting Motion to Compel Arbitration (Dkt. No. 62).

Amazon makes this Motion based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the Declaration of Brian Buckley filed herewith, the accompanying Request for Judicial Notice in Support of Motion to Stay Pending Appeal, all papers and pleadings on file with the Court in this matter, any other matters of which the Court may take judicial notice, and any oral argument of counsel.  This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on April 1, 2020.

Dated:  April 17, 2020                    FENWICK & WEST LLP

                                          By:  *s/ Laurence F. Pulgram*
                                          Laurence F. Pulgram
                                          Tyler G. Newby
                                          Molly R. Melcher
                                          Armen N. Nercessian

                                          Attorneys for Defendants
                                          AMAZON.COM, INC. and
                                          A2Z DEVELOPMENT CENTER, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW

**INTRODUCTION AND SUMMARY**

Amazon moves to stay proceedings in this Court pending its appeal of the portion of the Court's Order denying Defendants' Motion to Compel Arbitration (Dkt. No. 62) (the "Order").  The Order compelled arbitration of the bulk of Plaintiff's claims under the California wiretap statute, in instances when either Plaintiff, or another person, intentionally invoked the wake word, "Alexa," to trigger an interaction with an Alexa-enabled device.  Amazon does not appeal those portions of the Order.  But the Court denied arbitration as to the Complaint's allegation that the Alexa device "sometimes" initiated recordings in the absence of an actual wake word.  Class Action Complaint (Dkt. No. 1) ("Compl.") ¶ 14.  The Order described this allegation as "surreptitious recording."  Order at 6–7.  Amazon has appealed only this portion of the Order and will ask the Ninth Circuit to compel to arbitration that claim as well.

As explained below, Amazon's appeal raises serious legal questions and has a substantial prospect of success on the merits, which warrants a stay until the Ninth Circuit can consider Amazon's right to arbitration.  The Order concluded that an arbitration agreement would be "unconscionable as a matter of law" if it "allowed Amazon to compel every possible claim, even criminal acts or those completely unrelated to the contract, into arbitration."  *Id.* at 6.  As a fundamental matter, the Court's decision to reach the issues of scope and unconscionability, instead of referring them to the arbitrator, raises serious issues.  When, as here, the arbitration agreement delegates questions of arbitrability to the arbitrator, the FAA requires the arbitrator, not the Court, to decide these issues.  This is true even if the Court thinks that the argument that the arbitration agreement applies to a particular dispute is "wholly groundless."  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2018) (enforcing delegation provision; rejecting "wholly groundless" exception).  The Order (at 5–6) recognizes that Amazon's terms effectively delegate issues of arbitrability to the arbitrator.  Unless the Court had

2

FENWICK & WEST LLP
ATTORNEYS AT LAW

concluded that the *delegation clause* itself were unconscionable, which the Order does not do, questions of arbitrability must be determined by the arbitrator. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010).

Independently, even if the scope of the agreement were an issue for the Court to determine, the conclusion that arbitration of the "surreptitious" recording claim would be unconscionable conflicts with the federal policy favoring arbitration. Plaintiff's claims of unlawful voice recording by a voice-activated device fall squarely within the scope of the arbitration agreement, which requires arbitration of "any dispute arising out of or related to Alexa." The FAA requires the arbitration agreement to be enforced in accordance with its terms. *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 344 (2010). While unconscionability may be a defense to arbitration, the FAA preempts that defense when "applied in a fashion that disfavors arbitration" (*id.* at 341), or where the purported unconscionability is the very fact that the agreement requires arbitration rather than litigation. *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1623 (2018).

Here, the Order's conclusion that it would be "inequitable" to arbitrate the surreptitious recording claim because it is potentially criminal or "completely unrelated to the [arbitration agreement]," discriminates against arbitration in favor of litigation, which is precisely what the FAA precludes. Order at 6. Holding that arbitration is not an appropriate forum for certain types of civil claims—even though they are squarely within the scope of the arbitration agreement, and even though the mechanisms of the arbitration are not challenged—disfavors arbitration and assumes that litigation is preferable. The Supreme Court has held that the FAA does not permit exceptions to arbitration based on preference for categories of claims, *Marmet Health Care Ctr. v. Brown*, 565 U.S. 530, 533 (2012), and that claims for civil remedies—even when brought under criminal statutes—must be arbitrated. *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 239–240 (1987) (RICO claims subject to arbitration despite alleging criminal acts).

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    These limits on unconscionability were not addressed in the parties' earlier
2  briefing.  That is because Plaintiff never argued that it would be unconscionable to
3  arbitrate claims involving recordings absent a wake word.  Plaintiff only argued, as
4  an afterthought in a final footnote, that the agreement was unconscionable because
5  it was adhesive and unreasonably one-sided.  Plaintiff's Opposition to Defendants'
6  Motion to Compel Arbitration (Dkt. No. 53) ("Opp.") at 20 n.15.  To the contrary,
7  as this Court recognized in referring most of Plaintiff's claims to arbitration,
8  Amazon's terms "contain facially valid arbitration clauses."  Order at 3.  Under the
9  FAA, those clauses should be enforced in accordance with their terms, which
10  extend equally to allegations of recording with or without a wake word.

11    A stay pending appeal of denial of a motion to compel arbitration is
12  customarily granted; indeed, in most Circuits, a stay is automatic under the FAA,
13  though in the Ninth Circuit a stay is in the trial court's discretion.  *See* n.1, *infra*.  A
14  stay is warranted here by the serious legal issues and balance of equities.  A stay
15  will prevent irreparable harm to Amazon from loss of its rights to arbitrate and
16  subjection, instead, to class litigation.  Under the Order, the arbitrator already will
17  have to consider Plaintiff's claims related to intentional use and background
18  recordings.  It would be inefficient and risk conflicting results to continue with this
19  remnant of the litigation piecemeal, rather than permitting all issues to proceed in a
20  single arbitration if the Ninth Circuit so directs.

21    Proceeding with this litigation pending appeal is especially unwarranted
22  because recordings absent a wake word are the edge case exception.  As discussed
23  below, recordings absent a wake word occur only when an Alexa device mistakenly
24  detects that a wake word was spoken.  Recordings intentionally triggered by the
25  wake word, which are already subject to arbitration, represent the vast majority of
26  the recordings at issue.  The edge case of false wakes should not proceed through
27  costly and onerous class litigation while the Ninth Circuit determines whether a
28  single arbitration is appropriate.

# BACKGROUND

The Complaint alleges that Alexa "devices are voice-activated and are constantly listening in the owner's home for a 'wake word' which is set by default to 'Alexa.' If someone says the wake word, the device starts recording the user's voice and uploads the recording to Amazon's Alexa Cloud." Compl. ¶ 13. "The cloud transcribes Alexa's voice recordings into text and translates the text into an 'intent'" which generates a response relayed back through the device to the speaker. *Id.* ¶ 15. "Amazon registered account holders can review, listen to, and delete voice recordings associated with their account using the Voice History feature available in the Alexa app and the Alexa Privacy Hub at www.amazon.com/alexaprivacy." *Id.* ¶ 23. Plaintiff's husband is a registered Alexa account holder. Order at 1.

Plaintiff seeks to represent a class of California citizens whose voices were recorded by Amazon Alexa Echo devices and who were not registered with Amazon. Compl. ¶ 32. She claims that all her voice recording through her use of Alexa occurs without her consent, in alleged violation of California's wiretap act, Penal Code Section 632. *Id.* ¶¶ 47, 49.

Amazon filed its Motion to Compel Arbitration ("MTCA") under the FAA, 9 U.S.C. § 4, on October 10, 2019. Dkt. No. 43. On March 25, 2019, the Court issued its Order granting in part and denying in part the MTCA. Dkt. No. 62. The Order consists of three parts.

First, the Order found that Plaintiff is equitably estopped from avoiding the arbitration clause in her husband's Alexa TOUs when she voluntarily uses Alexa by speaking a wake word. *See* Compl. ¶ 29. The Court therefore compelled arbitration of all claims related to her voluntary use of Alexa-enabled devices. Order at 5.

Second, as to Plaintiff's allegation that she may have been recorded in the background when "someone else in the household activated the Device with a wake

FENWICK & WEST LLP
ATTORNEYS AT LAW

word" (*see* Compl. ¶ 30), the Order again ordered arbitration.  Order at 6.
Addressing whether this claim was within the scope of the arbitration clause in the
Alexa TOUs, the Court followed U.S. Supreme Court precedent requiring it to
"defer to an arbitrator's decision on threshold arbitrability when there is 'clear and
unmistakable' evidence in the contract that the parties intended to allow the
arbitrator to decide arbitrability."  *Id.* at 5 (citing *Henry Schein,*139 S. Ct. at 530).
The Court found that the parties had delegated the issue of arbitrability to the
arbitrator in the Alexa TOUs.  Order at 5–6.  It therefore found "that the Alexa
TOU require the arbitrator to determine whether [the background recording claim]
is encompassed in the Arbitration Clause."  *Id.* at 6.

Third, the Order denied arbitration with respect to allegations that the Court
described as "surreptitious recording."  Although Plaintiff never alleged any
"surreptitious recordings," the Complaint does allege that the Alexa-enabled
devices "sometimes" initiate recordings in the absence of any person saying a wake
word.  *Id.* at 6–7.  The Court held that "a contract that allowed Amazon to compel
every possible claim, even criminal acts or those completely unrelated to the
contract, into arbitration would be unconscionable as a matter of law."  *Id.* at 6.
The Court described this circumstance as "ha[ving] no basis in any agreement with
Amazon" because the "Alexa device allegedly picks up conversations without any
connection to the intended and advertised use of Alexa."  *Id.*

In fact, the Complaint does not allege that recordings in the absence of a
wake word (*i.e.*, false wakes) are unconnected to the intended use of Alexa.
Paragraph 14 is the only allegation about recording absent a wake word, and it is
notably silent as to why that might occur.  It alleges:

> While Amazon represents that Alexa only records voices and
> communications once it is activated by its wake word, that is not true.
> Alexa is constantly listening to voices and conversations and sometimes
> records these conversations even without prompting by a wake word

FENWICK & WEST LLP
ATTORNEYS AT LAW

and the persons in the household have no way of knowing that Alexa is
recording them.

Compl. ¶ 14. This allegation says nothing about when, or why, recording without a
wake word occurs, but the reason is publicized and well-known. The occurrence of
false wakes is described in the very website incorporated into the Complaint, of
which this Court may and should take judicial notice. *See* Request for Judicial
Notice ("RJN"); Compl. ¶ 23 (citing www.amazon.com/alexaprivacy). Initiation of
recording without a wake word occurs if the Alexa service *mistakenly* detects a
wake word (for example, when someone says "Alexis" or "a Lexus" and the Alexa
device interprets the word as "Alexa"). Declaration of Brian Buckley in Support of
Motion to Stay ("Buckley Decl.") ¶ 6, Ex. C at 1. Imperfections are inherent in
technology, and here they may cause false wakes. But far from being
"surreptitious" or outrageous conduct, Amazon has made this clear to users in its
public explanations on the website Complaint paragraph 23 refers to. The website
explains:

> **What's an accidental wake-up?** On some occasions, Alexa may wake
> up when no one has said the wake word. It's similar to when a person
> walking down the street turns their head when they hear what sounds
> like their name. Alexa may react the same way, misinterpreting audio
> that sounds like the wake word, but isn't. For example, you're talking
> to a friend and you say, "My neighbor just bought a Lexus convertible."
> There is a small chance that Alexa might incorrectly identify that as the
> wake word. (That's getting better, by the way. We are constantly
> improving our wake word detection technology.) To understand why
> there was an accidental wake-up, you can simply say, *"Alexa, why did*
> *you do that?"* and Alexa will explain why that happened. No surprises.

*Id.* As it does for every recording, the Alexa device also flashes a blue light or
provides a tone to alert the user when *each* recording begins (contrary to the

FENWICK & WEST LLP
ATTORNEYS AT LAW

Complaint's conclusory allegation that "persons in the household have no way of knowing that Alexa is recording them"). *Id.* ¶ 5, Ex. C at 1. And as the Complaint admits (Compl. ¶ 23), users can review, listen to, and delete each recording in the Alexa app. *See also* Buckley Decl. ¶ 7, Ex. B at 1.

Significantly, the Complaint does not allege any recording absent a wake word *other* than the false wakes that may occur during the ordinary course of operation of the Alexa service due to its misperception that a wake word has been spoken. Nor does it allege any "surreptitious" recording of Plaintiff absent a blue light or tone to alert the user. Nor does it allege that Amazon had any *intent* to make any recording other than when a wake word has been uttered—an essential element for a CIPA claim. *See Vartanian v. VW Credit, Inc.*, No. 2:11-CV-10776-SVW-RZ, 2012 WL 12326334, at *2 (C.D. Cal. Feb. 22, 2012) (dismissing as insufficient allegations of defendant's intent to record a confidential communication because facts "merely consistent with" liability were insufficient, as were conclusory allegations of intent).

On April 17, 2020, Amazon filed its Notice of Appeal. Dkt. No. 72.

## LEGAL STANDARD

The FAA provides an appeal *de novo* as of right from an order denying a motion to compel arbitration. 9 U.S.C. § 16(a)(1)(C); *Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1409 (9th Cir. 1990). In most circuits, an appeal of a denial of arbitration automatically stays trial court proceedings.[1] In the Ninth Circuit, however, a stay is held discretionary (*Britton*, 916 F.2d at 1412); but it is also routinely granted, especially for putative class actions, as the cases cited below

---

[1] *See Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 215 n.6 (3d Cir. 2007); *McCauley v. Halliburton Energy Servs., Inc.*, 413 F.3d 1158, 1160 (10th Cir. 2005); *Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249, 1251 (11th Cir. 2004) (per curiam); *Bombardier Corp. v. Nat'l R.R. Passenger Corp.*, 2002 WL 31818924, at *1 (D.C. Cir. 2002) (per curiam); *Bradford-Scott Data Corp. v. Physician Computer Network, Inc.*, 128 F.3d 504, 506 (7th Cir. 1997).

FENWICK & WEST LLP
ATTORNEYS AT LAW

reflect.[2]  This is because the relevant factors generally favor a stay when an order denying arbitration is being appealed in such cases.  This case is no exception.

In determining whether to grant a stay pending appeal, a court considers (1) whether the appeal raises serious legal questions or has a fair prospect of success; (2) whether the applicant will be irreparably injured without a stay; (3) whether a stay will substantially injure the other parties; and (4) where the public interest lies.  *Leiva-Perez v. Holder*, 640 F.3d 962, 964–68 (9th Cir. 2011) (expanding upon *Nken v. Holder*, 556 U.S. 418, 426 (2009)).  "In weighing these factors, courts apply a 'sliding scale,' whereby the elements of the test are balanced 'so that a stronger showing of one . . . may offset a weaker showing of another.'" *Ward v. Estate of Goossen*, No. 14-CV-03510-TEH, 2014 WL 7273911, at *1 (N.D. Cal. Dec. 22, 2014) (granting stay pending appeal of order denying motion to compel arbitration) (quoting *Leiva-Perez*, 640 F.3d at 964).

## ARGUMENT

## I.   AMAZON'S APPEAL RAISES SERIOUS LEGAL QUESTIONS AND IS LIKELY TO SUCCEED ON THE MERITS.

Under the first factor, a stay is warranted where the party seeking the stay shows a "minimum quantum of likely success" on appeal—*i.e.*, that its appeal has a "reasonable probability or fair prospect" of success, or raises "substantial" or "serious" legal questions.  *Leiva-Perez*, 640 F.3d at 967–68.  Amazon must show only that the "likelihood of success on the merits is better than negligible"—not that "it is more likely than not that [it] will win on the merits." *Lair v. Bullock*, 697

---

[2] *E.g., Hart v. Charter Commc'ns, Inc.*, No. SACV170556DOCRAOX, 2019 WL 7940684, at *6 (C.D. Cal. Aug. 1, 2019) (granting stay pending appeal of order on MTCA in class action); *Rivera v. UHS of Delaware, Inc.*, No. EDCV1500863JGBDTBX, 2018 WL 6332278, at *5 (C.D. Cal. July 13, 2018) (same); *Perez v. DirecTV Grp. Holdings, LLC*, No. 816CV1440JLSDFMX, 2017 WL 8117452, at *3 (C.D. Cal. Sept. 22, 2017) (same); *Aviles v. Quik Pick Express, LLC*, No. CV-15-5214-MWF (AGR), 2016 WL 6902458, at *4 (C.D. Cal. Jan. 25, 2016) (same); *Merkin v. Vonage Am. Inc.*, No. 213CV08026CASMRWX, 2014 WL 12701041, at *2 (C.D. Cal. Mar. 26, 2014) (same).

FENWICK & WEST LLP
ATTORNEYS AT LAW

F.3d 1200, 1204 (9th Cir. 2012).  Amazon does not face the burden of convincing the Court that its Order is likely incorrect; that approach would require "the district court [to say] that it erred in not granting defendant's original motion to stay the proceedings pending arbitration."  *Murphy v. DirecTV, Inc.*, No. 2:07-cv-06465-FMC-VBKx, 2008 WL 8608808, at *2 (C.D. Cal. July 1, 2008) (granting motion to stay despite having denied motion to compel arbitration).  Amazon's appeal easily satisfies the applicable standard.

**A.    The FAA Requires Respect for the Arbitration Agreement's Delegation to the Arbitrator of Issues of Arbitrability, Including Questions of Scope and Unconscionability.**

The FAA declares a liberal policy favoring enforcement of arbitration clauses, providing that the terms of arbitration agreements "shall be valid, irrevocable, and enforceable" with limited exception.  9 U.S.C. § 2; *see also Concepcion*, 563 U.S. at 339.

Under the FAA, parties may agree to have an arbitrator decide "gateway" questions of arbitrability through a "delegation provision."  *Rent-A-Ctr., W., Inc.*, 561 U.S. at 68–69.  Questions of arbitrability include whether an agreement covers a particular controversy, and whether an arbitration agreement is enforceable, including whether it is unconscionable.  *Id.*  An "agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."  *Id.* at 70.  "Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator."  *Henry Schein*, 139 S. Ct. at 529–530.  When the parties' contract clearly delegates arbitrability questions to an arbitrator, a court may not decide those issues, even if the court thinks that the claim to arbitration is "wholly groundless."  *Id.* at 529 (addressing and rejecting the "wholly groundless exception" to delegation to an

FENWICK & WEST LLP
ATTORNEYS AT LAW

arbitrator).

In furtherance of its duty to enforce a delegation clause, a court may assess the validity or unconscionability *of the delegation provision itself*; but the alleged unconscionability of the arbitration agreement on any particular facts is an issue for the arbitrator. *See Rent-A-Ctr., W., Inc.*, 561 U.S. at 72 ("unless [plaintiff] challenged [as unconscionable] the delegation provision specifically, we must treat it as valid under [FAA] § 2, and must enforce it . . . leaving any challenge to the validity of the Agreement as a whole for the arbitrator"). In *Brennan v. Opus Bank*, 796 F.3d 1125, 1130–31 (9th Cir. 2015), the Ninth Circuit held that an arbitration provision incorporating the AAA rules is clear and unmistakable evidence that the parties intended to arbitrate questions of arbitrability, which required the court to send to the arbitrator plaintiff's argument that all or part of the agreement is unconscionable.

Here, there is no dispute that the delegation clause is valid, and no argument that the delegation clause is unconscionable (nor did the Court conclude as much). The Court already found that the "contracting parties agreed to arbitrate arbitrability." Order at 6. It enforced the delegation provision to require the arbitrator to determine whether Plaintiff's background recording claim was within the scope of the arbitration agreement. *Id.* The Court noted that the COUs and Alexa TOUs incorporate the AAA rules (Order at 5–6), which in turn provide that "the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the *existence, scope, or validity of the arbitration agreement* or to the arbitrability of any claim or counterclaim." AAA Consumer Arb. Rule R-14(a) (2014) (emphasis added).

Respectfully, when analyzing the "surreptitious recording" issue, the Court erred in disregarding the delegation clause. Having found that the applicable arbitration agreements contain a valid delegation clause, the Court could not decide question of the scope or validity of the arbitration agreement for the "surreptitious"

FENWICK & WEST LLP
ATTORNEYS AT LAW

recording claim any more than for the background recording claims.  *See Henry Schein*, 139 S. Ct. at 528 ("When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract.")  Once this Court found that the applicable arbitration agreement contained a delegation clause, the FAA required the inquiry to end there.

The Order noted that "Plaintiff may argue any unconscionability defense to the arbitrator on the claims that have been compelled to arbitration. . . ."  Order at 6 n.1.  That is exactly where Plaintiff must argue any claim of unconscionability, including as to a claim based on "surreptitious" recordings.  Before the arbitrator, Amazon can make a thorough showing that false wakes are in no way disconnected from Alexa's core functionality—they are simply mistaken detection of a wake word.  Buckley Decl. ¶ 6, Ex. C at 1.

The Ninth Circuit is likely to agree that, pursuant to the FAA and Supreme Court precedent, this Court had no power to determine whether or not the "surreptitious" recording claim was arbitrable.  That is the role of the arbitrator.

**B.     Even if Arbitrability Were an Issue for This Court to Decide, the FAA Requires Enforcement of the Arbitration Agreement as to Plaintiff's Claims Based on the Absence of a Wake Word.**

Even assuming that the Court were permitted to decide issues of arbitrability in this case, the Order's conclusion—that arbitration of Plaintiffs' voice recording claims were unrelated to the arbitration agreement and unconscionable—raises serious questions.  By enacting the FAA, Congress directed courts to abandon their historic hostility towards arbitration and instead treat arbitration agreements as "valid, irrevocable, and enforceable."  *Epic Sys.*, 138 S. Ct. at 1621 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)); 9 U.S.C. § 2.  The Supreme Court has described the FAA as reflecting a "liberal federal policy favoring arbitration."  *Concepcion*, 563 U.S. at 339.  Even in the *absence* of a delegation provision, a court's role is "limited to determining (1) whether a valid

FENWICK & WEST LLP
ATTORNEYS AT LAW

agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *The Casiano-Bel Air Homeowners Ass'n v. Phila. Indem. Ins.*, No. 2:16-cv-08549-SVW-SK, 2017 WL 3273654, at *3 (C.D. Cal. Feb. 22, 2017) (Wilson, J.) (quoting *Chron Corp. v. Orth Diagnostic Sys., Inc.*, 207 F.3 1126, 1130 (9th Cir. 2000)).  The Order's constriction of contractual arbitration rights violates the FAA's mandate to respect and enforce them.

### 1.     The FAA Requires Arbitration of All Claims Within the Scope of the Agreement.

"Any inquiry into the scope of an arbitration clause begins with a presumption in favor of arbitrability." *The Casiano-Bel Air Homeowners Ass'n*, 2017 WL 3273654 at *4.  The Order suggests that the claim for recording absent a wake word cannot be arbitrated because it is "completely unrelated to the contract" and "outside the bounds of both the Alexa TOU and Amazon COU."  Order at 6. To the extent the Order infers that the "surreptitious" recording claims are outside the scope of the arbitration clause, this is incorrect.  The Alexa Terms provide that "**Any dispute or claim arising from or relating to . . . Alexa is subject to the binding arbitration . . . and all other terms in the Amazon.com Conditions of Use.**"  *See* Declaration of Brian Buckley in Support of Defendants' Motion to Compel Arbitration and to Dismiss Plaintiff's Claims (Dkt. No. 44) ("Buckley Decl. ISO MTCA") ¶ 11 (emphasis in original).  A dispute over Alexa's alleged recording in the absence of a wake word is indisputably a claim "arising from or relating to Alexa," and therefore squarely within the scope of the agreement.  *See, e.g.*, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n.13, 625–26 (1985) (holding that claims fall within the scope of broadly defined arbitration provisions if they merely "touch" the matters covered).

Moreover, Plaintiff's claim that Alexa's voice-activated service has unlawfully recorded voices is not unrelated to the contract governing the Alexa service.  An agreement to the Alexa Terms, including the agreement to arbitrate,

FENWICK & WEST LLP
ATTORNEYS AT LAW

was a precondition to obtain access to the Alexa service. Buckley Decl. ISO MTCA ¶ 11. That the Alexa service may sometimes initiate recordings based on mistaken detection of a wake word is not nefarious and is certainly not a secret. False wakes are an unavoidable byproduct of voice-activated technology and are mitigated by a tone or blue flashing light indicating that a recording occurred and the user's ability to review that recording and delete it. Buckley Decl. ¶¶ 5–7, Ex. B at 1, Ex. C at 1–2. Plaintiff's challenge to that inherent functionality of the Alexa device is directly related to, and falls squarely within, an agreement to arbitrate disputes relating to the Alexa device. For this reason, the Order's suggestion that claims based on false wakes are outside the scope of arbitration raises a serious legal issue justifying a stay pending appeal.

### 2. The FAA Does Not Permit Constriction of the Arbitration Clause to Exclude Particular Conduct, Including Potentially Criminal Conduct, from Arbitration.

The Court's conclusion that the potentially criminal nature of a CIPA violation defeats arbitrability also creates a serious legal question. *See* Order at 6. The Order held that alleged instances where "the Alexa device [] picks up conversations without any connection to the intended and advertised use of Alexa … raises a free-standing, potentially criminal, CIPA violation" and that the claim is outside of arbitration because it may allegedly be "criminal in nature." *Id.*

To the contrary, Supreme Court precedent establishes that civil claims arising from criminal statutes cannot be excluded from arbitration, absent express Congressional intent to exclude them. In *Shearson/Am.Ex.*, the Supreme Court found the "overlap" between civil and criminal provisions of RICO did not preclude arbitration of civil actions brought under RICO, reasoning that "nothing in RICO's text . . . even arguably evinces congressional intent to exclude civil RICO claims . . . from the Arbitration Act's dictates." 482 U.S. at 238. "The Arbitration Act, standing alone, therefore mandates enforcement of agreements to arbitrate

FENWICK & WEST LLP
ATTORNEYS AT LAW

statutory claims" that may only "be overridden by a contrary congressional command." *Id.* at 226.  Courts regularly compel arbitration in the context of statutes that impose both civil and criminal liability.  *See, e.g.*, *Mitsubishi*, 473 U.S. at 628–29 (holding antitrust claims under the Sherman Act are subject to arbitration agreement); *Bridgetown Trucking, Inc. v. Acatech Sols., Inc.*, 197 F. Supp. 3d 1248, 1258–60 (D. Or. 2016) (compelling federal Computer Fraud and Abuse Act claims to arbitration).

Similarly, civil claims alleging criminality under state law must be arbitrated and cannot be categorically excluded from arbitration.  *See, e.g.*, *Hunter v. First Nat'l Bank of Omaha, NA*, No. 15-CV-808-H-NLS, 2015 WL 12672151, at *5 (S.D. Cal. July 31, 2015) (granting motion to compel arbitration of CIPA claims); *Ortiz v. Volt Mgmt. Corp*, No. 16-cv-07096-YGR, 2017 WL 1957072, at *4 n.5 (N.D. Cal. May 11, 2017) (sending to arbitration claim regarding assertedly criminal violations of California's wage and labor laws:  "Plaintiff does not, and cannot, levy criminal charges against Volt. If Volt's actions here rise to the level of criminal activity, the arbitration provisions would not shield Volt from prosecution by the appropriate state or federal authorities."); *Dagnan v. St. John's Military Sch.*, No. 16-2246-CM, 2016 WL 7386280, at *8 (D. Kan. Dec. 21, 2016) (compelling child sexual assault case to arbitration).

More generally, the FAA does not allow categorical limitations on arbitration based on the perception that it would be an inferior remedy for a particular wrong, criminal or not.  *See Marmet Health Care Center*, 565 U.S. at 532–533 ("The [FAA's] text includes no exception for personal-injury or wrongful-death claims.  It 'requires courts to enforce the bargain of the parties to arbitrate.'  It 'reflects an emphatic federal policy in favor of arbitral dispute resolution.'") (citations omitted). In *Marmet Health Care Center*, the Supreme Court held that "West Virginia's prohibition against predispute agreements to arbitrate personal-injury or wrongful-death claims against nursing homes is a categorical rule prohibiting arbitration of a

1   particular type of claim, and that rule is contrary to the terms and coverage of the

2   FAA." *Id.* at 533.  Similarly, the conclusion that arbitration is an inappropriate

3   forum for claims under CIPA, even potentially criminal ones, discriminates against

4   arbitration, in violation of the FAA and Supreme Court precedent.  *See id.*

### 3.   The FAA Does Not Permit a Finding of Unconscionability That Disfavors Arbitration of Claims Included Within the Scope of an Arbitration Clause.

8   Finally, the Order's holding that it would be "unconscionable" to require

9   Plaintiff to arbitrate claims based on allegedly "criminal acts or those completely

10  unrelated to the contract" (Order at 6) not only decides the unconscionability issue

11  that the arbitrator must decide (*supra* Part I.A), but also runs afoul of the FAA's

12  prohibition on disfavoring arbitration.

13  Based on the federal policy favoring arbitration, *Concepcion* set limits on

14  state-law unconscionability doctrines.  Section 2 of the FAA

15  permits arbitration agreements to be declared unenforceable "upon such

16  grounds as exist at law or in equity for the revocation of any contract."

17  This saving clause permits agreements to arbitrate to be invalidated by

18  "generally applicable contract defenses, such as fraud, duress, or

19  unconscionability," but ***not by defenses that apply only to arbitration***

20  ***or that derive their meaning from the fact that an agreement to***

21  ***arbitrate is at issue***.

22  *Concepcion*, 563 U.S. at 339 (emphasis added) (citations omitted).  The FAA

23  preempts the unconscionability doctrine if "applied in a fashion that disfavors

24  arbitration." *Id.* at 341 (invalidating "neutral" prohibition on class action waivers

25  as imposing an obstacle to arbitration).  As the Ninth Circuit has stated, "we

26  take *Concepcion* to mean what its plain language says: Any general state-law

27  contract defense, based in unconscionability or otherwise, that has a

28  disproportionate effect on arbitration is displaced by the FAA." *Mortensen v.*

FENWICK & WEST LLP
ATTORNEYS AT LAW

*Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1159 (9th Cir. 2013) (interpreting *Concepcion* to be "broader than a restriction on the use of unconscionability to end-run FAA preemption").

The Order's finding that certain categories of claims "cannot equitably be compelled into arbitration" (Order at 6), despite being within the scope of an agreement to arbitrate, cannot be squared with the FAA.  The FAA preempts the Order's finding of unconscionability, as it rests on the premise that arbitration provides Plaintiff an inferior or insufficient remedy.  The Order focused on arbitration, not the contract as a whole, in concluding that "allowing Amazon to compel every possible claim . . . into arbitration would be unconscionable as a matter of law."  Order at 6.  This runs afoul of *Concepcion* because it "appl[ies] only to arbitration" and "derive[s] meaning from the fact that an agreement to arbitrate is at issue."  Indeed, "an argument that a contract is unenforceable *just because it requires bilateral arbitration . . .* is one that impermissibly disfavors arbitration whether it sounds in illegality or unconscionability." *Epic Sys.*, 138 S. Ct. at 1622 (FAA preempted plaintiffs' claim that agreements were unenforceable "precisely because they require individualized arbitration proceedings instead of class or collective ones").  Likewise, the Order errs in holding that the arbitration agreement is unenforceable as to "surreptitious" recording precisely because it requires arbitration rather than litigation.

*Marmet Health Care Center*'s treatment of unconscionability is also instructive.  There, after striking down West Virginia's statute banning arbitration of wrongful death claims against nursing homes, the Supreme Court also vacated and remanded a finding that the arbitration contracts were unconscionable.  565 U.S. at 533–34.  It held that, under the FAA, a finding of unconscionability under state law cannot be founded on, or even "influenced by" a categorical rule that arbitration of certain claims is against public policy.  *Id.*  Likewise here, a finding of unconscionability may not be influenced by the Court's reluctance to arbitrate

FENWICK & WEST LLP
ATTORNEYS AT LAW

"freestanding, potentially criminal" CIPA claims.  Just like a legislature, "a court may not 'rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what . . . the state legislature cannot.'"  *Concepcion*, 563 U.S. at 341 (citation omitted).

Post-*Concepcion*, courts may still hold arbitration clauses to be substantively unconscionable where they call for unilateral, overly expensive, or unfair *mechanisms* in arbitration.  *See, e.g.*, *Newton v. Am. Debt Servs., Inc.*, 549 F. App'x 692, 694 (9th Cir. 2013).  Instead, the Order relies on no such claim of an unfair mechanism here.[3]  It relies on the proposition that any arbitration of certain claims would be inequitable, a proposition that disfavors arbitration and cannot stand under the FAA.

Accordingly, Amazon's appeal will present serious legal issues warranting a stay pending appeal.

## II.   DENIAL OF A STAY PENDING APPEAL WOULD CAUSE AMAZON IRREPARABLE HARM.

Along with the first factor, irreparable harm is the "most critical" in considering a stay request.  *Nken*, 556 U.S. at 434.  The overwhelming majority of courts in this Circuit, in reviewing appeal of their own orders, agree that the "costs of litigation, in the face of a denied motion to compel arbitration, will generally

---

[3] The two cases cited in the Order (at 6) did not find arbitration agreements unconscionable, nor did those cases suggest that unconscionability can arise from anything other than the unfairness of a particular arbitration process.  *See Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1059 (9th Cir. 2013) (compelling arbitration; analyzing fairness of arbitration mechanism including cost and lack of class procedure, and finding neither procedural nor substantive unconscionability under California law); *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices & Prod. Liab. Litig.*, 828 F. Supp. 2d 1150, 1165 fn.9 (C.D. Cal. 2011) (not reaching the unconscionability issue).  Here, there is nothing unfair about the arbitration process itself—it is the standard AAA process, indeed the same one that will apply to most of Plaintiff's claims per the Order.

FENWICK & WEST LLP
ATTORNEYS AT LAW

constitute irreparable harm." *Steiner v. Apple Comput., Inc.*, No. C 07-04486 SBA, 2008 WL 1925197, at *5 (N.D. Cal. Apr. 29, 2008) (finding "strong showing" of irreparable harm). If Amazon were "forced to incur the expense of litigation before [its] appeal is heard, the appeal will be moot, and [its] right to appeal would be meaningless." *See Ward*, 2014 WL 7273911, at *3 (collecting cases) (internal quotation omitted).

As the Ninth Circuit has explained, "where an order grants a stay of arbitration, one party is deprived of the inexpensive and expeditious means by which the parties had agreed to resolve their disputes. If that party must undergo the expense and delay of a trial before being able to appeal, the advantages of arbitration—speed and economy—are lost forever." *Alascom, Inc. v. ITT N. Elec. Co.*, 727 F.2d 1419, 1422 (9th Cir. 1984); *see also Ontiveros v. Zamora*, No. CIV. S-08-567 LKK/DAD, 2013 WL 1785891, at *5 (E.D. Cal. Apr. 25, 2013) ("for defendant to be forced to proceed to trial, only to afterwards be allowed to arbitrate the dispute, would constitute a hollow victory indeed"); *Steiner*, 2008 WL 1925197, at *4–5 (holding appellant made a "strong showing" of irreparable harm where appellant would suffer litigation costs pending appeal of a motion to compel arbitration).

In view of the arbitration agreement's prohibition on class proceedings, the irreparable harm to Amazon is particularly manifest for this putative class action. Indeed, the deadline for Plaintiff to file her motion for class certification is July 7. *See* Order at 7; Dkt. No. 65. "Were this matter to proceed, in addition to the standard costs and burden associated with consumer litigation," Amazon would have to undertake immediate, potentially dispositive motion practice, class discovery, and class certification briefing, "possibly leading to another interlocutory appeal, or alternatively, to expensive and burdensome notification and certification procedures." *See Steiner*, 2008 WL 1925197, at *5; *see also Smith v. Legal Helpers Debt Resolution*, No. 11-5054RJB, 2012 WL 12863172, at *2 (W.D.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1  Wash. Apr. 24, 2012) (irreparable harm "strongly" favored stay given "expense of a

2  possible class action").

3      The irreparable harm factor plainly favors granting a stay pending Amazon's

4  appeal.

5  ## III.   THERE IS NO GENUINE HARM TO PLAINTIFFS FROM A STAY.

6      While the irreparable harm to Amazon of denying a stay pending appeal is

7  manifest, Plaintiff would suffer no comparable harm if the Court were to stay

8  proceedings pending appeal.  *Velasquez-Reyes v. Samsung Elecs. Am., Inc.*, No. ED

9  CV 16-1953-DMG (KK), 2018 WL 6074573, at *3 (C.D. Cal. Mar. 8, 2018) ("On

10  balance, the irreparable injury to Defendant should litigation proceed is far greater

11  than the risk of harm to Plaintiff … from the stay of proceedings.").  To the

12  contrary, a stay would maximize efficiency and economy for all parties: if Amazon

13  prevails on appeal, any costs incurred in the interim would be wasted; if not, there

14  would be little, if any, harm to Plaintiff, and any purported injury could be

15  recompensed.  "[A]ny monetary harm deriving from stay is redressable should

16  plaintiff prevail on the merits."  *Id.* (citing *Murphy*, 2008 WL 8608808, at *3);

17  *Sample v. Brookdale Senior Living Cmtys., Inc.*, No. C11-5844 RJB, 2012 WL

18  195175, at *2 (W.D. Wash. Jan. 23, 2012) (granting stay pending appeal of an order

19  denying arbitration and finding "damages caused by the delay of the appeal can be

20  recovered through prejudgment interest, as permitted by applicable law.").

21      There is no cognizable harm to Plaintiff in granting a stay pending appeal,

22  and thus the third stay factor strongly favors Amazon.

23  ## IV.   THE PUBLIC INTEREST FAVORS A STAY.

24      The public interest also supports a stay here.  Both the FAA and the policies

25  "underlying arbitration law stress the importance of judicial efficiency and

26  economy."  *See, e.g.*, *Sample*, 2012 WL 195175, at *2.  Courts repeatedly have held

27  that "issuing a stay avoids wasting judicial resources and is in keeping with the

28  federal policy favoring arbitration."  *Benson v. Double Down Interactive, LLC*, No.

FENWICK & WEST LLP
ATTORNEYS AT LAW

2:18-cv-00525, 2019 WL 972482, at *4 (W.D. Wash. Feb. 28, 2019) (collecting cases); *cf. A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1402, 1404 n.2 (9th Cir. 1992) (noting "the extremely limited scope of judicial review" of arbitration awards in light of "strong federal policy encouraging arbitration," and reversing district court's order vacating an arbitration award).  By contrast, "judicial resources will be wasted if this case proceeds all the way to trial, only for the Court to later discover that the case should have proceeded through arbitration." *Zaborowski v. MHN Gov't Servs., Inc.*, No. C 12-05109 SI, 2013 WL 1832638, at *3 (N.D. Cal. May 1, 2013).

Moreover, "continuing to litigate in this Court during the pendency of the appeal would undermine both policies [of encouraging arbitration and preserving judicial resources] because of the risk of redundant or inconsistent actions." *Sample*, 2012 WL 195175, at *2.  Any rulings entered—including on class certification—and any class-based discovery conducted while the appeal is pending may well be rendered moot if Amazon succeeds on appeal.

Proceeding with litigation is especially unwarranted because any claims of recording absent a wake word present the edge case exception.  Recording triggered by an actual wake word, which are already subject to arbitration, represent the vast bulk of the recordings at issue.

It would also be inefficient to have an arbitrator proceed now with the issues requiring arbitration, only later to have the Ninth Circuit remand the remaining issue to also be adjudicated.  And it would risk conflicting results to continue with this litigation piecemeal—where an arbitrator and this Court could come to conflicting conclusions over the application of CIPA to Alexa, Amazon's alleged intent to record in unauthorized ways, Plaintiff's consent, or even which state law applies—rather than permitting all issues to proceed in coordination in arbitration. This risk alone warrants a stay.

1

## <u>CONCLUSION</u>

2      For the preceding reasons, the Court should grant Amazon's motion to stay

3  pending the Ninth Circuit's resolution of the appeal of the Court's Order Granting

4  Motion to Compel Arbitration.

5

6  Dated:  April 17, 2020                    FENWICK & WEST LLP

7

8                                            By: *s/ Laurence F. Pulgram*
                                                 Laurence F. Pulgram
9                                                Tyler G. Newby
                                                 Molly R. Melcher
10                                               Armen N. Nercessian

11                                           Attorneys for Defendants
                                             AMAZON.COM, INC. and
12                                           A2Z DEVELOPMENT CENTER, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28